**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD | CASE No. 3:21-md-02981-JD<br><br>**DECLARATION OF AARON L. SCHWARTZ IN SUPPORT OF PLAINTIFFS' NOTICE OF OBJECTION RELATED TO RULE 37 SANCTIONS HEARING**<br><br>Judge:  Hon. James Donato |

I, Aaron L. Schwartz, declare as follows:

1. I am an attorney duly admitted to practice in the State of New York and before this Court *pro hac vice*. I am an associate at Kaplan Fox & Kilsheimer LLP and represent the proposed consumer class in this action. I submit this declaration in support of the Plaintiffs' Notice of Objection Related to Rule 37 Sanctions Hearing. The contents of this declaration are based on my personal knowledge, including my personal knowledge of the documents cited herein. The facts set forth herein are within my personal knowledge and if called as a witness, I could and would competently testify to them.

2. Attached hereto as **Exhibit A** is a true and correct copy of the letter dated January 9, 2023 from Brian Rocca to Plaintiffs.

3. Attached hereto as **Exhibit B** of the letter dated November 19, 2022 from Karma Giulianelli to Glenn Pomerantz.

4. Attached hereto as **Exhibit C** of the letter dated November 30, 2022 from Glenn Pomerantz to Karma Giulianelli.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 11th day of January, 2023 at San Francisco, California.

*/s/ Aaron L. Schwartz*

SCHWARTZ DECLARATION IN SUPPORT OF PLAINTIFFS' NOTICE OF OBJECTION
RELATED TO RULE 37 SANCTIONS HEARING
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

2

# EXHIBIT A

# Morgan Lewis

**Brian C. Rocca**
Partner
+1.415.442.1432
brian.rocca@morganlewis.com

January 9, 2023

**Via E-Mail**

Epic
Yonatan Even
Cravath, Swaine & Moore LLP
825 Eighth Avenue
Worldwide Plaza
New York, NY 10019-7475
yeven@cravath.com

Match
Douglas J. Dixon
Hueston Hennigan LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
ddixon@hueston.com

Consumer Plaintiffs
Hae Sung Nam
850 Third Avenue
14th Floor
New York, NY 10022
hnam@kaplanfox.com

States
Brendan Glackin
Office of the Utah Attorney General
160 East 300 South, 5th Floor
PO Box 140874
Salt Lake City, UT 84114-0874
bglackin@agutah.gov

Re:   *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (N.D. Cal.) ("MDL");
      *Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.);
      *In re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-05761-JD (N.D. Cal.);
      *State of Utah, et al. v. Google LLC et al.*, No. 3:21-cv-05227-JD (N.D. Cal.);
      *Match Group, LLC et al. v. Google LLC et al.*, No. 3:22-cv-02746-JD

Counsel:

Pursuant to the Court's order (MDL Dkt. No. 399), on January 6, 2023, Google provided a written summary of Mr. Lopez's anticipated testimony. Plaintiffs subsequently requested additional information. Although we disagree with Plaintiffs' characterization of the Court's order and Google's compliance with it, we are willing to provide additional information to assist Plaintiffs' preparation for the hearing. Google therefore provides the following supplemental written summary of Mr. Lopez's anticipated testimony at the evidentiary hearing.

Mr. Lopez will summarize his educational background, including his degrees from the University of California, Berkeley and Lewis & Clark Law School. He will also summarize his recent professional background, including prior work at Nike. Mr. Lopez will describe his current role at Google as

Morgan, Lewis & Bockius LLP

One Market
Spear Street Tower
San Francisco, CA 94105-1596   +1.415.442.1000
United States                  +1.415.442.1001

Yonatan Even
Hae Sung Nam
Brendan Glackin
Douglas J. Dixon
January 9, 2023
Page 2

Information Governance Lead.  This testimony will include a description of his basic job responsibilities, including the goal of helping Google appropriately manage the information that it creates and uses for business operations.  Mr. Lopez will also share his general approach to developing processes to manage information in a complex organization and specifically at Google.  Mr. Lopez will describe certain aspects of and reasons for information management policies, such as the retention of information that needs to be kept for business or other purposes, and the responsible disposition of information that no longer needs to be retained for business or other purposes.

Mr. Lopez will summarize the tools available to Google employees to create documents and communicate, including Google Workspace (e.g., Google Docs, Drive, Gmail, Chat).  He will describe the use of those tools within Google, Google's retention policies for those tools, and the reasons for those policies.  For example, Mr. Lopez will explain that employees save and retrieve information (e.g., Docs, Sheets, Slides or other file types such as PDFs) using their Google Drive accounts, and there is no retention policy that limits how long such information may be stored to Google Drive.  He will describe Gmail as the primary tool for email at Google.  Mr. Lopez will summarize the standard retention periods for emails in an employee's Gmail account (e.g., 18 months for "read" emails).

