| | |
|---|---|
| Karma M. Giulianelli (SBN 184175)<br>karma.giulianelli@bartlitbeck.com<br>**BARTLIT BECK LLP**<br>1801 Wewatta St., Suite 1200<br>Denver, Colorado 80202<br>Telephone: (303) 592-3100 | Brendan P. Glackin (SBN 199643)<br>bglackin@agutah.gov<br>**OFFICE OF THE UTAH ATTORNEY GENERAL**<br>160 E 300 S, 5th Floor<br>PO Box 140872<br>Salt Lake City, UT 84114-0872<br>Telephone: (801) 366-0260 |
| Hae Sung Nam (*pro hac vice*)<br>hnam@kaplanfox.com<br>**KAPLAN FOX & KILSHEIMER LLP**<br>850 Third Avenue<br>New York, NY 10022<br>Telephone.: (212) 687-1980 | *Counsel for the Plaintiff States*<br><br>Douglas J. Dixon (SBN 275389)<br>ddixon@hueston.com<br>**HUESTON HENNIGAN LLP**<br>620 Newport Center Drive, Suite 1300<br>Newport Beach, CA 92660<br>Telephone: (949) 229-8640 |
| *Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation* | *Counsel for Plaintiffs Match Group, LLC, et al.* |
| Paul J. Riehle (SBN 115199)<br>paul.riehle@faegredrinker.com<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>Four Embarcadero Center, 27th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 591-7500 | |
| Christine A. Varney (*pro hac vice*)<br>cvarney@cravath.com<br>**CRAVATH, SWAINE & MOORE LLP**<br>825 Eighth Avenue<br>New York, New York 10019<br>Telephone: (212) 474-1000 | |
| *Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.* | |

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**PLAINTIFFS' RESPONSES TO MINUTE ORDER QUESTIONS**<br><br>Date: January 31, 2023 at 1:30 p.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

Plaintiff Epic Games, Inc., Plaintiffs Match Group, LLC, et al., Consumer Plaintiffs and the State Attorneys General Plaintiffs (collectively, "Plaintiffs") submit this response to the third through sixth questions in the Court's January 13, 2023 Minute Order regarding Google's preservation of Chats (MDL Dkt. No. 415).  Plaintiffs understand the remaining questions are directed only to Google.

**Question 3: When did this issue first come up in this case and how?**

**ANSWER:**   Plaintiffs raised concerns with Google beginning in April 2021.  The Declaration of Karma M. Giulianelli accompanying this submission sets forth the salient chronology of the history of this issue.  Below is a brief summary.

On October 13, 2020, Google sent Plaintiffs a draft Stipulated Order re: Discovery of Electronically Stored Information ("ESI") that proposed "not to preserve, search, or collect" any "instant messaging and chat application data," claiming that they were not "reasonably accessible." (Declaration of Karma M. Giulianelli (Giul. Decl.) ¶ 4.)  Plaintiffs objected to Google's proposal, and Google agreed to remove instant messages and Chats from the list of materials that would not be preserved.  (*Id.* ¶ 4.)  Google did not disclose that, by default, Chats would be deleted every 24 hours for individuals subject to the litigation hold and despite the pendency of litigation.  (*Id.* ¶ 4.)[1]

By April 2021, Google had made voluminous document productions, but Plaintiffs were unable to locate any Chats in those productions.  Plaintiffs informed Google of this lack of Chats on April 22, 2021.  (*Id.* ¶ 7.)  Months of correspondence and meet-and-confers followed during which Plaintiffs continued to seek an explanation for the lack of Chats in Google's productions.  (*Id*. ¶¶ 8-22.)  In numerous meet-and-confers and letters, Google insisted that it had adequately produced relevant and responsive Chats (*see, e.g.*, *id*. ¶ 17), but it did not disclose that it had been deleting nearly all Chats every 24 hours.

As detailed in the Declaration of Karma M. Giulianelli and summarized below in response to Question 5, it was not until October 21, 2021 that Google first disclosed its continued auto-deletion of Chats.  And, even then, Google claimed that it did "not have the ability to change default settings for individual custodians with respect to chat history setting[s]."  (Giul. Decl. ¶ 25.)

---

[1] Plaintiffs use "Chats" to refer to one-on-one or group chats, not Threaded Rooms.

