1  Karma M. Giulianelli (SBN 184175)
   karma.giulianelli@bartlitbeck.com
2  **BARTLIT BECK LLP**
   1801 Wewatta St., Suite 1200
3  Denver, Colorado 80202
   Telephone: (303) 592-3100
4

5  Hae Sung Nam (*pro hac vice*)
   hnam@kaplanfox.com
6  **KAPLAN FOX & KILSHEIMER LLP**
   850 Third Avenue
7  New York, NY 10022
   Telephone: (212) 687-1980
8

9  *Co-Lead Counsel for the Class in In re Google
   Play Consumer Antitrust Litigation*
10

11 Paul J. Riehle (SBN 115199)
   paul.riehle@faegredrinker.com
12 **FAEGRE DRINKER BIDDLE & REATH
   LLP**
13 Four Embarcadero Center, 27th Floor
   San Francisco, CA 94111
14 Telephone: (415) 591-7500

15

16 Christine A. Varney (*pro hac vice*)
   cvarney@cravath.com
17 **CRAVATH, SWAINE & MOORE LLP**
   825 Eighth Avenue
18 New York, New York 10019
   Telephone: (212) 474-1000
19

20 *Counsel for Plaintiff Epic Games, Inc. in Epic
   Games, Inc. v. Google LLC et al.*
21

Brendan P. Glackin (SBN 199643)
bglackin@agutah.gov
**OFFICE OF THE UTAH ATTORNEY
GENERAL**
160 E 300 S, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
Telephone: (801) 366-0260

*Counsel for the Plaintiff States*

Douglas J. Dixon (SBN 275389)
ddixon@hueston.com
**HUESTON HENNIGAN LLP**
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640

*Counsel for Plaintiffs Match Group, LLC, et al.*

22

23

24

25

26

27

28 [Additional counsel appear on signature page]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br><br>**PLAINTIFFS' RESPONSE TO GOOGLE'S BRIEF IN RESPONSE TO THE COURT'S MINUTE ORDER QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES**<br><br><br>Date:  January 31, 2023 at 1:30 p.m.<br>Courtroom:  11, 19th Floor<br>Judge:  Hon. James Donato |

It is now clear that Google has been deliberately deleting "off the record" Chats for years, including throughout this litigation.  At every step, Google has attempted to keep its misconduct from coming to light.  Google's willful destruction of documents has deprived Plaintiffs of critical evidence regarding agreements with potential competitors, changes to Google's prices, and changes to its tie of Google Play Billing—all critical issues in this litigation.  To make matters worse, the remedies Google proposes show that it does not take this issue seriously.  Google's proposed "remedies" would be nothing more than a slap on the wrist.  Google cannot be allowed to get away with its spoliation.  Only a serious trial remedy—like the instructions and order of preclusion Plaintiffs proposed—will deter Google from continuing to destroy evidence and cure the prejudice Google has inflicted.

### A.      Question 1:  Google Fails to Answer How Many—and Whether Any—of the 383 Litigation Hold Recipients Turned and Kept On Their Chat History.

Google's response to the Court's first question dances around and attempts to distract from what would otherwise be a simple answer:  It has no idea how many "recipients of the litigation hold notice in this case personally elected to turn the history to 'on,'" or when they chose to do so.  (Dkt. 415 at 1; Google Br. 1-2.)  Google previously represented to Plaintiffs in sworn interrogatory responses that it "has no way to systematically track which Custodians preserved Chats by turning 'history on' or in any other manner."  (Zaken Decl Ex. 1 at 14.)  Its response now confirms that Google "does not ordinarily maintain the information to answer this question for any meaningful time period."  (Chen Decl. ¶ 4; *see also* Tr. 116:11-16 (Rope) (agreeing that Google does not have a systematic way to track the "actual record of who elected to do the preservation")).)

Google could have asked litigation hold recipients whether they recall turning on their Chat history or changing their default settings to history "on."[1]  But it did not—likely because its sworn interrogatory responses confirm that only 11 of 37 custodians recalled *ever* turning history "on" for even one Chat during the custodial period.[2]  (Dkt. 427-03 ¶ 34.)  Or Google could have provided the

---

[1] Google does not even attempt to answer which, if any custodian, ever changed default settings for Chats to history on as opposed to turning history "on" on a conversation-by-conversation basis.

[2] Deposition testimony confirms that many custodians never turned history "on".  (*See, e.g.*, Tr. 103:8-17 (Rosenberg) ("[Q.] During your time at Google, you kept your chat history off the entire time; correct?  [A.] Correct.  I didn't change the default."); Lim Tr. 43:12-14 ("Q. You had history off by default and never turned it on, correct?  A. That's right."); Dkt. 389-05 at 74 (Mattson Tr.) ("[Q.]

1    Court data for the past 55 days indicating whether hold recipients toggled history "on" or "off".  (*See*

2    Chen Decl. ¶ 4 (admitting that Google maintains such records).)  It chose not to do that either.

3         Instead of providing a straightforward answer to the Court's question, Google relies on the

4    Declaration of Duy Ho, which purports to show the number of Chats "that were preserved for each

5    employee on legal hold" in Exhibit A.  (Google Br. 1.)  This data is not responsive to the Court's

6    question and is presented in a way that conceals more than it reveals.

