Brendan Glackin (SBN 199643)
bglackin@agutah.gov
Lauren Weinstein (*pro hac vice*)
lweinstein@agutah.gov
David N. Sonnenreich (*pro hac vice*)
dsonnenreich@agutah.gov
Scott R. Ryther (*pro hac vice*)
sryther@agutah.gov
Brendan C. Benedict (*pro hac vice*)
bbenedict@agutah.gov
Michael D. Altebrando (*pro hac vice*)
maltebrando@agutah.gov
Bahadur Khan (*pro hac vice*)
bkhan@agutah.gov
**UTAH OFFICE OF THE ATTORNEY GENERAL**
160 East 300 South, Fifth Floor
P.O. Box 140874
Salt Lake City, UT 84114
Telephone: (801) 366-0375

S. Ethan Bowers (*pro hac vice*)
Ethan.Bowers@ag.tn.gov
**TENNESSEE OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722

Sarah G. Boyce (*pro hac vice*)
sboyce@ncdoj.gov
Jonathan Marx (*pro hac vice*)
jmarx@ncdoj.gov
Jessica V. Sutton (*pro hac vice*)
jsutton2@ncdoj.gov
**NORTH CAROLINA DEPARTMENT OF JUSTICE**
P.O. Box 628
Raleigh, NC 27602
Telephone: (919) 716-6000

Elinor Hoffmann (*pro hac vice*)
elinor.hoffmann@ag.ny.gov
Bryan L. Bloom (*pro hac vice*)
bryan.bloom@ag.ny.gov
Morgan Feder (*pro hac vice*)
morgan.feder@ag.ny.gov
Benjamin Julian Cole (*pro hac vice*)
benjamin.cole@ag.ny.gov
**NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL**
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8262

*Attorneys for the Plaintiff States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**STATE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DEFER OR STAY TRIAL**<br><br>Judge: Hon. James Donato<br>Date: April 20, 2023 at 10 a.m. PDT<br>Courtroom: 11 |

STATE PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO STAY TRIAL                                       Case No. 3:21-cv-05227-JD

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................... 1

TABLE OF AUTHORITIES .............................................................................................................. 2

INTRODUCTION ............................................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................................. 2

ARGUMENT ....................................................................................................................................... 3

I. The Interests of 39 Sovereigns in Safeguarding Competition Outweigh Any Efficiency Google Contends Would be Gained by a Stay ............................................................... 3

    A. Public Policy Favors the Advancement of State *Parens* Actions ....................................... 3

    B. The Recent Venue Amendment to the MDL Statute Reflects Clear Legislative Intent Not to Delay State Antitrust Enforcement Actions .................................................................. 4

    C. The States' Potential Use of Dr. Singer Does Not Support Delaying a Liability Trial on the States' Claims .............................................................................................................. 6

II. The Stay Factors Support a November Trial of the States' Case ........................................... 7

    A. Google Mischaracterizes the Stay Factors ............................................................................ 7

    B. Google's Arguments Fail Under Either Test ....................................................................... 8

III. The Court Has A Better Option That Would Protect the Public Interest ............................. 10

CONCLUSION .................................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Boardman v. Pac. Seafood Grp.*,
  822 F.3d 1011 (9th Cir. 2016) .................................................................................................. 10

*California v. ARC Am. Corp.*,
  490 U.S. 93 (1989) ....................................................................................................................... 1

*California v. Frito-Lay, Inc.*,
  474 F.2d 774 (9th Cir. 1973) ................................................................................................... 3-4

*Carr v. Google*,
  No. 22-80140 (9th Cir. Dec. 9, 2022) ....................................................................................... 6

*Georgia v. Tennessee Copper Co.*,
  206 U.S. 230 (1907) .................................................................................................................... 3

*Gilman v. Davis*,
  2009 WL 3365858 (E.D. Cal. Oct. 15, 2009) ........................................................................ 10

*Hawaii v. Standard Oil Co.*,
  405 U.S. 251 (1972) .................................................................................................................... 3

*Illinois vs. Abbott & Assocs.*,
  460 U.S. 557 (1983) ................................................................................................................ 4, 6

