# EXHIBIT 14

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1       UNITED STATES DISTRICT COURT
2     FOR THE NORTHERN DISTRICT OF CALIFORNIA
3            SAN FRANCISCO DIVISION
4   ------------------------------------------------x
5   IN RE GOOGLE PLAY STORE              Case No.
    ANTITRUST LITIGATION                 3:21-md-02981-JD
6
    THIS DOCUMENT RELATES TO:
7
    Epic Games Inc. v. Google LLC,
8   et al.,
    Case No. 3:20-cv-05671-JD
9
10  ------------------------------------------------x
11
12       *HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY*
13
14     REMOTE VIDEOTAPED DEPOSITION BY VIRTUAL ZOOM OF
15                   DOUGLAS BERNHEIM
16               Thursday, April 6, 2023
17
18
19
20
21
22
23
24  Reported By: Lynne Ledanois, CSR 6811
25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

1          UNITED STATES DISTRICT COURT
2       FOR THE NORTHERN DISTRICT OF CALIFORNIA
3             SAN FRANCISCO DIVISION
4  ------------------------------------------------x
5  IN RE GOOGLE PLAY STORE              Case No.
   ANTITRUST LITIGATION                 3:21-md-02981-JD
6
   THIS DOCUMENT RELATES TO:
7
   Epic Games Inc. v. Google LLC,
8  et al.,
   Case No. 3:20-cv-05671-JD
9
   ------------------------------------------------x
10
11
12
13       Remote videotaped deposition of DOUGLAS
14  BERNHEIM, taken in Los Altos, California commencing
15  at 9:05 a.m. on Thursday, April 6, 2023 before Lynne
16  Ledanois, Certified Shorthand Reporter No. 6811.
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

1              REMOTE APPEARANCES
2
3   Counsel for Plaintiff Epic Games, Inc. in:
4   Epic Games, Inc. v. Google LLC, et al:
5           CRAVATH, SWAINE & MOORE LLP
6           BY: GARY A. BORNSTEIN
7               ASHLEY ULRICH
8           Attorneys at Law
9           825 Eighth Avenue
10          New York, New York 10019
11          gbornstein@cravath.com
12          aulrich@cravath.com
13
14  Counsel for Google LLC, et al:
15          MUNGER TOLLES & OLSON LLP
16          BY: KYLE W. MACH
17              JAMIE LUGURI   (Los Angeles)
18          Attorneys at Law
19          560 Mission Street
20          27th Floor
21          San Francisco, California 94105
22          kyle.mach@mto.com
23          jamie.luguri@mto.com
24
25   ///