Mr. Lopez will describe Google Chat, including the different categories of Chat products, such as 1:1 chats, group chats, and Rooms/Spaces.  He will describe the differences between the categories of Chat products, including how they appear to the user, their core functionality and retention capabilities (e.g., how to turn "history on" and "forward to inbox").  Mr. Lopez will describe the retention policies applicable to each category of Chat, including the default product history settings for "history on" and how retention is impacted when a user turns "history on."  Mr. Lopez will also explain Google's general approach and standard practice regarding retention of Chat messages subject to a legal hold.  He will address the practical and technical challenges associated with alternative approaches to Chat retention, such as changing the "history on" default for a Workspace organizational unit.

Sincerely,

B-R-

Brian C. Rocca

# EXHIBIT B

**BartlitBeck** LLP

Karma Giulianelli
Karma.Giulianelli@BartlitBeck.com

1801 Wewatta Street Place
Suite 1200
Denver, CO 80202
main: (303) 592-3100
direct: (303) 592-3165

BartlitBeck.com

November 19, 2022

**Via Electronic Mail**

Glenn Pomerantz
Munger, Tolles & Olson LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071
Glenn.Pomerantz@mto.com

        Re: *In re Google Play Store Antitrust Litigation*, Case No. 3:21-md-02981-JD (N.D. Cal.); *Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671 (N.D. Cal.); *In re Google Play Consumer Antitrust Litigation,* Case No. 3:20-cv-05761-JD (N.D. Cal.); *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD (N.D. Cal.); *Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746 (N.D. Cal.)

Dear Glenn:

    I write on behalf of Plaintiffs in the above-referenced matters in advance of the January evidentiary hearing on Google's spoliation of Google Chats.

    ***First***, despite numerous requests, Google has refused to produce the litigation hold notices issued to its employees regarding this matter, or to describe the preservation instructions provided in those notices with any particularity. Google has cited attorney-client privilege and the work product doctrine. *See, e.g.*, Defendants' Response to Plaintiffs' Document Preservation Interrogatory No. 1. While litigation hold notices may be protected by privilege, depending upon their content, "most applicable authority from around the country provides that litigation hold letters should be produced if there has been a preliminary showing of spoliation." *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *5 (D.N.J. Aug. 4, 2009); *see also City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, at *5-6 (C.D. Cal. Nov. 22, 2011) (ordering production of litigation hold notices upon preliminary showing of spoliation). Google's admission that the chats at issue were destroyed, and the Court's order of an evidentiary hearing, remove any

**BartlitBeck**<sub>LLP</sub>

Glenn Pomerantz
November 19, 2022
Page 2 of 4

doubt that Plaintiffs have satisfied that preliminary showing. MDL Dkt. 375.[1] *See, e.g.*, *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4432026, at *2 (S.D. Cal. July 31, 2020) (finding the "preliminary showing" satisfied where the defendants conceded that the documents at issue were destroyed). If Google intends to rely on preservation instructions of any kind, including but not limited to any witness testimony on the steps its employees took to preserve chat messages in furtherance of those instructions, Plaintiffs request that Google produce its litigation hold notices and supplement its responses to Plaintiffs' Document Preservation Interrogatory No. 1 no later than December 2, 2022. "A litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *U.S. ex rel. Baker v. Community Health Systems, Inc.*, 2012 WL 12294414, at *2 (D.N.M. Sept. 26, 2012) (ordering production of litigation hold documents after government submitted declaration regarding adequacy of litigation hold). Plaintiffs reserve all rights to move to exclude any testimony from Google witnesses on the steps they took to preserve Google Chats beyond what Google has disclosed in its interrogatory responses or produced documents.

     ***Second***, the Court's Order states that the January hearing will relate to "the use and operation of the electronic chat system, including storage and deletion policies, guidelines for chat content, and examples of typical chat communications," as well as "anything else the parties would like to present at the hearing." MDL Dkt. 375. To the extent Google will seek to present evidence on these topics during the hearing, Plaintiffs request that, no later than December 2, 2022, Google produce documents sufficient to show (i) "the use and operation" of Google Chats, (ii) Google's "storage and deletion policies" for Google Chats, (iii) any "guidelines for chat content", and (iv) any other documents on these or other topics on which Google intends to rely at the hearing. Plaintiffs will object to the admission of any unproduced evidence and reserve the right to seek any other remedy with the Court, including but not limited to further discovery related to any unproduced documents relied upon by Google.