Following that revelation, Plaintiffs promptly raised their concerns with the Court in a December 9, 2021 case management statement.  Google responded by claiming that "relevant instant message or chat communications are subject to preservation," that "Google in fact took reasonable steps to preserve such messages," and that it deployed "***all available preservation methods*** via its legal hold tool."  (MDL Dkt. 159, at 10-11 (emphasis added).)

**Question 4:** Did Google take "appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action" as it represented to the Court in a case management statement on October 1, 2020? *See* Case No. 20-5761, Dkt. No. 45 at 11.

**ANSWER:** No.

Epic filed the first complaint in this MDL on August 13, 2020. At the time, Google had already received multiple Civil Investigative Demands seeking documents and information relevant to allegations of anticompetitive conduct relating to the Play Store. On September 11, 2020, Google sent out litigation hold notices for this case (which Google has not produced) that it claims instruct recipients to manually turn history on for portions of Chats that "stray[] into a topic related to the legal hold." (1/12/2023 Hearing Tr. ("Tr.") 43:13-20 (Lopez).) Unless custodians do so, all one-on-one and group Chats are automatically deleted every 24 hours, even if they are sent or received by employees subject to litigation holds, such as the agreed custodians in this case. At the January 12, 2023 evidentiary hearing, Google disclosed that it could have changed the default to "history on" for document custodians. (*See* Tr. 58:19-21 (Lopez) ("Q. Technologically, Google could change the default to history on for all custodians, right? A. That's right.").) Google chose not to do so.

At the hearing, Google justified its auto-deletion policy by claiming concerns "about the proliferation of information, corporate data" and "bad actors who would love to find something that they could use to reputationally damage the company," as well as a desire to "minimiz[e] and only keep[] those items that are absolutely business critical." (Tr. 49:23-50:10 (Lopez).) But there are at least four problems with this approach, which Plaintiffs look forward to addressing further with the Court in closing arguments.

*First*, as Google's own information governance lead acknowledged, even if such concerns and desires justified Google's approach to Chat preservation pre-litigation, "[t]here is a different obligation that attaches" once litigation is reasonably anticipated or has commenced. (Tr. 54:3-7 (Lopez).) "[A]t that point," "[t]he business value to Google" is "not part of the . . . analysis." (*Id.* at 54:8-11 (Lopez).)

*Second*, Google did not timely disclose to Plaintiffs or the Court that it continued to permanently delete Chats every 24 hours even after litigation commenced, preventing other interested parties from evaluating whether Google's approach was reasonable and leading to the permanent loss

of untold relevant Chats. Indeed, Google repeatedly led Plaintiffs to believe that it was preserving Chats, and it gave assurances to the Court that it had used "all available preservation methods" for Chats. (MDL Dkt. 159, at 10.)

*Third*, relying on individual custodians, many of whom are busy executives that use Chat on a daily basis, to discern which Chats are relevant to the litigation is not a reasonable way of approaching document preservation. There is no conceivable way to ensure that all Google employees on litigation hold would be sufficiently well-versed in the details of this complex MDL to determine what is relevant and what is not. Such an approach would never be taken for email or other documents, and there is no reason to treat Chats differently. For example, Jamie Rosenberg, a custodian who testified at the January 12, 2023 hearing and the former head of Google Play, testified that he is "not familiar with the specific details of the case." (Tr. 89:18-20 (Rosenberg).) Andrew Rope, Scaled Operations Manager in Google's Legal Department, confirmed that he was "not sure how [the other 36 Google custodians in this case] would answer" if asked to identify "all the issues relevant to this litigation." (Tr. 121:12-15 (Rope).) Relying on individual custodians to take affirmative steps to preserve relevant Chats was even more flawed because Google employees were warned *not* to set their default to "history on" because of the "risks of over-retaining chat conversations." (DXCH-2 at 2.)

*Fourth*, Google Chat's "history on" feature does not preserve Chats unless a user enables Chat history *before* a message is sent. (Tr. 52:21-53:2 (Lopez).) Accordingly, if a Google employee sends a relevant message to a litigation hold recipient while history is turned off, there is no way for the recipient to preserve that message within the Google Chat program. (*Id.*)

**Question 5: Did Google plainly advise plaintiffs' counsel or the Court that it was choosing an approach to the preservation of Google Chats that could lead to the loss of potentially relevant evidence if an individual employee decided not to preserve a relevant chat?**

**ANSWER:** No.

The Declaration of Karma M. Giulianelli accompanying this submission sets forth the communications among the parties regarding the preservation of Google Chats. As a further response to the Court's question, Plaintiffs summarize the key communications below.