7         *First*, Exhibit A does not tell the Court *anything* about how many *legal hold recipients* had

8    ever turned history "on" for any of their Chats.  Chats reflected on the chart would have been

9    preserved whether the hold recipient *or another Chat participant* turned history "on."  (Google Br. 1.)

10        *Second*, as Google admits, each Chat reflected in the Ho Declaration is only "a snapshot of a

11   chat conversation."  (Ho Decl. ¶ 4.)  That means a single Chat that lasted for days or weeks could have

12   been counted multiple times, greatly inflating the numbers.

13        *Third*, there is no indication that Google took steps to avoid double-counting Chats that

14   involved multiple hold recipients (*i.e.*, if those employees were chatting with each other, that Chat

15   would be counted twice—once for each participant).

16        *Fourth*, Google has hidden the identities of the hold recipients, preventing the Court from

17   examining the number of Chats preserved for witnesses who testified that they typically used Google

18   Chat every day (Tr. 80:6-8 (Rosenberg); Lim Tr. 26:9-14) but never once turned on their Chat history

19   (Tr. 103:8-17 (Rosenberg); Lim Tr. 43:12-14).

20        *Finally*, Google does not indicate how many of the preserved Chats were relevant to this case.

21        To the extent the numbers in Google's Exhibit A can be comprehended, the data only reflects

22   that the number of Chats preserved for each individual is *exceedingly low*.  For example, the number

23   of preserved Chats for the 21 "Post Complaint Custodian[s]" ranges from 10 to 739.  (Ho Decl.,

24   Ex. A.)  Those numbers pale in comparison to the number of Threaded Room Chats (where history is

25

26

27

28

---

After receiving those litigation hold notices, do you remember having to do anything to adjust the
preservation settings for chats that you send and receive?  . . .  [A] I do not."); Dkt. 389-04 at 30-31
(Kolotouros Tr.) ("Q. Have you ever turned history on in Google Chat?  A. Not that I can recall.").)

1    on) preserved from these same individuals over the same period.  (*See, e.g.*, *id.*, Custodian No. 8 (74

2    Chats versus 1,825 Threaded Rooms); Custodian No. 18 (644 Chats versus 10,017 Threaded Rooms).)

3        **B.      Question 2:  Google Admits to Pervasive Chat Destruction That Has Broad,
                  Sweeping Effects in Multiple Cases.**

4

5        Google admits that it has not automatically preserved "off the record" Chats for relevant

6    individuals in ***any*** case filed in the United States in the past five years.[3]  (Google Br. 2.)  Because

7    many of the custodians in this case were also subject to ***other*** litigation holds in cases with related

8    subject matter, Google has been destroying Chats that may have been relevant to this case for many

9    years.  Plaintiffs can only assume that Google successfully concealed its systematic deletion of Chats

10   in other cases (and in federal, state and foreign regulatory investigations), just as it attempted to do

11   here.[4]

12       This course of conduct further confirms that Google's destruction of Chats was knowing and

13   intentional.  Google is an extraordinarily sophisticated litigant that knows how to retain data.  Google

14   apparently made a calculated decision that the risk of producing Chats outweighed the risk of getting

15   caught destroying them.  At least so far, its calculation has proved to be correct.  That is yet another

16   reason that a meaningful trial remedy—not the toothless suggestions Google offered—is required.

17       **C.      Question 3:  Google Admits that Plaintiffs Specifically Asked Google to Preserve
                  Chats in October 2020.**

18       Google admits that when the parties negotiated an ESI Protocol in October 2020, Plaintiffs

19   informed Google of "their position that chats and instant messages should not be excluded from the

20   categories of ESI that should be preserved."  (Rocca Decl. ¶ 3.d.)  Google accepted this position, as

21   reflected in the ESI Protocol, without alerting Plaintiffs or the Court that Google did not intend to

22   preserve Chats.  (*Id.* ¶ 3.f; *see* Dkt. 72, ¶ 4(a) (ESI Protocol).)  Plaintiffs then raised concerns regarding

23   the preservation of Chats beginning in April 2021, after noticing a dearth of Chats in Google's initial

24

25       [3] In fact, Google's declarant wrote that "over the course of my ***more than 10 years*** as a Litigation
     Paralegal at Google, I have ***never*** been involved in a case in which Google automatically preserved all

26   chats," and that he "surveyed the team of Google paralegals that handle all U.S. litigation matters at
     Google" and they were not aware of any case either.  (Johnson Decl. ¶ 9 (emphasis added).)

27       [4] For example, the Department of Justice, which is litigating an antitrust case involving Google

28   Search in Washington, D.C., ordered a copy of the January 12, 2023 hearing transcript.  (Dkt. 368,
     *Epic Games, Inc. v. Google, LLC*, Case No. 3:20-cv-05671-JD (Jan. 17, 2023).)

1   document productions.  As Google admits in response to Question 5, it was not until after *six months*

2   *later*—after months of persistent inquiry by Plaintiffs—that Google was finally forced to disclose that

3   it was continuing to destroy Chats daily throughout the pendency of this litigation.  (Google Br. 3.)

4       **D.        Question 4:  Google Did Not Take Appropriate Steps to Preserve Chats.**

5       Google reiterates the claim that it took "appropriate steps to preserve" relevant evidence.

6   (Google Br. 2 (quoting ECF No. 45 at 11).)  That is plainly not true.