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
  2014 WL 558759 (E.D.N.Y. Feb. 11, 2014) ........................................................................... 5

*In re Elec. Books Antitrust Litig.*,
  14 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................................ 6

*In re Grand Jury Investig. of Cuisinarts, Inc.*,
  665 F.2d 24 (2d Cir. 1981) ......................................................................................................... 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  286 F.R.D. 88 (D.D.C. 2012) .................................................................................................. 10

*Int'l Mort. & Inv. Corp. v. Von Clemm*,
  301 F.2d 857 (2d Cir. 1962) ....................................................................................................... 5

*Johnson v. City of Mesa*,
  2022 WL 137619 (D. Ariz. Jan. 14, 2022) .............................................................................. 7

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................................................... 8

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) .................................................................................................. 8

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ............................................................................................ 8-9

*Lopez v. Liberty Mut. Ins. Co.*,
    2019 WL 1452906 (C.D. Cal. Jan. 9, 2019) ................................................................. 7-8, 10

*Louisiana v. Texas*,
    176 U.S. 1 (1900) .................................................................................................................. 3

*Mauss v. Nuvasive, Inc.*,
    2017 WL 4838826, (S.D. Cal. Apr. 27, 2017) ................................................................... 10

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014) .............................................................................................................. 6

*Monaco v. Bear Stearns Cos.*,
    2012 WL 12506860 (C.D. Cal. Dec. 5, 2012) ..................................................................... 8

*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013) ................................................................................................. 3

*Qualcomm Inc. v. Compal Elecs., Inc.*,
    283 F. Supp. 3d 905 (S.D. Cal. 2017) .............................................................................. 7-8

*United States v. B.F. Goodrich Co.*,
    619 F.2d 798 (9th Cir. 1980) ............................................................................................... 4

*United States v. Dentsply Int'l, Inc.*,
    190 F.R.D. 140 (D. Del. 1999) ............................................................................................ 5

*United States v. Google LLC*,
    2023 WL 2486605 (E.D. Va. March 14, 2023) ................................................................ 4-6

*United States v. Nat'l City Lines, Inc.*,
    334 U.S. 573 (1948) .............................................................................................................. 6

*Victorino v. FCA US LLC*,
    2018 WL 3438773 (S.D. Cal. July 17, 2018) ..................................................................... 8

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................................. 7

**Statutes**

15 U.S.C. § 15c ................................................................................................................................ 4, 6

15 U.S.C. § 15d ................................................................................................................................... 4

28 U.S.C. § 1407 ............................................................................................................................. 3, 4

# INTRODUCTION

Antitrust is "an area traditionally regulated by the States."[1] "Indeed, state antitrust enforcement predates federal antitrust enforcement; state antitrust statutes are older than the Sherman Act."[2] Here, the States exercise that longstanding authority to restore competition in the market for Android App Distribution. Though Google has abandoned some of the conduct challenged here in the wake of regulatory enforcement in Europe, India, and South Korea,[3] it has not made similar changes in the United States. A bipartisan coalition of 39 sovereigns brought this case to change that. Now, however, Google seeks to exploit its 23(f) appeal to continue stifling competition and siphoning monopoly profits for months, if not years, to come.

This Court should reject that effort. No matter how this Court structures trial for the other plaintiffs, the States' enforcement action must proceed, for three primary reasons.

*First*, halting the States' case until the 23(f) appeal is decided would conflict with the strong federal policy favoring speedy resolution of government antitrust enforcement actions. In two related contexts—extending *parens patriae* standing to Clayton Act damages claims and the recent exemption of state antitrust suits from MDL centralization—Congress has adopted statutory mechanisms to ensure that private parties' lawsuits do not delay state enforcement actions. Staying the States' case would controvert this clear congressional intent.