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 4

```
                REMOTE APPEARANCES


Counsel for Plaintiff States:
          OFFICE OF THE ATTORNEY GENERAL
          STATE OF UTAH
          BY: MICHAEL ALTEBRANDO
          Attorney at Law
          111 S. Main Street
          Suite 1800
          Salt Lake City, Utah 84111
          maltebrando@agutah.gov
-and-
          OFFICE OF THE ATTORNEY GENERAL
          STATE OF NEW YORK
          BY: BRYAN BLOOM
          Attorney at Law
          28 Liberty Street
          New York, New York 10005
          Bbloom@ag.ny.gov




///
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 5

1              REMOTE APPEARANCES
2
3    Counsel for the Proposed Class In re: Google
4    Play Consumer Antitrust Litigation:
5              BARTLIT BECK
6              BY: KARMA GIULIANELLI
7              Attorney at Law
8              1801 Wewetta Street
9              Suite 1200
10             Denver, Colorado 80202
11             k.giulianelli.@bartlitbeck.com
12
13   Counsel for Plaintiffs Match Group, LLC; Humor
14   Rainbow, Inc.; PlentyofFish Media ULC; and People
15   Media:
16             HUESTON HENNIGAN
17             BY: TATE HARSHBARGER
18             Attorney at Law
19             523 West 6th Street
20             Suite 400
21             Los Angeles, California 90014
22             tharshbarger@hueston.com
23
24
25   ///

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 6

1        REMOTE APPEARANCES
2
3   ALSO PRESENT:
4   Stephen Myers, Match Group
5   Jeanette Teckman, Match Group
6   Ben Scher, Bates White
7   Eric Scher, Bates White
8   Mathis Wagner, Bates White
9   Jeffree Anderson, Videographer
10  Chinyere Woods, Veritext Tech
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 7

1          I N D E X   O F   E X A M I N A T I O N
2
3   Examination by:                                    Page
4      Mr. Mach                                         12
5
...
25   ///

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 12

1                Thursday, April 6, 2023
2                      9:05 a.m.
3    ------------------------------------------------------------
4            THE VIDEOGRAPHER:  Good morning.  We're
5    going on the record at 9:05 a.m.  And audio and
6    video recording will continue to take place unless
7    all parties agree to go off the record.
8            This is Media Unit 1 of the video-recorded
9    deposition of Douglas Bernheim taken by counsel for
10   the defendant in the matter of In Re Google Play
11   Store Antitrust Litigation filed in the United
12   States District Court for the Northern District of
13   California, San Francisco Division.  Case number is
14   3:21-md-02981-JD.
15           My name is Jeffree Anderson representing
16   Veritext and I'm the videographer.  The court
17   reporter is Lynne Ledanois from the firm Veritext.
18           All parties are recorded on the record and
19   you may swear in the witness.  Thank you.
20
21               DOUGLAS BERNHEIM, Ph.D.,
22      having been duly sworn, testified as follows:
23                       EXAMINATION
24   BY MR. MACH:
25      Q    Good morning, Dr. Bernheim.

Page 66

1        A    It is, yes.
2        Q    And on one side we have smartphone users;
3   correct?
4        A    Yes.
5        Q    And on the other side we have Android app
6   developers; correct, sir?
7        A    Yes.
8        Q    And just to use Google Play as an example
9   of a product in this market, Google Play is selling
10  its services -- Google is selling Google Play's app
11  distribution services to both smartphone users and
12  Android app developers; correct?
13       A    Simultaneously, yes.
14       Q    Focusing for a moment on smartphone users,
15  those smartphone users are the customer -- strike
16  that.
17            Smartphone users are one of Google's
18  customers for app distribution through Google Play;
19  correct?
20       A    Yes.  You can call them "customers," you can
21  call them "buyers."  I often use the words "buyers"
22  and "sellers" when I'm identifying markets.  But sure,
23  "customers" will do.
24       Q    Android app developers are also customers
25  for -- strike that.  Because I have a technical beep

Page 67

1    over here.
2            Android app developers are also one of
3    Google's customers for Google Play app distribution
4    services; correct?
5       A    Yes.
6       Q    These are your terms, so we're on the same
7    page, the developers are buyers of Android app
8    distribution services from Google; correct?
9       A    Yes, they are buyers.  Google is the seller
10   of the app distribution services.
11      Q    And so, for example, a paid dictionary --
12   strike that.
13           The developer of a paid dictionary app
14   would purchase distribution services from Google to
15   distribute that app; correct?
16      A    When we're defining markets, we don't think
17   about monetization.  Monetization is not part of the
18   product.
19           So you just think about what need is being
20   met, who's providing it and whose need it is.
21           So here we have app developers who would
22   need to get their apps into users' phones.  We have
23   users with a need to get those apps into their
24   phones.  So they are the buyers, they are the
25   customers.

Page 68

1           We have a party, Google Play in your
2    example, who's providing service to both of them at
3    the same time to make that happen.
4           So all of that is described without saying
5    who pays for what because who pays for what is a
6    question about monetization.
7           Monetization is not part of the product.
8    The product is addressing the need.
9       Q   So we used the term "buyers" a moment ago.
10   Do you recall that?
11      A   Mm-hmm.
12      Q   So if I use the term "buyer," you're
13   saying that a firm can be a buyer regardless of
14   whether it pays a positive price or a negative price
15   in effect; is that correct?
16      A   That's correct.  The way I'm using the terms
17   is a transaction involves delivering something of
18   value to parties in exchange for consideration.  That
19   consideration does not have to take the form of cash.
20          That's just the monetization issue.
21          So the question is what is being -- what
22   value is being delivered in this transaction.
23          It is the app distribution service.
24      Q   So that we don't kind of end up in an
25   eddy, I'm going to try to use your terminology here