     ***Third***, the Court's order specifies that the parties "will file a joint proposed witness list with testimony topics seven court days before the hearing date." MDL Dkt. 375. To meet this deadline, Plaintiffs propose that the parties exchange lists of proposed Google witnesses no later than December 2, 2022. Plaintiffs may need to depose witnesses who will appear at the evidentiary hearing and request that Google make any witness the Plaintiffs request to depose available for deposition no later than December 30, 2022.

     ***Fourth***, throughout the discovery period, Plaintiffs repeatedly asked Google to identify the few instant messages in its productions. *See, e.g.*, Ltr. from T. Cameron to B. Rocca 3 (July 13,

---

[1] The Court's Order makes clear it is Google's preservation efforts, and not Plaintiffs', that will be the subject of the January hearing. As such, there is no basis for Google to insist on a mutual exchange of litigation hold notices as it previously has done.

**BartlitBeck**~LLP~

2021). Google represented to Plaintiffs that, "[u]nfortunately, we do not have a metadata field that can be used to easily identify chats within the production." Ltr. from B. Rocca to L. Moskowitz & J. Byars 5 (Aug. 13, 2021). In Exhibit E to Plaintiffs' preservation interrogatories, Google identified approximately 1,150 chats. Defendants' Response to Plaintiffs' Document Preservation Interrogatory No. 6, Ex. E. Yet, in Google's opposition to Plaintiffs' adverse inference motion, Google represented to the Court that Google produced "3,084 relevant chats." MDL Dkt. 367 at 1. Please immediately supplement Exhibit E to your responses to Plaintiffs' Document Preservation Interrogatories to include all 3,084 chats described in Google's opposition brief and provide the method by which Google identified those chats. Please also inform Plaintiffs how many of these chats were those for which the default setting is "history on" (*e.g.*, chats from Threaded Rooms), and how many were "history off" chats that were nevertheless preserved.

*Fifth*, Google's opposition brief asserts that the "3,084 relevant chats" were produced "from a collection of over 176,000 chats," *id.*, meaning that among the chats Google preserved, "less than 1.8% were produced as responsive, showcasing how chats are largely a fishing expedition for irrelevant information that does nothing to bolster Plaintiffs' claims," *id.* at 7.

Google's brief fails, however, to explain whether Google's asserted 1.8% ratio of chats preserved to chats produced is comparable to the ratios for other categories of documents, such as emails. Please immediately disclose the number of emails Google preserved in connection with this MDL, and the number of these preserved emails that Google ultimately produced.

Further, please confirm whether the entirety of the "collection of over 176,000 chats" are chats for the custodians that Google agreed to produce, or, alternatively, if the collection included Chats from Google's customer service system, custodians who Google did not search for production, or other sources.

Plaintiffs request a meet and confer regarding the issues raised in this letter, as well as other logistical issues relating to the January hearing. Please let us know of Google's availability for a meet and confer on November 21 or 22.

Sincerely,

Karma Giulianelli

Cc:   PlayLitigation@morganlewis.com
      ~Play_MTO@mto.com
      GoogleEpic@omm.com

**BartlitBeck**<sub>LLP</sub>

Glenn Pomerantz
November 19, 2022
Page 4 of 4

    matchgoogle@hueston.com
    epic-mobileapps@cravath.com
    statesgoogleplayleads@agutah.gov
    googleAppConsumerCounsel@bartlitbeck.com

# EXHIBIT C

MUNGER, TOLLES & OLSON LLP

350 SOUTH GRAND AVENUE
FIFTIETH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

601 MASSACHUSETTS AVENUE NW
SUITE 500E
WASHINGTON, D.C. 20001-5369
TELEPHONE (202) 220-1100
FACSIMILE (202) 220-2300

November 30, 2022

Writer's Direct Contact
(213) 683-9132
(213) 683-5132 FAX
Glenn.Pomerantz@mto.com

**VIA ELECTRONIC MAIL**

Karma Giulianelli
1801 Weatta Street Place
Suite 1200
Denver, CO 80202

Re:   *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (N.D. Cal.);
*Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.);
*In re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-05761-JD (N.D. Cal.);
*In re Google Play Developer Antitrust Litigation*, No. 3:20-cv-05792-JD (N.D. Cal.);
*State of Utah, et al. v. Google LLC et al.*, No. 3:21-cv-05227-JD (N.D. Cal.)
*Match Group, LLC, et al. v. Google LLC.*, No. 3:22-cv-02746-JD (N.D. Cal.)