As noted above in response to Question 3, from at least April 2021 through October 2021, Google led Plaintiffs' counsel to believe that Google had adequately preserved Chats by individuals subject to the litigation hold issued for this case. Specifically, on August 13, 2021, Google represented "that chats are subject to the litigation hold and that Google has collected and produced relevant chats for custodians that are responsive to Plaintiffs' discovery requests." (Giul. Decl. ¶ 17.) Google also represented that "Google's chats are not retained *in the normal course of business*. Chats are kept by default for only 24 hours *in the usual course of business*. To the extent a custodian was using chats *before* these lawsuits were filed, Google had no obligation to preserve those chats." (*Id.* ¶ 17 (emphasis added).) Nowhere in its August 13, 2021 letter or in any contemporaneous discussions did Google advise Plaintiffs that it was *continuing* to destroy Chats every 24 hours for litigation hold recipients. Accordingly, Plaintiffs believed that Google had ceased that "normal course of business" deletion after Epic's lawsuit was filed.

After further correspondence and discussion, Plaintiffs explicitly sought confirmation of that understanding. On October 6, 2021, Plaintiffs wrote to Google stating:

> We understand Google's explanation as to why so few messages were produced—despite widespread custodial use of various messaging platforms over the years in the ordinary course—is that Google's corporate policy is to automatically delete instant messages within twenty-four (24) hours. *We also understand that Google's corporate policy was then suspended pursuant to counsel's issuance of a preservation letter in connection with this litigation.*

(*Id.* ¶ 20 (emphasis added).) In response, in a letter dated October 18, 2021, Google stated that it "disagree[d]" with Plaintiffs' "characterizations of Google's retention policy," and that "Google issued a hold notice in connection with this litigation that requires custodians to preserve all relevant instant

messages." (*Id.* ¶ 21.)  Google also assured Plaintiffs' counsel there was "no reason to believe that Google's production of relevant instant messages for all agreed-upon custodians for the agreed-upon time periods is in any way deficient." (*Id.* ¶ 21.)  Only after further follow-up did Google reveal, in an October 21, 2021 meet-and-confer, that it never suspended the automatic deletion of "off-the-record" Chats even after this litigation began.  (*Id.* ¶ 23.)

Plaintiffs continued to follow up on the issue, identifying numerous emails that referenced Chats that Google had failed to produce.  In a November 11, 2021 letter, Google confirmed that "the technological settings on Google's chat retention policy (see Exhibit A) did not change"—meaning that daily deletion continued—after it issued litigation holds.  (*Id.* ¶ 25.)  Google attempted to justify its failure to preserve "off the record" Chats by claiming that "***Google does not have the ability to change default settings for individual custodians with respect to the chat history setting***." (*Id.* ¶ 25 (emphasis added).)  It continued: "Google employees need to apply the 'history on' setting on a chat-by-chat basis." (*Id.*)  As revealed at the evidentiary hearing, those claims were untrue.  (Tr. 58:19-21 (Lopez) ("Q. Technologically, Google could change the default to history on for all custodians; right?  A. That's right."); Tr. 49:3-7 (Lopez) ("Q. Does Google have the technical ability to create separate organizational units that include legal hold recipients and then change the chat retention setting for that organizational unit?  A. Yes.").)

As noted above, Plaintiffs raised the Chat issue in the December 9, 2021 Joint Case Management Statement.  In response, Google obscured the fact that it was still destroying custodians' Chats.  It wrote that it "agrees that relevant instant message or chat communications are subject to preservation" and represented to the Court that "Google in fact took reasonable steps to preserve such messages." (Giul. Decl ¶ 29.)  Google further claimed to have employed "***all available preservation methods*** via its legal hold tool, and active management by legal counsel at every step of the process." (*Id.* ¶ 29 (emphasis added).)  As noted above, that was untrue.  (Tr. 58:19-21 (Lopez) ("Q. Technologically, Google could change the default to history on for all custodians; right?  A. That's right.").)  In fact, Google did not use any of the technological tools available to it to preserve Chats.