7       Google does not dispute numerous facts establishing that it knowingly and intentionally failed

8   to preserve relevant Chats, including:  (1) In October 2020, Plaintiffs asked Google to preserve Chats,

9   and Google agreed (Rocca Decl. ¶ 3.d; Dkt. 72 ¶ 4(a)); (2) Google could "flip a switch and preserve all

10  chats" if it wanted to (Tr. 44:18-45:10 (Lopez)); (3) Google never flipped that switch for any of the

11  hold recipients in this case (Johnson Decl. ¶¶ 4, 9; Tr. 45:14-17 (Lopez)); (4) Google employees knew

12  that off-the-record Chats were not preserved (Tr. 68:11-13 (Lopez); Tr. 47:21-48:17 (Lopez); Lim Tr.

13  38:16-22); (5) Google employees were not sufficiently familiar with the details of the case to decide

14  what should be preserved (Tr. 89:18-20 (Rosenberg); Tr. 121:12-15 (Rope)); and (6) Google never

15  monitored or enforced employees' compliance with the legal hold (Tr. 46:8-17 (Lopez)).  Google

16  provides no explanation for why it concealed the true state of facts for months.

17      Google's pattern of deception and misdirection belies its insistence that it took appropriate

18  steps to preserve relevant evidence.  To the contrary, Google's conduct makes clear that its failure to

19  preserve relevant Chats was intentional and unreasonable.

20      **E.        Question 5:  Google Made False and Misleading Statements Regarding Its Chat-
            Destruction Policy.**

21

22      Google does not provide a straight "yes" or "no" answer to whether it "plainly advise[d]" the

    Court or Plaintiffs that its approach to Chat preservation would lead to the loss of potentially relevant

23  evidence.  That is not surprising:  A "yes" would be untruthful, and a "no" would warrant sanctions.

24      Google admits that, even though Plaintiffs "inquired about the status of Google's production of

25  chat messages" in an April 22, 2021 letter (Rocca Decl. ¶ 4), Google failed to inform Plaintiffs for *six*

26  *more months*—until October 21, 2021—that it "had not suspended the 24-hour retention policy for

27  'history off' chats" and *was continuing to delete Chats every 24 hours*  (*id.* ¶ 12.c; Google Br. 3).  But

28

1   Google fails to provide any justification for the misleading statements it made therein.  Google does

2   not explain its failure to acknowledge that it continued its "usual course of business" practice of

3   destroying Chats *after* these lawsuits were filed.  (Dkt. 428-1 ¶ 17.)  Nor does Google explain its

4   (at-best-incomplete) statement in the same letter "that chats are subject to the litigation hold and that

5   Google has collected and produced relevant chats."  (*Id.*)  Google also does not explain its

6   October 18, 2021 representation that it has "no reason to believe that Google's production of relevant

7   instant messages for all agreed-upon custodians for the agreed-upon time periods is in any way

8   deficient."  (*Id.* ¶ 21.)

9          Google also fails to explain the misrepresentations that it made *after* its failure to suspend its

10   24-hour purge policy came to light on October 21, 2021.  For example, Google does not address its

11   false statement in a November 11, 2021 letter that "Google does not have the ability to change default

12   settings for individual custodians with respect to the chat history setting."  (*Id.* ¶ 25.)

13          And finally, Google does not explain or even *acknowledge* the statement it made to the Court

14   in the December 9, 2021 Joint Case Management Statement (Dkt. 159).  Specifically, in response to

15   concerns Plaintiffs raised about Google's failure to preserve relevant Chats, Google represented that it

16   employed "*all available preservation methods* via its legal hold tool, and active management by legal

17   counsel at every step of the process."  (Dkt. 428-1 ¶ 29 (emphasis added).)  That was simply false;

18   Google could have enabled Chat history for its litigation hold recipients, but it chose not to.

19   (Tr. 58:19-21 (Lopez) ("Q. Technologically, Google could change the default to history on for all

20   custodians; right?  A. That's right.").)  Google also represented to the Court that "relevant instant

21   message or chat communications are subject to preservation, and Google in fact took reasonable steps

22   to preserve such messages."  (Dkt. 428-1 ¶ 29.)  This is impossible to square with Google's policy of

23   relying on individual custodians to take affirmative steps to identify and preserve relevant Chats.

24          Google went to great lengths to hide both its decision to destroy Chats and (once that decision

25   came to light) its ability to preserve them.  The only reasonable explanation is that Google understood

26   that it was not complying with its preservation obligations and sought to conceal its misconduct.

27   Google's effort to conceal its destruction of Chats is strong evidence that its systemic spoliation was

28   both knowing and intentional and that a substantial penalty is warranted.

1

2

**F.      Question 6:  Google's Proposed Remedies Are Inadequate and Plaintiffs' Proposed Remedies Should Be Imposed.**

3

4

The facts here are straightforward:  For years, Google encouraged employees to divert sensitive

5

communications from email to "off-the-record" Chats.  Even though it was subject to a legal duty to

6

preserve relevant communications, Google deliberately chose to continue the automatic destruction of

7

all "off-the-record" Chats—a decision it did not disclose to the Court or Plaintiffs while it was giving

8

them assurances that it was taking all appropriate steps to preserve all relevant evidence.  Google also

9

engaged in obfuscation when Plaintiffs pressed it on the remarkably low number of Chats produced in

this litigation and then continued to destroy Chats even as its practice came under scrutiny.