*Second*, Google fails to justify a stay under the law. Google faces little or no prospect of harm from a trial as-scheduled because the non-class plaintiffs—the States, Epic, Match, and the named consumer plaintiffs—all intend to try their cases eventually, whatever the result of the 23(f) appeal. Conversely, the States and the public *will* be harmed by a delay that allows Google to

---

[1] *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989).
[2] Robert L. Hubbard & James Yoon, *How the Antitrust Modernization Comm'n Should View State Antitrust Enforcement*, 17 Loy. Consumer L. Rev. 497, 505 (2005); *see also ARC Am.*, 490 U.S. at 101 n.4.
[3] Google, *Updates to Android and Google Play in India* (Jan. 25, 2023), https://blog.google/intl/en-in/updates-to-android-and-google-play-in-india/; Case T-604/18, *Google LLC v. Comm'n* (Sept. 14, 2022), *available at*: http://bit.ly/40EEaVA; Wilson White, *Enabling Alternative Billing Systems for Users in South Korea* (Nov. 4, 2021), https://developers-kr.googleblog.com/2021/11/enabling-alternative-billing-in-korea-en.html.

STATE PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO STAY TRIAL           1                    Case No. 3:21-cv-05227-JD

further subvert competition and reap monopoly profits. The balance of harms here outweighs any showing that Google could make about the likelihood of success of its appeal.

*Third*, there is a better solution to a stay that would continue to allow for a November trial—specifically, a joint trial on antitrust issues common to all plaintiffs. The Court has long preferred this approach, and it is appropriate here. Non-overlapping issues, such as Match damages, States and consumer class damages, and Google's counterclaims, can be tried separately. Regardless how the Court structures the trial, the States' claims should not be delayed.

Trial cannot wait another year or more. The Court should deny the motion and either hold a joint trial on common antitrust issues, as consumers proposed and the Court has planned all along, or let the States try their full case to a jury this November.

## FACTUAL BACKGROUND

For the States, this case began in 2019, when a bipartisan group of States and Commonwealths launched an investigation into Google's Play Store dominance.[4] Epic filed the first Play Store case in August 2020. The States' action followed in July 2021. The States quickly got up to speed with the existing trial schedule and sought just one brief extension after Google produced voluminous Play Store data.[5]

To better streamline and organize prosecution of the case, the States entered a Joint Prosecution Agreement ("JPA") with lead counsel for the consumer class.[6] As part of their cooperation, and to avoid duplication of expert testimony, the States and consumers jointly retained a survey expert, and each reserved the right to call the other's testifying economic expert at trial. The States retained Dr. Marc Rysman, chair of the Department of Economics at Boston University. The consumers retained Dr. Hal Singer, who also testified in support of class certification.

---

[4] Steve Lohr, *Google Antitrust Investigation Outlined by State Attorneys General*, N.Y. Times (Sept. 9, 2019), *available at*: https://nyti.ms/3TLIDDE.
[5] *See* MDL Dkt. 307 at 2 (Aug. 3, 2022).
[6] MDL Dkt. 251-2 at 2 (May 26, 2022).

STATE PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO STAY TRIAL           2                    Case No. 3:21-cv-05227-JD

# ARGUMENT

## I. The Interests of 39 Sovereigns in Safeguarding Competition Outweigh Any Efficiency Google Contends Would be Gained by a Stay

The States' interests in promptly stopping Google's challenged conduct outweigh every efficiency that Google claims a stay would bring. In two major laws, Congress has underscored its clear policy that government enforcement actions should be resolved quickly. *First*, Congress amended the Clayton Act to authorize States to bring *parens* actions for damages precisely because consumer antitrust class actions can be difficult to certify. *Second*, just last year, Congress amended the MDL statute to exempt state enforcers from centralization to protect them from delays caused by corresponding private litigation.[7] Finally, the States' potential reliance on Dr. Singer is no reason to delay trial. Google seeks to undermine Congress's choice to exempt the States from the requirements of class certification by imposing those requirements through a procedural back door. That is not the law.