Counsel,

      We received your Saturday, November 19 letter regarding Google's chats on the eve of the Thanksgiving holiday. As a threshold matter, we disagree that the vast majority of the information that Plaintiffs purport to demand is appropriate or warranted. As Plaintiffs are well aware, the Court did not re-open discovery nor was any new discovery authorized. In fact, Plaintiffs already conducted extensive discovery regarding chat preservation during the fact discovery period and chose to file their Motion based on the information they already collected. At no point did Plaintiffs assert that they required additional discovery on this topic, nor did they request additional discovery in their Motion. Accordingly, we believe Plaintiffs' eleventh hour

Karma Giulianelli
November 30, 2022
Page 2

demand for additional discovery on this topic is unwarranted. Please explain on what basis Plaintiffs believe they are entitled to additional discovery.

First, Plaintiffs' demand now for the production of Google's litigation hold notice is particularly inappropriate considering the actual record, which Plaintiffs mischaracterize. On multiple occasions prior to the filing of Plaintiffs' Motion (and during the fact discovery period), Google offered to produce its hold notices to Plaintiffs, so long as Plaintiffs agreed such production would not be a waiver of privilege and all parties agreed to exchange relevant legal hold instructions. As the cases in your letter affirm, hold notices are protected by privilege without a preliminary showing of spoliation. In spite of the clear law regarding the privileged nature of these notices, Plaintiffs refused Google's offer, stating that "[a] non-waiver agreement concerning sharing information from respective litigation hold notices will not resolve Plaintiffs' concerns about that destruction." *See* J. Byar May 10, 2022, 3:08 pm PT email to E. Curran-Huberty. Ignoring the prior position that Google's hold notices were irrelevant, now Plaintiffs assert that Google should produce those notices because there is a "preliminary showing of spoliation." We disagree. Nothing in the Court's order requesting an evidentiary hearing suggests that there has been a showing of spoliation, nor is the mere fact that some chats were not retained in any way an admission of spoliation. Please identify the basis for Plaintiffs' assertion that there has been any such "preliminary showing."

While Google does not believe that Plaintiffs have established any "preliminary showing," Google is willing to produce its relevant legal hold instructions (as it was previously), subject to Plaintiffs' agreement that such production does not waive privilege. Please confirm whether Plaintiffs agree. Google also requests that Plaintiffs agree to do the same: Plaintiffs should produce their relevant legal hold instructions with the understanding that Google agrees not to claim that such production constitutes a waiver of any privilege.

Second, Google strongly disagrees that Plaintiffs are entitled to depose additional witnesses in advance of the hearing. Again, at no time until this November 19 letter have Plaintiffs requested additional discovery on this topic, and the Court's order does not authorize it. Moreover, Plaintiffs had every opportunity to take discovery on the chats preservation issue, and indeed pursued and received such discovery through documents, interrogatories, and depositions, and could have sought a 30(b)(6) witness on this topic as well, but did not. The fact discovery deadline in this matter has long passed, and Google will not be making any of its witnesses available for depositions in advance of the hearing.

We understand that based on the Court's order, the parties are to jointly propose a witness list seven days in advance of the hearing. While Google disagrees that the Court's order allows Plaintiffs to unilaterally call Google witnesses, we are willing to meet and confer on the witness list as ordered by the Court. Google is prepared to share a proposed witness list on December 7 at noon PT, and would request that Plaintiffs share its witness list either at the same time or before then for our consideration.

MUNGER, TOLLES & OLSON LLP

Karma Giulianelli
November 30, 2022
Page 3

   Third, without conceding that such information is necessary here, Google will identify the chats that have been produced in this litigation by Bates number.  Google does not have a reliable means of identifying whether a chat originated from a Threaded Room / Space, or another type of chat, e.g., 1:1, Group, or Flat Rooms / Spaces chats, but we are investigating.  If we identify a way to categorize chats as requested, Google will share that information with Plaintiffs.

   Finally, to the extent that Google intends to rely on materials at the hearing other than those already produced, we will provide those materials 7 days before the hearing, so long as Plaintiffs will agree to produce any materials they intend to rely on that have not already been produced on that date as well.  It is unreasonable for Plaintiffs to demand that Google disclose such materials any earlier, considering the Court confirmed that the hearing will take place on January 12.

   We are available to meet and confer on these issues on December 1 or 2.  Please let us know your availability.

   Sincerely,

            Sincerely,

            *s/ Glenn D. Pomerantz*
            Glenn D. Pomerantz

cc: GoogleEpic@omm.com
   matchgoogle@hueston.com
   epic-mobileapps@cravath.com
   statesgoogleplayleads@agutah.gov
   googleAppConsumerCounsel@bartlitbeck.com
   PlayLitigation@morganlewis.com
   ~Play_MTO@mto.com