Following further discovery, including interrogatory responses ordered by the Court at the December 16, 2021 case management conference and further questioning of Google witnesses on their Chat preservation at depositions, Plaintiffs raised the issue again with the Court on May 12, 2022. (*Id.* ¶ 38.) The Court directed the parties to file a joint statement relating to the issue, which the parties did on May 27, 2022. (*Id.* ¶¶ 38-39.) In that filing, Google again represented that it "has taken reasonable steps to preserve relevant documents by issuing legal holds (and subsequent reminders) to relevant custodians and preserved relevant documents within Google's document storage systems." (*Id.* ¶ 39.)

**Question 6:   If the Court concludes that Google did not meet its preservation obligations, what is the appropriate remedy?  The parties are advised that proposed remedies must be specific and proportionate.  Terminating sanctions will not be considered and may not be proposed.**

**ANSWER:**  Plaintiffs propose that the Court order preliminary and final jury instructions regarding Google's spoliation, preclude Google from arguing that Plaintiffs lack evidence on certain topics, and award the Consumer, State and Match Group Plaintiffs reasonable attorneys' fees and costs in connection with litigating Google's spoliation.

Google's intentional spoliation of Chats warrants an instruction to the jury, pursuant to Federal Rule of Civil Procedure 37(e).  That instruction should inform the jury of the relevant facts relating to Google's destruction of Chats and that it should presume that Chat messages Google destroyed would have been unfavorable to Google in this litigation.  A proposal for the Court's consideration is below:

> Before this trial began, the Court ruled that Google [intentionally/knowingly] destroyed relevant evidence.  In reaching that conclusion, the Court found the following facts.
>
> 1.   Google employees use Google Chat every day to discuss a variety of topics, including substantive business issues.
>
> 2.   In the ordinary course, Google automatically deletes all private (1-on-1) and group Chats 24 hours after they are sent unless the Google employee manually turns on Chat history.  Such messages are referred to within Google as "off the record" Chats.
>
> 3.   Google employees are trained that because Google is in the public eye and courthouse, chatting "off the record" is sometimes better than email.  The Court found evidence that Google employees divert sensitive topics to Chat, and that Google employees are aware that their Chats are generally not preserved.
>
> 4.   Beginning no later than the filing of this lawsuit on August 13, 2020, Google had a legal obligation to preserve evidence, including Chats.
>
> 5.   Google chose not to comply with that obligation.  Even though Google could have preserved Chats using technology readily available to it, Google chose not to.
>
> 6.   As a result of Google's conduct, Chat messages relevant to this case were systematically destroyed every 24 hours and cannot be recovered or restored.  You [therefore will not see][therefore have not seen] all the evidence that is relevant to this case.
>
> 7.   You should infer that Chat messages destroyed by Google would have been unfavorable to Google in this case.

This remedy is more than justified.  "[A] trial court . . . has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (citation omitted); *see Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 422 (9th Cir. 2011) (finding no abuse of discretion where an "instruction would 'creat[e] a presumption in favor of [defendant] that the spoliated evidence was unfavorable to [plaintiff]'" if the factfinder (there—the jury) concluded that evidence was destroyed).  A court may order an adverse inference instruction where it finds:  "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225, at *5 (N.D. Cal. June 6, 2022) (citing cases).  All three factors are satisfied here.

*First*, Google had an obligation to preserve relevant Google Chat messages, a fact that Google admits.  (Giul. Decl. ¶ 29 (December 9, 2021 Joint Case Management Statement) ("Google agrees that relevant instant message or chat communications are subject to preservation.").)

*Second*, Google had a "culpable state of mind."  "[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Meta*, 2022 WL 1990225, at *5 (citation omitted).  Google is an extraordinarily sophisticated and experienced litigant with enormous resources.  Indeed, Google's self-proclaimed mission is "to organize the world's information and make it universally accessible and useful."[2]

Google knew that off-the-record Chats "are preserved for only 24 hours" (Tr. 52:14-16) and that it could "flip a switch and preserve all chats." (Tr. 44:18-45:10).  But Google chose not to do so, despite its preservation obligations.  Instead, as the Court recognized, Google "left the preservation of chats to the discretion of each individual who received a hold notice" (Tr. 132:18-21; *see also* Tr. 46:5-17 (Lopez) (testifying that Google delegated all responsibility to preserve Chats to individual

---

[2] *See* Google, Overview, https://www.google.com/search/howsearchworks/?fg=1.