10

11

Up until now, Google's calculated decision to spoliate and obfuscate has paid off—despite

12

employing the same deletion practices in every U.S. matter for at least the last five years, it has not

13

been caught.  Now that Google's intentional spoliation has been brought to light, it is hoping to make

14

the problem go away by writing a check.  (Google Br. 8-9.)  That would be a meaningless, token

sanction, and it would do nothing to right the record.  The Court should not let Google benefit from its

15

egregious misconduct.

16

**i.      Only Plaintiffs' Proposed Jury Instructions Will Remedy Google's Misconduct.**

17

18

Google's intentional spoliation of evidence can only be cured by preliminary and final

19

instructions informing the jury of the relevant facts and instructing the jury that it should (or at least

20

*may*) presume that the Chat messages Google destroyed would have been unfavorable to Google.

21

Such instructions are more than justified in light of Google's flagrant and intentional spoliation and

related litigation misconduct in trying to conceal the truth. (Plaintiffs' Br. 8-12.)

22

The remedy is also tailored to the specific misconduct here.  Instructing the jury on the core

23

*facts* that Plaintiffs have established regarding Google's spoliation avoids the prospect of a "trial

24

within a trial" that Google itself argues would be inefficient.  Google cannot dispute those facts.  And

25

both relevant law and the facts presented in the January 12 hearing support the instruction Plaintiffs

26

request.

27

This Court may impose an adverse inference instruction under Rule 37(e) if it finds "(1) that

28

the party having control over the evidence had an obligation to preserve it at the time it was destroyed;

1    (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was

2    'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would

3    support that claim or defense." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225, at *5

4    (N.D. Cal. June 6, 2022) (citing cases).  Google cannot dispute that it had control over the Chats, they

5    contained relevant information, and its conduct here was intentional.  Google was aware that its

6    employees were using Chat for substantive business communications about matters relevant to this

7    litigation, and that Chats were being automatically destroyed.  Google had the ability to "flip a switch"

8    to ensure that these Chats would be preserved, but Google made a deliberate decision not to do so.[5]

9           Google cites only one, out-of-circuit case in support of its argument that an adverse inference

10   instruction is not warranted:  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341

11   F.R.D. 474, 504-05, 520 (S.D.N.Y. 2022).  *Keurig* is plainly inapposite.  There, the magistrate judge

12   found that the defendant's spoliation of local hard drives from 23 custodians was ***not*** intentional,

13   noting in particular that the defendant acknowledged that it should have preserved the hard drives, but

14   those hard drives were inaccessible due to certain lapses in its preservation protocols, resulting in

15   "isolated gaps" in the production.  *Id*.  Whereas in *Keurig* the court found the defendant had not

16   "exhibited persistent non-responsiveness to discovery requests with no adequate explanation", Google

17   here spent months obfuscating and refusing to clearly inform Plaintiffs and the Court that it was

18   automatically deleting "off the record" Chats every 24 hours.  Google then falsely claimed that it could

19   not turn history "on" for individual custodians and that it was doing everything it could to preserve

20   Chats, when instead it chose not to take the simple step of changing the default setting to "on." *Id.* at

21   519.  Such conduct is egregious and more than justifies Plaintiffs' proposed remedies.

22

23

24

25           [5] Courts have found that Rule 37(e)(2)(B)'s intent requirement is satisfied where "it is reasonable to infer that . . . a party purposefully destroyed evidence to avoid its litigation obligations." *Porter v. City & Cty of San Francisco*, 2018 WL 4215602 at *3 (N.D. Cal, Sept 5, 2018).  In particular, courts have found that a decision not to disable an auto-delete function constitutes intentional destruction. *See WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *12 (N.D. Cal. Apr. 24, 2020) (granting Rule 37(e)(2) sanctions where party did not turn off auto-delete functionality for email); *Glaukos Corp. v. Ivantis, Inc.*, 2020 WL 10501850, at *6 (C.D. Cal. June 17, 2020) (same).

26

27

28

1

**ii.      Google's "Prejudice" Arguments are Unavailing.**

2

Google argues that any remedy for its misconduct should be limited because Plaintiffs have not

3

proven prejudice.  That is simply wrong.

4

Google's argument conflates Rule 37(e)(2)(B) with Rule 37(e)(1).  If spoliation is merely

5

***prejudicial*** but not intentional, Rule 37(e)(1) allows the Court to impose "measures no greater than

6

necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).  However, where Plaintiffs prove intent, as

7

they did here, they need not also prove prejudice, and the Court need not also find prejudice as a

8

predicate for a jury instruction.  *See WeRide Corp.*, 2020 WL 1967209 at *9 ("[T]here is no

9

requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2)."); *see also*

10

Fed. R. Civ. P. 37 advisory committee note to 2015 amdmt. ("Subdivision (e)(2) does not include a

11

requirement that the court find prejudice to the party deprived of the information.  This is because the

12

finding of intent required by the subdivision can support not only an inference that the lost information

13

was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing

14

party was prejudiced by the loss of information that would have favored its position.").