### A. Public Policy Favors the Advancement of State *Parens* Actions

State *parens patriae* actions apply "an ancient concept of our basic English common law—the power of the sovereign to sue as *parens patriae* on behalf of the weak and helpless of the realm."[8] It has been an aspect of state sovereignty since the Founding, when "the '*parens patriae*' function of the King passed to the States."[9] Over time, *parens patriae* authority expanded beyond the limited scope of English law.[10]

In *California v. Frito-Lay, Inc.*, 474 F.2d 774, 778 (9th Cir. 1973), however, the Ninth Circuit held that States could not bring *parens* damages claims under the Clayton Act. Congress responded by expressly authorizing such claims in the Antitrust Improvement Act of 1976, now

---

[7] 28 U.S.C. § 1407(g).
[8] H.R. REP. 94-499, 8-9, 1976 U.S.C.C.A.N. 2572, 2578. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215 (2d Cir. 2013) (State *parens* authority "has its antecedent in the common-law concept of the 'royal prerogative,' that is, the king's inherent power to act as the guardian for those 'under legal disabilities to act for themselves.'" (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257 (1972))).
[9] *Hawaii*, 405 U.S. at 257.
[10] *See Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907) (Holmes, J.); *Louisiana v. Texas*, 176 U.S. 1, 19 (1900).

known as the Hart-Scott-Rodino Act.[11] The House Report explained that the "thrust of the bill is to overturn *Frito-Lay* by allowing State attorneys general to act as consumer advocates in the enforcement process, while at the same time avoiding the problems of manageability which some courts have found under Rule 23."[12] Focused on "the difficulty of achieving class certification of consumer actions under Rule 23" and the "complexity of measuring and distributing damages" to the class, Congress saw *parens* actions as a necessary complement—and a more expedient alternative—to class actions.[13] Hart-Scott-Rodino therefore puts "the State attorneys general on a different footing than private parties seeking redress for antitrust violations."[14] In particular, "Congress removed the barrier presented by Rule 23 by eliminating the requirement of class certification in *parens patriae* actions" and explicitly "permitting damages to be computed through aggregation techniques."[15]

### B.    The Recent Venue Amendment to the MDL Statute Reflects Clear Legislative Intent Not to Delay State Antitrust Enforcement Actions

Last year Congress again endorsed the importance of quickly resolving state *parens* cases by exempting them from pretrial centralization under the MDL statute.[16] Federal antitrust enforcers have long enjoyed this protection, which "was included at the suggestion of the Department of Justice in a letter" to the House Judiciary Committee considering the original MDL bill in 1968.[17] Recognizing that the carveout "may occasionally burden defendants" with duplication, the Department of Justice nevertheless considered any such burden "justified by the importance to the public of securing relief in antitrust cases as quickly as possible."[18] Congress agreed, and courts

---

[11] *See* 15 U.S.C. § 15c (as codified).
[12] H.R. REP. 94-499, 8, 1976 U.S.C.C.A.N. 2572, 2578.
[13] *Illinois vs. Abbott & Assocs.*, 460 U.S. 557, 573 n.29 (1983).
[14] *United States v. B.F. Goodrich Co.*, 619 F.2d 798, 800-01 (9th Cir. 1980).
[15] *In re Grand Jury Investig. of Cuisinarts, Inc.*, 665 F.2d 24, 35 (2d Cir. 1981) (citing 15 U.S.C. §§ 15c(a), 15d).
[16] *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (2022) (amending 28 U.S.C. § 1407(g)).
[17] *United States v. Google LLC*, 2023 WL 2486605, at *5 (E.D. Va. March 14, 2023).
[18] *Id.* (quoting H.R. REP. No. 90-1130, at 5, 8, reprinted in 1968 U.S.C.C.A.N. at 1902, 1905 (quoting letter from Deputy Att'y Gen. R. Clark (Jan. 7, 1966))).

nationwide have read this law to embody a broader public policy against delay of federal antitrust enforcement actions, usually in the context of deciding transfer or consolidation motions.[19] As one court put it, "Congress has made the decision that inefficiencies and inconvenience to antitrust defendants are trumped by an unwillingness to countenance delay in the prosecution of Government antitrust litigation."[20]