1  custodians without any check for compliance)), and it "never monitored the chats to see if relevant
2  evidence was possibly being lost" (Tr. 132:22-24).  The evidence further shows that Google informed
3  its employees that "off the record" Chats would be destroyed after 24 hours (Tr. 68:8-13; PX-120
4  at -9860) and that Google employees acted on this information by diverting relevant communications
5  to "off the record" Chats and cautioning one another when history was on (Tr. 72:1-14 (quoting
6  PX-103).).

7  Taken together, this evidence shows that Google knowingly and intentionally chose to violate
8  its discovery obligations by creating and encouraging the use of an "off-the-record" mode of
9  communication—a forum where employees knew (because they were told) that they could discuss
10 sensitive topics without creating evidence for litigation.  (*See, e.g.*, Tr. 68:11-13 (Lopez) (Google
11 employees "know that off-the-record chats are not retained"); Lim Tr. 38:16-22 (testifying that he
12 "understood that [his] chats were not going to be automatically preserved because the default was for
13 them to be destroyed every 24 hours"); Tr. 47:21-48:17 (Lopez) (testifying with respect to "personal"
14 Chats that employees were "comfortable having a conversation in a history-off state because they
15 knew those sensitive items were not going to be available for longer than 24 hours," and that enabling
16 Chat history would "change the nature and folks would just be less willing to share").)  Indeed, Google
17 specifically trained its employees that off-the-record Chats were preferable to emails in certain
18 communications.  (*See* PX-120 at -9860 (training employees that "chat[ting] 'off the record' via
19 Hangouts" is "better than sending the email").)

20 ***Third***, the evidence Google destroyed was relevant.  As the Court preliminarily observed, there
21 is "little doubt on the evidence that we've heard so far" that "Google's Chat function could, in fact,
22 have contained evidence relevant, as 'relevance' is defined in the Federal Rules of Evidence, to this
23 case." (Tr. 132:13-17.)  That observation is confirmed by the testimony of Google's employees.  (*See,
24 e.g.*, Tr. 91:9-93:6 (Rosenberg) (admitting to using Chat to discuss negotiations over a proposed
25 $200 million business deal regarding Samsung's app store); Lim Tr. 26:22-25 (admitting to having
26 "used Google Chat for substantive business communications"); *see also, e.g.*, Tr. 47:9-10 (Lopez)
27 (Google employees use Chat for "[a]nything under the sun that they want to communicate"); Mattson
28 Tr. (Mot. Ex. 6) 202:20-203:3 ("I don't think there's really a limitation to the topics that might be

1 | discussed [on Google Chat] … whatever is relevant to the work that's ongoing.").)  The only
2 | reasonable conclusion from Google's conduct is that it recognized that relevant communications might
3 | be lost, but it decided that the risk associated with preserving and producing Chats outweighed the risk
4 | associated with destroying them and trying to hide that fact.  An instruction to the jury is necessary to
5 | ensure Google is held accountable.

Google's deliberate efforts to conceal its automatic deletion of Chats exacerbate the gravity of its conduct.  If Google had a good faith basis for its decision to destroy Chats, it should have disclosed its Chat-destruction policy to the Court and Plaintiffs upfront; failing to do so, it should have provided straight answers to Plaintiffs when directly confronted about its practices; failing to do even that, it should have stopped deleting Chats daily when the issue was raised with the Court.  Google did none of these things.  Courts have imposed far more extreme remedies than the adverse inference that Plaintiffs are requesting in cases where a party intentionally destroyed relevant evidence.  *See, e.g.*, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958-61 (9th Cir. 2006) (affirming dismissal of an action as a remedy for willful spoliation); *Anheuser-Busch, Inc. v. Nat. Beverage Distribs*, 69 F.3d 337, 348 (9th Cir. 1995) (affirming dismissal of a counterclaim where a party "concealed [relevant] documents for three years and continuously lied about their existence and condition under penalty of perjury").