15

In any event, Google's destruction of instant messages ***has*** prejudiced Plaintiffs.  Google Chat

16

is routinely used for substantive business communications, including ones squarely relevant to this

17

litigation.  (*See* Tr. 66:21-68:7 (Lopez) (acknowledging that Plaintiffs presented numerous examples of

18

substantive business communications in Chat).)  It is a tool designed ***by Google*** for business

19

collaboration, not merely for setting up lunch dates.[6]  Mr. Lopez testified that Chats "ha[ve] no

20

character limits," and allow users to "attach . . . document[s]," and include "links to other websites."

21

(*Id.* 74:4-22.)  As he testified, Google employees use Chat for "[a]nything under the sun they want to

22

communicate."  (*Id.* 47:9-10.)  Yet Google has systematically deleted—and continues to delete—an

23

unknown but unquestionably large number of Chats, depriving Plaintiffs of relevant evidence.

24

Deletion of Chats that contain relevant evidence is clearly prejudicial to Plaintiffs.  *See, e.g.*, *Resolute*

25

26

_____

[6] (*See, e.g.*, Google blog post titled "Upgrading from Google Hangouts to Google Chat" ("Moving

27

to Google Chat opens up new and better ways to connect and collaborate. For example, users can edit
Docs, Slides or Sheets with side-by-side editing, making it easier to collaborate while continuing the

28

conversation. . . . [W]e hope users will appreciate our continued investment in making chat a powerful
place to create and collaborate."); https://blog.google/products/workspace/hangouts-to-chat/.)

1   *Forest Prod., Inc. v. Greenpeace Int'l*, 2022 WL 16637990, at *10 (N.D. Cal. Nov. 2, 2022) (finding

2   prejudice where Skype messages were deleted).

3          Google's specific arguments as to a purported lack of prejudice are similarly unavailing:

4          ***First***, Google argues that prejudice is limited to the period following Epic's August 2020

5   complaint because "Plaintiffs did not argue in their motion that Google had any duty to preserve chats

6   prior to the filing of Epic's Complaint." (Google Br. 5.)  Not so.  Plaintiffs argued that the

7   preservation obligation attached "at least by" that date. (Dkt. 348-01 at 6.)  But Google received a CID

8   from the U.S. Department of Justice covering, among other things, Google's anticompetitive conduct

9   concerning the Play Store much earlier—at least by **October 7, 2019**. (Tr. 128:1-4; 129:9-11.)  The

10  DOJ CID explicitly requested documents related to "competition between the Google Play Store and

11  other Mobile Wireless Application stores or individual applications."  It expressly defined

12  "documents" to include "chats, instant messages, text messages, messaging applications . . . ."  The

13  CID also instructed Google of its preservation obligations and referred Google to 18 U.S.C. §1505,

14  which makes it a crime for a target to willfully destroy written material that is the subject of the

15  demand. (Zaken Decl. Ex. 2 at 1, 17-18.)  In January 2020, the DOJ's CID was quickly followed by a

16  CID from a Plaintiff State in this case.  (*See* GOOG-PLAY3-000012530.)  The State CID sought,

17  among other things, ████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  (GOOG-PLAY3-000012530.)  Google's attempt to limit the prejudice suffered by Plaintiffs to the

21  period following the filing of the instant lawsuit in August 2020 therefore fails.[7]

22

23  [7] Many, if not all, of the custodians in this case have been consistently subject to multiple litigation
    holds while employed at Google.  In fact, Mr. Rosenberg testified that he has been "placed under many
24  litigation holds" during his time at Google, which he assumed covered "pretty much every aspect of
    [his] job." (Tr. 99:4-6;11-13.)  He could not "recall a time where [he] w[as] not under at least one
25  litigation hold." (*Id.* 99:8-10.)  Similarly, Tian Lim testified that this case was "probably one of at
    least ten or more other litigation holds that [he] was on" and that they spanned "every aspect of the
26  work [he] was doing at Google." (Lim Tr. 20:25-21:3; 37:7-18.)  Jim Kolotouros testified that ████
    ████████████████████
27  ████████████████         (Zaken Decl. Ex. 11 (Kolotouros Tr.) 480:24-481:3.)  Yet as Google admits, it
28  has taken the same approach to preserving and deleting Chats for legal hold recipients in all of its
    matters for at least the last five years. (Google Br. 2.)

1    *Second*, Google argues that prejudice is limited to the 21 custodians for which the parties

2    agreed to conduct limited post-Complaint discovery.  (Google Br. 5-6.)  But those 21 custodians are

3    the **key business people** involved in matters core to this case.  That is precisely why Plaintiffs insisted

4    on post-Complaint discovery with respect to those custodians.[8]  And because Google's ongoing Chat

5    destruction involves **all** of its employees, that prejudice cannot be remedied by ordering

6    post-Complaint discovery from the remaining custodians or from other hold notice recipients in this

7    case.

8        *Third*, Google argues that prejudice is minimal because of the volume of **other** ESI produced

9    from the files of post-Complaint custodians.[9]  (Google Br. 6.)  But Google does not get to choose

10   which part of its discovery obligation it wants to comply with; producing some responsive materials

11   does not absolve Google from its duty to preserve and produce *all* responsive materials.  The volume

12   of **other** ESI Google has produced is meaningless when it has destroyed an immeasurable number of

13   relevant documents.  In fact, Mr. Lopez testified that he did not "do any qualitative analysis to

14   understand how many chats are sent within Google on a daily basis" and cannot say "how many chats

15   versus how many e-mails are sent on a given day."  (Tr. 51:21-52:1.)