That public policy now expressly applies to state *parens* suits as well. The expanded carveout to exempt state antitrust actions from MDL centralization became law in December 2022.[21] The amendment reflects Congress's judgment that "[d]elays in antitrust enforcement are also undesirable when the antitrust laws are enforced by a state."[22] Though it is only months old, the new law is already having an impact: it was applied two weeks ago in a case where the Department of Justice and eight States challenge Google's advertising business practices. Google moved to transfer that action from the Eastern District of Virginia to the Southern District of New York, where dozens of similar challenges from private parties have been centralized into an MDL.[23] The court denied the motion, citing the legislative history behind the original federal exemption from MDL centralization as well as Congress's recent decision to extend that treatment to State-led antitrust suits.[24] As the court explained, the "policy considerations animating the [government] exemption are persuasive" and outweigh "concerns about judicial economy, duplicative litigation, and the risk of inconsistent judgments."[25]

---

[19] *See, e.g.*, *Int'l Mort. & Inv. Corp. v. Von Clemm*, 301 F.2d 857, 862 (2d Cir. 1962) (describing the "policy of not encumbering government antitrust suits with a multitude of collateral issues"); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 2014 WL 558759, at *2 (E.D.N.Y. Feb. 11, 2014) (denying motion to consolidate enforcement trial with private actions).
[20] *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 146 (D. Del. 1999).
[21] *See* 136 Stat. at 5970.
[22] H.R. REP. 117-494, at 3 (Sept. 26, 2022); *see also id.* at 2.
[23] *See United States v. Google LLC*, 2023 WL 2486605, at *1.
[24] *See generally id.* at *4-*7 (citing H.R. REP. 117-494, at 3 (carveout was meant to "eliminate[ ] the delay, inefficiency, and associated higher cost that a state may encounter under the existing law" by "reducing the length of antitrust litigation, including by eliminating unnecessary delays that are the result of the JPML process")).
[25] *Google*, 2023 WL 2486605, at *6.

The same congressional policy applies here. As Congress has made clear, prompt resolution of this enforcement action is paramount. Indeed, the State Antitrust Enforcement Venue Act is a clear directive for courts to "subordinate concerns about judicial economy to the government and public's interest in efficient resolution of antitrust enforcement actions without delay and the need to prevent such suits from becoming bogged down with related private suits."[26] Stalling the States' trial for a year or longer would "violate Congress' declared policy of expediting this type of litigation."[27]

### C. The States' Potential Use of Dr. Singer Does Not Support Delaying a Liability Trial on the States' Claims

Google argues that the States' trial should be stayed because the States may call Dr. Singer to testify about his overcharge damages model.[28] If the Court accepts consumers' proposal to have a joint trial on common antitrust issues in November and try the fact, and amount, of damages later, this becomes moot because the States would consent to have their damages case bifurcated as well. Google also overstates the appeal's impact on the States' ability to try their case.

*First*, the States can rely on Dr. Singer's overcharge model at trial even if the class is decertified on appeal. Google's 23(f) petition does not contest admissibility under *Daubert*; instead, Google argues that Dr. Singer's analysis does not satisfy the "rigorous analysis" standard operative in the Rule 23 context.[29] Congress has made clear, however, that Rule 23 does not apply to *parens* actions.[30] The 23(f) appeal thus should not affect the States' claims.

*Second*, Google fails to mention that the States have also retained Dr. Marc Rysman to testify on damages to consumers. Dr. Rysman does not duplicate Dr. Singer's work. Instead, Dr. Rysman uses a model of monopolistic competition to estimate the harm to consumers, including

---

[26] *Google*, 2023 WL 2486605, at *6.
[27] *United States v. Nat'l City Lines, Inc.*, 334 U.S. 573, 589 (1948).
[28] Mot. at 4, 11.
[29] Pet. for Permission to Appeal at 1, *Carr v. Google*, No. 22-80140 (9th Cir. Dec. 9, 2022).
[30] *Abbott*, 460 U.S.at 573 n.29 (citing 15 U.S.C. § 15c(a)); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 164 (2014) (holding that *parens* suits are not mass actions under CAFA); *In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 535-36 (S.D.N.Y. 2014) (collecting legislative history and cases).