Chats undoubtedly relate to issues of critical importance to the case, including some that arose during the pendency of this litigation.  For example, after this litigation began, Google lowered the commission rate it requires certain developers to pay for paid downloads, in-app purchases and subscriptions from 30% to 15% subject to certain conditions.  And Google launched the Choice in Billing program, which allows certain developers to make their apps available through the Play Store without being required to use Google Play Billing.  Those changes go to the heart of Plaintiffs' damages and tying theories, respectively.  The idea that there were no off-the-record Chats concerning those extremely significant policy changes strains credulity.  Of course, the jury will never know what those Chats said because Google decided to permanently delete them.

A remedy that does not involve a curative jury instruction would be insufficient.  Google destroyed documents that were likely to contain Google employees' most sensitive and unguarded conversations about relevant events precisely because Google employees knew that these

conversations would be shielded from discovery. If the jury is not informed of Google's conduct, it cannot properly evaluate the facts in this case. Plaintiffs' proposed instruction falls well short of a case-dispositive sanction, yet gives appropriate weight to the gravity of Google's conduct, the risks of an incomplete record, and the Court's concerns that Google must not be allowed to "get away with this" (Tr. 134:9). If, however, the Court is not inclined to instruct the jury that they *should* find that the evidence would have been harmful to Google's case, Plaintiffs would request an otherwise identical instruction that the jury *may* find that this evidence would have been harmful to Google.

In addition, Google should be precluded from arguing that there is "no evidence" of any of Plaintiffs' claims or factual allegations. Permitting Google to advance such arguments would be unfair to Plaintiffs because it is impossible to know whether any lack of evidence resulted from Google's spoliation. This remedy is necessary to ensure that Google cannot gain an unfair advantage from its discovery violation.

Finally, the Consumer Plaintiffs, the State Plaintiffs and the Match Group Plaintiffs request that Google reimburse them for the reasonable attorneys' fees and costs associated with uncovering, pursuing and litigating Google's spoliation of evidence, including the costs and fees incurred engaging an expert to testify about the various technological means Google could have employed—but deliberately chose not to—to preserve Chats.

| | | |
|---|---|---|
| Dated: January 24, 2023 | | CRAVATH, SWAINE & MOORE LLP |

        Christine Varney *(pro hac vice)*
        Gary A. Bornstein *(pro hac vice)*
        Timothy G. Cameron *(pro hac vice)*
        Yonatan Even *(pro hac vice)*
        Lauren A. Moskowitz *(pro hac vice)*
        Justin C. Clarke *(pro hac vice)*
        Michael J. Zaken *(pro hac vice)*
        M. Brent Byars *(pro hac vice)*

FAEGRE DRINKER BIDDLE & REATH LLP
        Paul J. Riehle (SBN 115199)

Respectfully submitted,

By: */s/ Lauren A. Moskowitz*
     Lauren A. Moskowitz

*Counsel for Plaintiff Epic Games, Inc.*

Dated: January 24, 2023

BARTLIT BECK LLP
     Karma M. Giulianelli

KAPLAN FOX & KILSHEIMER LLP
     Hae Sung Nam

Respectfully submitted,

By: */s/ Karma M. Giulianelli*
     Karma M. Giulianelli

*Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

Dated: January 24, 2023

PRITZKER LEVINE LLP
     Elizabeth C. Pritzker

Respectfully submitted,

By: */s/ Elizabeth C. Pritzker*
     Elizabeth C. Pritzker

*Liaison Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

| | | |
|---|---|---|
| 1 | Dated: January 24, 2023 | OFFICE OF THE UTAH ATTORNEY GENERAL |
| 2 | | Brendan P. Glackin |
| | | Lauren M. Weinstein |
| 3 | | Respectfully submitted, |
| 4 | | By: */s/ Brendan P. Glackin* |
| 5 | | Brendan P. Glackin |
| 6 | | *Counsel for the Plaintiff States* |

Dated: January 24, 2023        HUESTON HENNIGAN LLP
                                Douglas J. Dixon
                                Christine Woodin
                                Joseph A. Reiter

                                Respectfully submitted,

                                By: */s/ Douglas J. Dixon*
                                Douglas J. Dixon

                                *Counsel for Plaintiffs Match Group, LLC et al.*

**E-FILING ATTESTATION**

I, Brian D. Wang, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Brian D. Wang*
Brian D. Wang