16       Moreover, the evidence shows that Google specifically steered sensitive communications from

17   email to Chats, suggesting the destroyed Chats would not be duplicative or cumulative.  Google's

18   internal documents reflect instructions to employees to take sensitive communications—including

19

20       [8] The custodians for which Plaintiffs sought post-complaint discovery include Jamie Rosenberg
21   (Vice President, Android), Hiroshi Lockheimer (Senior Vice President, Platforms and Ecosystems),
     Purnima Kochikar (Vice President, Play Partnerships; formerly Director of Apps and Games at Google
22   Play), Sameer Samat (Vice President, Product management for Android and Google Play), Ruth Porat
     (Chief Financial Officer), Tian Lim (Vice President, Mobile User Experience and Product at Google
23   Play), among many others in positions core to the issues in this case.  (*See* Dkt. 429-1, Ex. 18.)

24       [9] The cases that Google points to in support of this argument are inapposite.  Neither involved
     conduct that comes close to Google's intentional decision not to preserve relevant ESI, and the *Rhoda*
25   case was decided under the more permissive standard of Rule 37(e)(1) prior to the 2015 amendment.
     *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 508-20
26   (S.D.N.Y. 2022) (finding defendant lacked intent to spoliate evidence where there were only "isolated
     gaps" of preserved evidence, which defendant responded to promptly when notified by plaintiffs);
27   *Rhoda v. Rhoda*, 2017 WL 4712419, at *4 (S.D.N.Y. Oct. 3, 2017) (applying more permissive standard
     under Rule 37(e) prior to 2015 amendment and finding lack of intent where email messages were
28   inadvertently deleted).

1   those at the heart of this litigation—to Chat.  For example, a document on Google's "Communicate

2   with Care" program acknowledges that Google is "constantly in the public eye . . . and the courthouse"

3   and that it "often ha[s] to produce employee communications as evidence."  (PX-120 at 4.)  In light of

4   this, Google reminds employees not to say sensitive things over email and that to "Chat 'off the

5   record'" is "[b]etter than sending the email, but not without risk."  (*Id*. at 14.)

6        Google employees heed that instruction.  In fact, it is "assum[ed] within Google that employees

7   "turn History off to discuss sensitive topics."  (Zaken Decl. Ex. 3 at 7.)  Employees told each other to

8   "[c]omment freely" on certain documents, but cautioned that discussions of "***anything sensitive***"

9   should be ***"move[d] to Chat/video call***."  (PX-9 at 2 (emphasis added).)  In another document, an

10  employee deleted a sentence in a Google executive's talking points regarding an alleged "compet[ing] .

11  . . game platform" and commented ***"[s]ince it's a sensitive topic, I prefer to discuss offline or over***

12  ***hangout.***"  (PX-31 at 4 (emphasis added).)  In another, a Google executive gave a "[r]eminder: do not

13  speculate on legal matters over email or ***(saved)*** chat." (Zaken Decl. Ex. 4 (emphasis added,

14  parenthesis in original).)  In yet another example, in an email sent on August 13, 2020, the day Epic

15  filed its complaint, Ms. Kochikar cautioned other leaders for Google Play not to discuss the "payment

16  policy clarification" for Play or the "Fortnite situation" in on-the-record Chats because those Chats,

17  unlike one-on-ones or group Chats, "***remain in perpetuity***."  (Zaken Decl. Ex. 5 at 1 (emphasis

18  added).)  Having spent years ensuring that sensitive communications are made only over "off-the-

19  record" Chats, and are not duplicated in e-mail, it is not credible for Google to now argue that the on-

20  the-record documents it produced are duplicative of the off-the-record Chats it destroyed.

21        In any event, courts routinely find that parties are prejudiced within the meaning of

22  Rule 37(e)(1) even if there is some chance that spoliated ESI is duplicative of other evidence.  *See,*

23  *e.g.*, *Small v. Univ. Med. Ctr.*, 2018 WL 3795238, at *69-71 (D. Nev. Aug. 9, 2018) (awarding Rule

24  37(e)(1) sanctions even where destroyed ESI was "likely to be found in other locations"); *Kelley v.*

25  *BMO Harris Bank N.A.*, 2022 WL 2801180, at *11 (D. Minn. July 18, 2022) ("Even if the spoliated

26  evidence is cumulative to some extent, the availability of the same or similar evidence from third

27  parties or other sources does not necessarily demonstrate a lack of prejudice.") (collecting cases).

28

1   Here, Google has spoliated a significant volume of evidence, leaving Plaintiffs with no way to know

2   what is missing.

3        *Fourth*, Google's argument that any deleted Chats are relevant only to the intent behind

4   Google's business practices is also without merit.  The deleted Google Chats are likely to have

5   included all sorts of evidence, including direct evidence of Google's dealings with competitors.  For

6   example, discovery in this case has revealed that, when it came to discussing the sensitive issue of

7   whether ███████ was going to distribute third party applications in competition with Google, Google

8   executives (including Mr. Rosenberg) have long made efforts to "████████████████████████

9   █████████." (Zaken Decl. Ex. 6 at 1.) (emphasis added).  It is likely that these "███████"

10  discussions contained relevant evidence about dealing with competitors like ███████.  Ms. Kochikar,

11  who does not recall taking any steps to turn history on, emailed ████████████████████████

12  ███████████████████████████████████████████

13  ███. (Zaken Decl. Ex. 7 at 1.)   Yet Google steadfastly maintains Plaintiffs have no evidence of an

14  actual agreement—***evidence that may be contained in deleted Chats***.  As another example, ████

15  ███████████████████████████████████████████.