STATE PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO STAY TRIAL        6                    Case No. 3:21-cv-05227-JD

the harm caused by having fewer Android apps enter the market (a consumer welfare calculation the economic literature calls the "variety effect"[31]). The 23(f) appeal does not implicate Dr. Rysman's damages models.

*Third*, Dr. Singer's merits opinions include other damages models not challenged in the 23(f) appeal: one showing a direct overcharge to consumers via reduced discounts (compared to the discounts Google would have provided in the but-for world); the other based on real-world discounts offered by Amazon.

In short, because the States can rely on any—or all—of these different damages models, they can proceed to a full trial of their case whatever the fate of the consumer class action.

## II. The Stay Factors Support a November Trial of the States' Case

Google balances the stay factors incorrectly and fails to show that a stay is warranted under any of them.[32] As the authority Google cites points out, "the *Nken* factors substantially overlap the *Landis* factors."[33] Google cannot meet its burden under either test.

### A. Google Mischaracterizes the Stay Factors

To begin with, Google claims that a stronger showing on one stay factor can "offset" a weaker showing on another.[34] Google is only partially correct. "The Ninth Circuit's standard for stay requests is adopted from the preliminary injunction context."[35] Since the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*,[36] it has been clear that a preliminary injunction—and, likewise, a stay—may be granted only if a movant shows more than a bare "possibility" of irreparable harm.[37] In essence, *Winter* "raised the bar on what must be shown on the irreparable harm prong" and permitted balancing only "so long as a certain threshold showing

---

[31] *See, e.g.*, Jerry A. Hausman & Gregory K. Leonard, *The Competitive Effects of New Product Introduction: A Case Study*, 50 J. of Indus. Econ. 237, 238 (Sept. 2002).
[32] Mot. § II.
[33] *Johnson v. City of Mesa*, 2022 WL 137619, at *2 n.1 (D. Ariz. Jan. 14, 2022) (cited at Mot. 5).
[34] Mot. at 6.
[35] *Lopez v. Liberty Mut. Ins. Co.*, 2019 WL 1452906, at *2 (C.D. Cal. Jan. 9, 2019).
[36] 555 U.S. 7 (2008).
[37] *Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905, 912-13 (S.D. Cal. 2017).

STATE PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO STAY TRIAL           7              Case No. 3:21-cv-05227-JD

is made on each factor."[38] As a result, the "offset" approach works only one way—a strong showing of irreparable harm can offset a lesser showing on the merits.[39] But nothing can "offset" the need to show an "unqualified likelihood of irreparable harm."[40]

Courts balance the *Landis* factors similarly. "*Landis* cautions that 'if there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'"[41] But Google establishes neither clear harm nor likelihood of success on the merits, so there is nothing to balance. Whatever the test, Google's arguments fail.

### B. Google's Arguments Fail Under Either Test

*Harm to Google*. Google claims it has shown harm because, if liability is tried before the Ninth Circuit rules, it "will incur substantial, unrecoverable time, money, and resources."[42] Further, Google asserts that if the class is decertified after trial, Google will be unable to recoup "unnecessary" litigation costs.[43] Courts routinely reject these claims.[44] Litigation costs that are inevitable, manageable, or avoidable do not demonstrate harm.[45] Here, the costs are inevitable because all of the plaintiff groups (including the named consumer plaintiffs) can proceed to trial no matter what happens on interlocutory appeal. At that trial, the liability evidence will be the same regardless of whether consumers are a class or not. And the models from Dr. Singer and Dr. Rysman that are not at issue in the 23(f) appeal can support liability, separate and apart from damages. Courts have recognized that if an individual suit can move forward despite decertification, that defeats the possibility of harm.[46] Google also complains that it will be unable

---

[38] *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).
[39] *Qualcomm*, 283 F. Supp. 3d at 913.
[40] *Id.* at 913-14.
[41] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).
[42] Mot. at 7.
[43] *Id.* at 8.
[44] *See, e.g.*, *Monaco v. Bear Stearns Cos.*, 2012 WL 12506860, at *4 (C.D. Cal. Dec. 5, 2012) (collecting cases).
[45] *See Victorino v. FCA US LLC*, 2018 WL 3438773, at *2 (S.D. Cal. July 17, 2018).
[46] *Id.*; *see also Lopez*, 2019 WL 1452906, at *4 (costs inevitable where named plaintiffs can proceed).