16  (Zaken Decl. Ex. 8.)  In addition, Mr. Rosenberg acknowledged at the hearing that he had his Chat

17  history turned off when discussing with his colleague Jim Kolotouros negotiations with Samsung

18  regarding Project Banyan, a Google project that sought to eliminate the competitive threat to Google

19  posed by the Galaxy Store in exchange for paying Samsung hundreds of millions of dollars.  (Tr.

20  92:19-93:10; PX-37.)

21       *Fifth*, Google's argument that among the custodians questioned by Plaintiffs, none testified that

22  they used Chats for purposes related to this litigation and failed to preserve them (Google Br. 6)

23  ignores repeated admissions from those very custodians that they did not preserve ***any*** Chats.  (See Tr.

24  89:18-23, 103:14-17 (Rosenberg); Zaken Decl. Ex. 9 (Bankhead Dep. Tr.) 234:11-235:13; *id.*, Ex. 10

25  (Kochikar Dep. Tr.) 21:24-22:9.)  For example, Tian Lim testified that he purported to preserve Chats

26  by summarizing them, that he did not consider the legal hold in deciding whether to save a Chat

27  because "I'm under so many legal holds, it's impossible to think that way," and that it was "probably

28  correct" that there were substantive business communications in Chats that were deleted after the

1    institution of the hold notice.  (Lim. Tr. 37:25-39:6; 40:23-41:6; 46:24-47:22.)  Google witnesses have

2    also understated the extent to which they use Chats.  Ruth Porat, Google's Global CFO, denied using

3    Google Chat "during meetings where you have questions about the substance of those meetings," but

4    then was confronted with a Chat where she did exactly that.  (Dkt. 389-6 (Porat Tr.) 69:2-69:10.)  In

5    fact, as discussed above, the evidence shows that Google employees purposely channeled

6    communications relevant to this litigation to Chats.

7    Even if Google's characterization of the testimony were accurate (which it is not), any

8    expectation that Google's custodians would fully comprehend the complex issues in this case—and

9    thereby be able to decide each day, for each conversation in each Chat, whether it needed to be

10   preserved—would be unreasonable.  (*See* Plaintiffs' Br. 4.)

11   **iii.      Plaintiffs' Proposed Additional Remedies Are Appropriate and Warranted.**

12   In a last-ditch effort to keep its destruction of documents far away from the factfinder, Google

13   argues that certain remedies that the Court proposed and Plaintiffs had asked for (in addition to a jury

14   instruction)—namely, prohibiting Google from asserting a defense based on Plaintiffs' lack of

15   evidence and allowing Plaintiffs to present evidence on Google's lack of preservation—are

16   inappropriate.  Google's arguments against both remedies are unpersuasive.  While Plaintiffs do not

17   think these remedies alone are sufficient to remedy the harm caused by Google's misconduct, they are

18   appropriate supplements to Plaintiffs' proposed jury instruction.  (*See* Plaintiffs' Br. 11-12.)

19   ***First***, precluding Google from arguing that Plaintiffs have no evidence to support their factual

20   claims or assertions is appropriate because it is highly likely that Google's spoliation deprived

21   Plaintiffs of critical evidence.  It is also necessary to ensure that Google cannot gain an unfair

22   advantage from its discovery violation, and it is consistent with prior practice even for cases decided

23   under Rule 37(e)(1).  *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2018 WL

24   5786206, at *2-3 (D. Or. Nov. 5, 2018) (ordering similar remedy).

25   Google's assertion that such a remedy would be equivalent to a terminating sanction or adverse

26   presumption is incorrect.  The Court proposed, and Plaintiffs requested, that Google be precluded from

27   arguing that ***Plaintiffs*** failed to produce evidence of an element upon which ***Plaintiffs*** have the burden

28   of proof.  (*See* Tr. 135:19-20.)  Google's recitation of the advisory committee notes to Rule 37—which

1  state that an order "precluding a party from offering any evidence in support of, the central claim or

2  only defense in the case" would be inappropriate under Rule 37(e)(1)—is beside the point.  The

3  prohibition of the remedy in Rule 37(e)(1) is irrelevant where, as here, sanctions under Rule 37(e)(2)

4  are appropriate and warranted.  Moreover, precluding Google from arguing that Plaintiffs have offered

5  no evidence in support of **their** claims is plainly not equivalent to precluding *Google* from introducing

6  any evidence in support of its only defense in the case.