to bind the class if it wins the trial before the Ninth Circuit decides the appeal.[47] However, simply defending a lawsuit, "without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."[48]

*Likelihood of Success*. Google fails to argue that it is likely to succeed on the merits of its appeal. Rather, Google argues only that it has a "substantial prospect" of vacating class certification because the grant of the 23(f) petition "demonstrates that serious legal questions are at issue."[49] Even were that the proper standard, serious questions about the appeal cannot justify a stay without a clear case of hardship—which Google fails to make out.

*Harm to the Non-Movants.* Under the *Landis* factors, "neither the balance of hardships between the parties, nor the prospect of narrowing the factual and legal issues" between actions "justifies a stay" of an antitrust enforcement trial.[50] In *Mirant*, the California Attorney General sought divestiture of three power plants under the Clayton Act.[51] The district court stayed that action under *Landis* pending resolution of the defendants' Chapter 11 proceedings.[52] On appeal, the Ninth Circuit vacated the stay and reversed the district court's *Landis* holding, explaining that because "the Attorney General seeks injunctive relief against ongoing and future harm," a stay raised "more than" a fair possibility of harm to the non-moving parties and public.[53] The same is true here. Congress's declared policy and the States' own sovereign prerogatives both support a swift trial.

*Harm to the Public Interest*. Google argues that a lengthy trial delay serves the public interest because the public has an interest in accurate judicial outcomes and the "efficient use of

---

[47] Mot. at 8.
[48] *Mirant*, 398 F.3d at 1112.
[49] Mot. at 7 (citation omitted).
[50] *Mirant*, 398 F.3d at 1112.
[51] *Id.* at 1100.
[52] *Id.* The automatic stay for bankruptcy proceedings did not apply, because federal law carves out an exception for actions brought by "governmental unit[s] . . . to enforce [their] police or regulatory power." *Id.* at 1107, 1109 (citing 11 U.S.C. § 362(b)(4)).
[53] *Id.* at 1112.

government resources."[54] Google has not "explained how a stay will improve the 'accuracy' of this case's resolution."[55] And "[w]hile the public has an interest in the efficient use of government resources and accuracy of judicial proceedings, it also has an interest in 'efficient prosecution of . . . laws and seeking to hold alleged corporate wrongdoers accountable.'"[56] Google ignores the significant public interest in moving the States' case forward expeditiously: "A stay would postpone any compensation that [States] might receive [for their consumers] if plaintiffs succeed on the merits, and would delay a definitive resolution of the case regardless of who ultimately prevails."[57] In addition, a trial this year will conserve government resources. Delaying trial a year means another year the States must incur litigation costs. For Google, by contrast, a stay means another year of collecting monopoly rents at the expense of innovation, entry, and consumers. Protecting competition, not Google's costs, is "vital to the public interest."[58]

### III.    The Court Has A Better Option That Would Protect the Public Interest

The Court has a better option available that would protect the interest of the public in speedy adjudication of these claims, while also respecting the Ninth Circuit's grant of Google's petition. As the consumer class suggests, a joint trial on antitrust questions common to all parties would produce a special verdict on core antitrust issues going to the legality of Google's conduct (*e.g.*, tying, market definition, monopoly power, and restraint of competition in the relevant markets). Next, the Court could immediately try to the same jury Match's damages claims and Google's counterclaims. If plaintiffs prevail, the Court could also begin shaping appropriate injunctive relief. Because this approach addresses the immediate concern of halting Google's wrongful conduct, the States would consent to try the fact and amount of damages at a later date,

---

[54] Mot. at 8.
[55] *Gilman v. Davis*, 2009 WL 3365858, at *5 (E.D. Cal. Oct. 15, 2009).
[56] *Lopez*, 2019 WL 1452906, at *5 (quoting *Mauss v. Nuvasive, Inc.*, 2017 WL 4838826, at *2 (S.D. Cal. Apr. 27, 2017)).
[57] *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012).
[58] *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (citation omitted) (emphasis omitted).