7        Google's argument that this remedy would raise due process concerns is likewise misplaced.

8  Google encourages its employees to use off-the-record Chats for sensitive business communications

9  and then intentionally destroys those Chats, and the Chats that Google did preserve and produce in this

10  case show that Google in fact uses Chats to discuss highly relevant topics.  A sanction preventing

11  Google from arguing that Plaintiffs have failed to present sufficient evidence on a specific issue is

12  directly related to that misconduct.  The only Ninth Circuit case Google points to **affirmed** the district

13  court's chosen sanction, finding that "due process concerns [were] not implicated."  *Anheuser-Busch,*

14  *Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 354–55 (9th Cir. 1995).  Google's other authorities are

15  similarly irrelevant, as both involved circuit court reversals based on specific findings that the district

16  court orders at issue did not demonstrate a sufficient nexus between the chosen sanctions and the

17  misconduct at issue.  *See Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1151-52 (11th

18  Cir. 2006) (reversing sanctions order because district court "failed to state any reasons" why the

19  sanctions at issue were relevant); *Gen. Ins. Co. of Am. v. E. Consol. Utils., Inc.*, 126 F.3d 215, 221 (3d

20  Cir. 1997) (reversing district court's sanction because it did not contain a limitation "for the purposes

21  of the action" and related to a claim that "would not have been subject to the pending litigation").

22              **iv.      Google's Proposed Remedies Are Not Commensurate with Google's Serious
                          Misconduct.**

23

24        Google has identified three potential remedies, all of which are toothless.  Despite the Court's

25  admonition that spoliation would warrant "a substantial trial-related penalty" (Tr. 134:9-10), two out of

26  three of Google's proposed remedies have nothing to do with trial.  Google's blatant attempts to keep

27  the facts of its destruction of relevant evidence away from the jury should be rejected.

28

1      Google first proposes that it merely pay Plaintiffs off for its intentional destruction of instant

2 messages.  But paying fees and expenses does not *remedy* the conduct, it just compensates Plaintiffs

3 for the costs of *uncovering* the conduct.  This does not even amount to a slap on the wrist for one of

4 the world's most profitable companies.  When Google made the calculated decision to intentionally

5 destroy Chats, it was undoubtedly hoping for *exactly this consequence* if it ever got caught.

6      Google's next proposal is to search for and produce Chats *it is still deleting every 24 hours*

7 from additional custodians.  That suggestion is hard to take seriously.  Not only is this "remedy" not

8 trial-related, it effectively amounts to an offer to search the empty boxes that once contained

9 documents it has shredded.  That fruitless exercise will not *remedy* the prejudice suffered by Plaintiffs.

10      Google finally proposes that it be prohibited from introducing as trial exhibits certain Chats.

11 That is not a "substantial" penalty.  It is hardly a penalty at all.  The fact that Google continues to

12 automatically delete these Chats strongly suggests it had no intention of using Chats at trial, even if it

13 could get its own internal communications into evidence over hearsay objections.  Regardless, it would

14 be a hollow remedy because Google witnesses could simply testify to the same underlying facts.

15      Google needs to be made to understand the severity of its willful spoliation of evidence and its

16 deliberate decisions to mislead Plaintiffs and the Court.  Google's proposed "remedies" should be

17 rejected.

18

19

20

21

22

23

24

25

26

27

28

Dated: January 27, 2023                 CRAVATH, SWAINE & MOORE LLP
                                                             Christine Varney *(pro hac vice)*
                                                             Gary A. Bornstein *(pro hac vice)*
                                                             Timothy G. Cameron *(pro hac vice)*
                                                             Yonatan Even *(pro hac vice)*
                                                             Lauren A. Moskowitz *(pro hac vice)*
                                                             Justin C. Clarke *(pro hac vice)*
                                                             Michael J. Zaken *(pro hac vice)*
                                                             M. Brent Byars *(pro hac vice)*


                                                         FAEGRE DRINKER BIDDLE & REATH LLP
                                                             Paul J. Riehle (SBN 115199)

                                                         Respectfully submitted,

                                                         By: */s/ Lauren A. Moskowitz*
                                                             Lauren A. Moskowitz

                                                             *Counsel for Plaintiff Epic Games, Inc.*


Dated:  January 27, 2023                 BARTLIT BECK LLP
                                                             Karma M. Giulianelli

                                                         KAPLAN FOX & KILSHEIMER LLP
                                                             Hae Sung Nam

                                                         Respectfully submitted,

                                                         By: */s/ Karma M. Giulianelli*
                                                             Karma M. Giulianelli

                                                             *Co-Lead Counsel for the Class in In re Google Play
                                                             Consumer Antitrust Litigation*


Dated:  January 27, 2023                 PRITZKER LEVINE LLP
                                                             Elizabeth C. Pritzker

                                                         Respectfully submitted,

                                                         By: */s/ Elizabeth C. Pritzker*
                                                             Elizabeth C. Pritzker

                                                             *Liaison Counsel for the Class in In re Google Play
                                                             Consumer Antitrust Litigation*

1

Dated:  January 27, 2023

OFFICE OF THE UTAH ATTORNEY GENERAL
Brendan P. Glackin
Lauren M. Weinstein

2

3

Respectfully submitted,

4

By: _/s/ Brendan P. Glackin_____

5

Brendan P. Glackin

6

*Counsel for the Plaintiff States*

7

8

Dated:  January 27, 2023

HUESTON HENNIGAN LLP
Douglas J. Dixon
Christine Woodin
Joseph A. Reiter

9

10

11

Respectfully submitted,

12

By: _/s/ Douglas J. Dixon_____

13

Douglas J. Dixon

14

*Counsel for Plaintiffs Match Group, LLC et al.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E-FILING ATTESTATION

I, Brian Wang, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Brian Wang*
Brian Wang