STATE PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO STAY TRIAL                10                 Case No. 3:21-cv-05227-JD

after the 23(f) appeal is resolved. This would be no pioneering adventure; bifurcation is so common in antitrust cases that there is an ABA model jury instruction[59] on the topic.[60]

Alternatively, if the Court stays the class case, the States should be permitted to try their entire case on the current schedule, either alongside Epic and Match or alone. While the question need not be decided now, the States currently anticipate asking for a trial plan that would see common questions decided first, before proceeding to separate consideration (before the same jury, in different phases) of damages and counterclaims. And Google faces little or no risk of unfair prejudice. If Google wins the liability trial and the Ninth Circuit decertifies the class, there will likely never be another jury trial of any significance as to damages. Furthermore, this Court will hear any trial of remaining injunctive claims, presumably informed by the record in the first trial. Moreover, should Google lose its appeal, it simply pays the consequences of a meritless appeal of the class certification order, rather than being rewarded with a long delay of this case. There is nothing unfairly prejudicial about that.

## CONCLUSION

Google's motion to stay the trial should be denied.

March 30, 2023                                         Respectfully submitted,

                                                       By:    /s/ Sarah G. Boyce
                                                              Sarah G. Boyce
                                                              Deputy Attorney General and
                                                                General Counsel
                                                              North Carolina Department of Justice

Sarah G. Boyce (*pro hac vice*)                        Brendan Glackin (SBN 199643)
sboyce@ncdoj.gov                                       bglackin@agutah.gov
Jonathan Marx (*pro hac vice*)                         Lauren Weinstein (*pro hac vice*)
jmarx@ncdoj.gov                                        lweinstein@agutah.gov

---

[59] American Bar Association, *Model Jury Instructions in Civil Antitrust Cases* (2016), p. 306, "Instruction 2: Antitrust Damages, Bifurcated Trial."

[60] For purposes of brevity and efficiency, the States refer the Court to consumers' responses to Google's Seventh Amendment and Article III arguments.

| | |
|---|---|
| Jessica V. Sutton (*pro hac vice*)<br>jsutton2@ncdoj.gov<br>**NORTH CAROLINA DEPARTMENT OF JUSTICE**<br>P.O. Box 628<br>Raleigh, NC 27602<br>Telephone: (919) 716-6000<br><br>S. Ethan Bowers (*pro hac vice*)<br>Ethan.Bowers@ag.tn.gov<br>**TENNESSEE OFFICE OF THE ATTORNEY GENERAL**<br>P.O. Box 20207<br>Nashville, TN 37202<br>Telephone: (615) 741-8722 | David N. Sonnenreich (*pro hac vice*)<br>dsonnenreich@agutah.gov<br>Scott R. Ryther (*pro hac vice*)<br>sryther@agutah.gov<br>Brendan C. Benedict (*pro hac vice*)<br>bbenedict@agutah.gov<br>Michael D. Altebrando (*pro hac vice*)<br>maltebrando@agutah.gov<br>Bahadur Khan (*pro hac vice*)<br>bkhan@agutah.gov<br>**UTAH OFFICE OF THE ATTORNEY GENERAL**<br>160 East 300 South, Fifth Floor<br>P.O. Box 140874<br>Salt Lake City, UT 84114<br>Telephone: (801) 366-0375<br><br>Elinor Hoffmann (*pro hac vice*)<br>elinor.hoffmann@ag.ny.gov<br>Bryan L. Bloom (*pro hac vice*)<br>bryan.bloom@ag.ny.gov<br>Morgan Feder (*pro hac vice*)<br>morgan.feder@ag.ny.gov<br>Benjamin Julian Cole (*pro hac vice*)<br>benjamin.cole@ag.ny.gov<br>**NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL**<br>28 Liberty Street<br>New York, NY 10005<br>Telephone: (212) 416-8262<br><br>*Attorneys for the Plaintiff States* |