Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY  10178-0060
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*In re Google Play Consumer Antitrust Litig.*, Case No. 3:20-cv-05761-JD<br><br>*States et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        TBD<br>Time:        TBD<br>Judge:      Hon. James Donato<br>Courtroom:      11, 19th Floor,<br>        450 Golden Gate Ave,<br>        San Francisco, CA 94102 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on a date to be set by the Court, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable James Donato, the undersigned Defendants ("Defendants"), will and hereby do move the Court for an order excluding the testimony of Plaintiff States' and Consumer Plaintiffs' (collectively, "Plaintiffs") proffered expert Dr. Marc Rysman, on the ground that testimony on the referenced subjects is not admissible under Federal Rule of Evidence 702.  This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed declaration of Rishi P. Satia, and the exhibits to that declaration, the concurrently-filed Proposed Order, the pleadings and records on file in this action, and upon additional evidence and argument that may be presented before or at the hearing of this motion.

# TABLE OF CONTENTS

**Page**

ISSUES TO BE DECIDED ........................................................................................... 1

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 3

LEGAL STANDARD ................................................................................................... 6

ARGUMENT ............................................................................................................... 7

    I.     DR. RYSMAN'S VARIETY MODEL IS BASED ON AN INJURY THAT IS
           NOT COMPENSABLE UNDER THE ANTITRUST LAWS ............................... 7

    II.    DR. RYSMAN'S VARIETY MODEL MUST BE EXCLUDED BECAUSE
           IT IS UNTETHERED TO PLAINTIFFS' THEORY OF LIABILITY. ..................... 9

    III.   DR. RYSMAN'S VARIETY MODEL IS UNRELIABLE AS IT IS BASED
           ON UNWARRANTED ASSUMPTIONS AND IS UNSUPPORTED BY
           ECONOMIC REALITY ...................................................................................... 11

    IV.   DR. RYSMAN'S OVERCHARGE MODEL IS UNRELIABLE AS IT IS
           INCOMPLETE AND DUPLICATIVE OF HAL SINGER'S FLAWED
           PASS-THROUGH MODEL ............................................................................... 13

CONCLUSION ............................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*,
135 F. Supp. 2d 1031 (N.D. Cal. 2001) ...................................................................11

*Berg v. First State Ins. Co.*,
915 F.2d 460 (9th Cir. 1990) ................................................................1, 9, 12, 13

*Bhan v. NME Hosps., Inc.*,
669 F. Supp. 998 (E.D. Cal. 1987), *aff'd*, 929 F.2d 1404 (9th Cir. 1991)...........................8, 9

*Bourjaily v. U.S.*,
483 U.S. 171 (1987)..................................................................................6

*Boyar v. Korean Air Lines Co.*,
954 F. Supp. 4 (D.D.C. 1996) ........................................................................11

*In re Capacitors Antitrust Litig. (No. III)*,
No. 14-CV-03264-JD, 2018 WL 5980139 (N.D. Cal. Nov. 14, 2018)....................................7

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..............................................................................2, 9, 11

*CZ Services, Inc. v. Express Scripts Holding Co.*,
Case No. 3:18-cv-04217-JD, 2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) ........................7, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)..............................................................................*passim*

*Davidson v. Apple, Inc.*,
No. 16-cv-4942, 2018 WL 2325426 (N.D. Cal. May 8, 2018)..................................9

*DSU Med. Corp. v. JMS Co.*,
296 F. Supp. 2d 1140 (N.D. Cal. 2003) ..................................................6

*DZ Rsrv. v. Meta Platforms, Inc.*,
No. 3:18-CV-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022)
(Donato, J.).......................................................................................9, 11

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ...................................................................7

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)............................................................................7, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Google Play Store Antitrust Litig.*,
   No. 20-CV-05761-JD, 2022 WL 17252587 (N.D. Cal. Nov. 28, 2022)
   (Donato, J.) ........................................................................................................10

*Guidroz–Brault v. Mo. Pac. R. Co.*,
   254 F.3d 825 (9th Cir. 2001) ...........................................................................11

*Heflebower v. JPMorgan Chase Bank*,
   NA, No. 1:12-CV-1671 AWI SMS, 2014 WL 897352 (E.D. Cal. Mar. 6,
   2014) ..................................................................................................................9

*Laumann v. Nat'l Hockey League*,
   117 F. Supp. 3d 299 (S.D.N.Y. 2015) ..............................................................11

*In re MyFord Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ..............................................................11

*Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*,
   185 F.3d 957 (9th Cir. 1999) .............................................................................8

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979) ...........................................................................................8

*Toomey v. Nextel Commc'ns, Inc.*,
   No. C-03-2887 MMC, 2004 WL 5512967 (N.D. Cal. Sept. 23, 2004) .............11

*U.S. v. Hermanek*,
   289 F.3d 1076 (9th Cir. 2002) ...........................................................................6

*Young v. Schultz*,
   No. 22-CV-05203-TSH, 2023 WL 1784758 (N.D. Cal. Feb. 6, 2023) ..............8

**Statutes**

15 U.S.C. § 15 .......................................................................................................7-8

Alaska Stat. Ann. § 45.50.576 ...............................................................................8

Ariz. Rev. Stat. Ann. § 44-1408 ............................................................................8

Cal. Bus. & Prof. Code § 16760 ............................................................................8

Cal. Bus. & Prof. Code § 17204 ............................................................................8

Colo. Rev. Stat. Ann. § 6-4-111 ............................................................................8

Conn. Gen. Stat. Ann. § 35-35 ..............................................................................8

D.C. Code Ann. § 28-4507 .....................................................................................8

Del. Code Ann. tit. 6, § 2108 ...................................................................................8

Fla. Stat. Ann. § 542.22 .........................................................................................8

Ind. Code Ann. § 24-1-2-7 .....................................................................................8

Ky. Rev. Stat. Ann. § 367.175 ...............................................................................8

Ky. Rev. Stat. Ann. § 367.220 ...............................................................................8

La. Stat. Ann. § 51:137 ..........................................................................................8

Mass. Gen. Laws Ann. ch. 93A, § 4 ......................................................................8

Mass. Gen. Laws Ann. ch. 93A, § 11 ....................................................................8

Md. Code Ann., Com. Law § 11-209 .....................................................................8

Mo. Ann. Stat. § 416.121 .......................................................................................8

N.H. Rev. Stat. Ann. § 356:4-c ..............................................................................8

N.J. Stat. Ann. § 56:9-12 ........................................................................................8

N.M. Stat. Ann. § 57-1-3 ........................................................................................8

Neb. Rev. Stat. Ann. § 59-821 ...............................................................................8

Nev. Rev. Stat. Ann. § 598A.210 ...........................................................................8

Okla. Stat. Ann. tit. 79, § 205 ................................................................................8

Or. Rev. Stat. Ann. § 646.780 ................................................................................8

S.D. Codified Laws § 37-1-14.3 .............................................................................8

Tex. Bus. & Com. Code Ann. § 15.20 ....................................................................8

Utah Code § 76-10-3109 .........................................................................................8

Va. Code Ann. § 59.1-9.15 .....................................................................................8

W. Va. Code Ann. § 47-18-9 ..................................................................................8

Wash. Rev. Code Ann. § 19.86.090 ........................................................................8

**Other Authorities**

Fed. R. Evid. 702 ............................................................................................. *passim*

Fed. R. Evid. 403 ...........................................................................................7, 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUES TO BE DECIDED**

Whether the Court should exclude the expert opinions on damages of the Plaintiff States' expert Dr. Marc Rysman as unreliable under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**INTRODUCTION**

In addition to relying on the multiple overcharge and consumer subsidy damages models offered by Dr. Hal Singer, Plaintiff States and Consumer Plaintiffs (collectively, "Plaintiffs") also seek damages based on a model offered by Dr. Marc Rysman.[1]  In an attempt to show injury and damages, Dr. Rysman creates a "variety" model that purports to quantify the increase in consumers' happiness that would result from supposedly having more Android app variety in a world without Google's challenged conduct.  This model is inconsistent with Dr. Singer's overcharge damages model.  Dr. Singer opines that *all* developers would have significantly reduced prices if they had paid lower service fees instead of keeping those savings for themselves.  Dr. Rysman's variety model assumes that *no* developers would have reduced prices. Instead, he opines that because developers would keep the savings from lower service fees, app development would be more profitable, which would have resulted in the entry of hundreds of thousands of additional Android apps.  However, Dr. Rysman cannot identify even one app that did not enter because Google's service fees were too high.  His "variety" model should be excluded for three reasons.

*First*, Plaintiffs cannot prove injury or recover damages based on Dr. Rysman's theory as a matter of law.  The antitrust laws only permit consumers to seek damages for injuries to business or property.  Dr. Rysman's model does not evaluate or estimate damages for such injuries.  Rather, Dr. Rysman estimates the value of consumers' lost happiness—or "utility" in

---

[1] Although Dr. Rysman was retained by the Plaintiff States, when serving their opening expert reports, Consumer Plaintiffs indicated "they also may rely on and present evidence at trial from Dr. Marc Rysman regarding the calculation of variety damages."  *See* Ex. 1, L. Mason email to Defendants dated October 3, 2022.  All references to "Ex." are exhibits to the concurrently-filed declaration of Rishi P. Satia.

economic terms—which is a personal injury that is not compensable under the antitrust laws. Thus, Dr. Rysman's variety model is simply irrelevant to both antitrust injury and damages.

*Second*, Dr. Rysman's "variety" theory is disconnected from Plaintiffs' claims as alleged in the class certification motion and complaints.  As the Court previously found, the Consumer Plaintiffs' legal theory of harm is that consumers paid inflated prices for transactions involving apps that did enter the market in the real world.  The State Plaintiffs alleged the same theory in their Complaint.  But Dr. Rysman has calculated aggregate damages based on a psychic injury to consumers from the lack of additional variety from apps that did *not* enter the market in the real world.  The U.S. Supreme Court's decision in *Comcast Corp. v. Behrend* forecloses an injury and damages model that is disconnected from Plaintiffs' legal theories.

*Third*, even if injuries to happiness were recoverable under the antitrust laws, Dr. Rysman's variety model is unreliable because it makes assumptions that Dr. Rysman has repeatedly conceded do not reflect the real world.  Dr. Rysman assumes that all apps have the same price, expected quality, marginal costs, and quantity sold even though he admits that this obviously is not true in the real world because apps vary widely across all of these dimensions. He necessarily admits that his model is an "abstraction" from reality.  "Abstraction" away from the real world to calculate consumers' lost "happiness" may be appropriate for a faculty lounge, but it is not a reliable basis for a jury in a federal courtroom to award billions of dollars in damages under the antitrust laws.  That is why no Court has ever permitted an expert to estimate damages using anything remotely like Dr. Rysman's "variety" model.  The Court should exclude Dr. Rysman's testimony based on that model as to both injury and damages.

Finally, Dr. Rysman also estimates injury and damages based on alleged overcharges to consumers—the same theory of injury and damages advanced by Dr. Hal Singer.  It is improper for the States and Consumer Plaintiffs to put forward two experts to estimate jury and damages based on the same theory, though both should be excluded as unreliable.  Dr. Rysman admits that his overcharge models depend on pass-through, but concedes that he has not estimated and is not opining on the pass-through rate.  Indeed, he testified that he has no opinion on whether a 0

1   percent or 100 percent pass-through rate is more likely, which means that his opinions on

2   overcharge damages are completely speculative.  Because Dr. Rysman has not even attempted to

3   calculate a pass-through rate, these models cannot reliably estimate injury or damages.

## BACKGROUND

4

5       Dr. Rysman's variety model seeks to quantify an alleged "increase" in "consumers'

6   utility" from "a greater variety of apps on the market" that he claims would result if Google had

7   not engaged in the challenged conduct.  Ex. 2, Rysman Report ¶ 561.  Dr. Rysman posits that if

8   Google had reduced its service fees in a world without its challenged conduct and developers

9   would not pass on those lower fees by reducing prices, "more apps would enter the market"

10  because developers would "expect higher profits that are more likely to cover developers' fixed

11  costs or make developing a new app more profitable than their next best alternative option to

12  developing an app."  *Id*. at ¶ 562.

13      In his model, "consumers intrinsically value varieties (more apps)."  *Id*. at ¶ 563.  Dr.

14  Rysman's model "is trying to calculate how much happier consumers would be if they had more

15  variety of apps."  Ex. 3, Rysman Dep. Tr. at 81:22-82:1.  In other words, he is attempting to

16  calculate, as a measure of injury and damages, the total dollar value one would need to give

17  consumers to make them as happy as they would have been in the but-for world.  *See* Ex. 2,

18  Rysman Report ¶ 563.  As Dr. Rysman admitted, his "model is not trying to calculate the actual

19  dollars that consumers would have in their pocket if they had an additional app variety."  Ex. 3,

20  Rysman Dep. Tr. at 82:20-25.  Nor does it attempt to value the apps a consumer would have

21  purchased in the but-for world compared to the apps that the consumer purchased in the real

22  world.  Moreover, Dr. Rysman only tries to measure the increase in happiness in the aggregate

23  and does not attempt to calculate how any individual was harmed.  *Id.* at 83:1-12.

24      Dr. Rysman models the Android app ecosystem using a "symmetry assumption" that

25  "assumes all apps are the same in a number of ways."  *Id.* at 95:21-96:15.  Dr. Rysman admits

26  that this is an "abstraction."  Ex. 4, Rysman Rebuttal Report ¶ 350 ("To the extent I rely on

27

28

symmetry, it is an abstraction.").  Indeed, he repeatedly testified that his assumptions are at odds

with reality:

- He "solve[s] the model as if all apps have the same prices" even though "in the real world … all apps don't have the same prices."  Ex. 3, Rysman Dep. Tr. 97:4-13.

- He "let[s] all the apps have the same marginal cost" even though he would "be surprised if they all had the same marginal cost in the real world."  *Id*. at 97:14-24.

- He "assume[s] that all apps have the same entry cost", "[b]ut in the real world, all apps don't have the same entry cost."  *Id*. at 97:25-98:13.

- When he "solve[s] the damages model, all apps have the same quantity," but he admits that all apps "don't have the same quantity of sales" in the real world.  *Id*. at 98:14-99:3.

- He "assume[s] that all apps have the same quality" but agrees that "all apps don't have the same expected quality."  *Id*. at 99:4-19.

- His model "assumes that each app generates revenue through the sale of a single product at a single price," even though he "understand[s] that in the real world, apps may or a developer may monetize an app through several different prices or products at some level."  *Id*. at 101:8-102:2.

Dr. Rysman's model also predicts a "substantial" increase in happiness from the entry of

new apps in the but-for world because Dr. Rysman believes they would include "high-quality"

apps.  Ex. 2, Rysman Report ¶ 492.  Common sense suggests that the apps that actually expected

enough returns to enter in the real world contribute more to consumers' happiness than the apps

that did not expect enough returns to justify entry.  Dr. Rysman rejects that proposition based on

the assumption that app success is completely unpredictable.  He assumes that an app launched

by a large developer with a proven track record and billions in revenue is no more likely to

succeed than an app launched by a hobbyist working in a garage.  He allows for no variation in

expected success based on any measurable factors such as past performance data, app

developers' app portfolio management and past success, or observable app characteristics such

as price, category popularity, language support, package size, release date, market age, early

entrant advantage, and promotional activity.  Ex. 5, Leonard Report ¶ 147 & n.195.

For this "unpredictability" assumption, Dr. Rysman relies entirely on an unpublished,

working paper.  Ex. 2, Rysman Report ¶ 492 (citing Rebecca Janßen, Reinhold Kesler, Michael

E. Kummer, and Joel Waldfogel, "GDPR and the Lost Generation of Innovative Apps," NBER

Working Paper Series (2022) ("Janßen Paper")).  But the authors of that paper actually find app success is "partial[ly] predictabl[e]" and when "partial predictability" is imposed on the model in the study, it reduces *by half* any consumer welfare effect.  Ex. 5, Leonard Report ¶ 150; Ex. 6, Janßen Paper at 32-33.  Dr. Rysman did not test how partial predictability of app success would affect his analysis of injury and damages in this case.

When calculating the amount of variety damages that he intends to present at trial, Dr. Rysman "assume[s] that app and in-app prices do not change at all in response to reduction in Google's [service fee] and that developers keep 100% of the commission reduction that [they] would obtain in the but-for world."  Ex. 2, Rysman Report ¶¶ 22, 562.  Applying this 0% pass-through assumption to his model, Dr. Rysman predicts that in the but-for world, there would be an additional 338,993 apps that would offer paid downloads, in-app payments, or subscriptions, a 73% increase from the actual world.  Ex. 5, Leonard Report ¶ 155; Ex. 3, Rysman Dep. Tr. at 104:9-105:1.  However, Dr. Rysman did not communicate with any developer as part of his work on this case and has not identified even one of these more than 300,000 apps that supposedly would have entered the alleged market but could not do so because of Google's service fee rates. Ex. 3, Rysman Dep. Tr. at 43:25-44:4, 89:20-25, 91:6-15.

Dr. Rysman testified that he was unaware of a model similar to his variety model—which he describes as an "abstraction away from . . . the real world"—being used in any other antitrust case or of any other economist that has used such a model to calculate a reasonable estimate of damages.  *Id*. at 95:6-17, 101:8-102:10.  He also conceded that he is unaware of any academic literature in which such "macroeconomic" models are used to calculate damages.  *Id.* at 95, 100-101.

In his opening expert report, Dr. Rysman also offers two other models of injury and damages:  an overcharge model that purports to calculate "the direct effect of an inflated commission . . . on prices" charged by app developers, and a "total welfare" model that combines his overcharge and variety models.  Ex. 2, Rysman Report ¶¶ 555, 564.  Dr. Rysman testified that his overcharge model depends on the pass-through of Google's service fee, but agreed that

1   "[i]f developers would not pass through any elevated service fee that they pay to Google, then

2   consumers would not experience any overcharge damages." Ex. 3, Rysman Dep. Tr. at 49:21-

3   50:7, 50:15-20.  However, Dr. Rysman testified that he is not "provid[ing] an opinion on pass

4   through."  *Id*. at 53:14-20.  He further testified that his "report takes no position on what the

5   pass-through rate" is, *id.* at 50:21-23, and that he does not "opine on the level of reductions in

6   Google's commissions that would be passed on."  *Id.* at 50:24-51:2; *see also* Ex. 4, Rysman

7   Rebuttal Report ¶¶ 319, 320.  In fact, Dr. Rysman testified that he does not have an opinion

8   whether it is more likely that the pass-through rate is zero percent or 100 percent."  Ex. 3,

9   Rysman Dep. Tr. at 51:3-6.  Rather, he says he "consider[ed] damages estimates for 0% and

10  100% pass-through rates ('Variety Effects' and 'Total Damages' versions in my Opening

11  Report)" but chose the "Variety Effects" model as his damages estimate to be "conservative."

12  Ex. 4, Rysman Rebuttal Report ¶ 319.  But he also claims his "Total Damages" model can

13  accommodate any pass-through rate, *id.* at ¶ 320, even though he has no opinion regarding that

14  rate.

15                                    **LEGAL STANDARD**

16          Under Federal Rule of Evidence 702, a court acts as a gatekeeper and "must ensure that

17  any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*

18  *v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  "Plaintiffs have the burden to prove

19  that their expert's testimony is admissible.  *Bourjaily v. U.S.*, 483 U.S. 171, 175–76 (1987); *DSU*

20  *Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146–47 (N.D. Cal. 2003).  This requires

21  Plaintiffs to show that their expert's testimony is "based on sufficient facts or data," is "the

22  product of reliable principles and methods," and that the "expert reliably applied the principles

23  and methods to the facts of the case." Fed. R. Evid. 702(b), (d); *U.S. v. Hermanek*, 289 F.3d

24  1076, 1093 (9th Cir. 2002) (citation omitted).  "Relevance is sometimes given less attention as a

25  gatekeeping factor, but it is as much a precondition of admissibility as reliability.  An expert's

26  methods and analysis may be flawless, but '[e]xpert testimony which does not relate to any issue

27

28

1  in the case is not relevant and, ergo, non-helpful.'" *CZ Services, Inc. v. Express Scripts Holding*

2  *Co.*, Case No. 3:18-cv-04217-JD, 2020 WL 4518978, at *1, *4-5 (N.D. Cal. Aug. 5, 2020).

3          The Court will "exclude junk science that does not meet Federal Rule of Evidence 702's

4  reliability standards by making a preliminary determination that the expert's testimony is

5  reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire*

6  *Co. v. Carmichael*, 526 U.S. 137, 145 (1999)); *In re Capacitors Antitrust Litig. (No. III)*, No. 14-

7  CV-03264-JD, 2018 WL 5980139, at *11 (N.D. Cal. Nov. 14, 2018).  "[N]othing in either

8  *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that

9  is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there

10  is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*

11  *v. Joiner*, 522 U.S. 136, 146 (1997); *see also Daubert*, 509 U.S. at 592-93 (stating that expert

12  testimony is not admissible where an expert's opinion does not "fit" the "facts in issue.").

13  Moreover, under Rule 403 of the Federal Rules of Evidence, expert testimony must be excluded

14  "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusion

15  of the issues, [or is] misleading [to] the jury." Fed. R. Evid. 403.

## ARGUMENT

16          Dr. Rysman's variety damages model fails to meet the standards of Rule 702 and

18  *Daubert*.

## I.     DR. RYSMAN'S VARIETY MODEL IS BASED ON AN INJURY THAT IS NOT COMPENSABLE UNDER THE ANTITRUST LAWS

20          The Court should exclude Dr. Rysman's variety model because it estimates damages for

21  alleged "personal injuries," which are not compensable under the antitrust laws.  A plaintiff in an

22  antitrust suit may only recover damages based on injuries to "his business or property." 15

23  U.S.C. § 15(a).  Consequently, states bringing *parens patriae* actions on behalf of "natural

24  persons residing" in such states may only "secure monetary relief … for injury sustained by such

1  natural persons to their property." 15 U.S.C. § 15(c).[2]  "Personal injuries are not compensable

2  under the Sherman Act."  *Bhan v. NME Hosps., Inc.*, 669 F. Supp. 998, 1013 (E.D. Cal. 1987),

3  *aff'd*, 929 F.2d 1404 (9th Cir. 1991); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)

4  ("The phrase 'business or property' also retains restrictive significance. It would, for example,

5  exclude personal injuries suffered."); *Oregon Laborers-Emps. Health & Welfare Tr. Fund v.*

6  *Philip Morris Inc.*, 185 F.3d 957, 963-64 (9th Cir. 1999) (holding that both the Sherman Act and

7  RICO only allow damages for injuries to "business or property" and noting that even "medical

8  expenses" are not "injury to business or property"); *Young v. Schultz*, No. 22-CV-05203-TSH,

9  2023 WL 1784758, at *3 (N.D. Cal. Feb. 6, 2023) (holding "emotional distress" is not "injury to

10  business or property").

11       According to Dr. Rysman himself, his "variety" model "is trying to calculate how much

12  happier consumers would be if they had more variety of apps."  Ex. 3, Rysman Dep. Tr. at

13  81:22-82:1.  That is an estimate of damages for personal injuries, not injuries to "business" or

14  "property."  Indeed, Dr. Rysman admitted that his "model is not trying to calculate the actual

15  dollars that consumers would have in their pocket if they had an additional app variety."  *Id.* at

16  82:20-25.

17       No court has permitted injury or damages to be shown in an antitrust case based on the

18  value of the happiness that the consumers would have experienced without the alleged

19

20  [2] Similarly, the state law antitrust claims asserted by Plaintiffs are limited to those involving injury to "business or property".  *See, e.g.*, Ariz. Rev. Stat. Ann. § 44-1408; Colo. Rev. Stat.

21  Ann. § 6-4-111 (West); Alaska Stat. Ann. § 45.50.576 (West); Cal. Bus. & Prof. Code § 16760 (West); Cal. Bus. & Prof. Code § 17204 (West); Conn. Gen. Stat. Ann. § 35-35 (West); Del.

22  Code Ann. tit. 6, § 2108 (West); D.C. Code Ann. § 28-4507 (West); Fla. Stat. Ann. § 542.22 (West); Ind. Code Ann. § 24-1-2-7 (West); Ky. Rev. Stat. Ann. § 367.220 (West); Ky. Rev. Stat.

23  Ann. § 367.175 (West); La. Stat. Ann. § 51:137; Md. Code Ann., Com. Law § 11-209 (West); Mass. Gen. Laws Ann. ch. 93A, § 4 (West); Mass. Gen. Laws Ann. ch. 93A, § 11 (West); Mo.

24  Ann. Stat. § 416.121 (West); Neb. Rev. Stat. Ann. § 59-821 (West); Nev. Rev. Stat. Ann. § 598A.210 (West); N.H. Rev. Stat. Ann. § 356:4-c; N.J. Stat. Ann. § 56:9-12 (West); N.M. Stat.

25  Ann. § 57-1-3 (West); N.D. Cent. Code Ann. § 51-08.1-08 (West); Okla. Stat. Ann. tit. 79, § 205

26  (West); Or. Rev. Stat. Ann. § 646.780 (West); 6 R.I. Gen. Laws Ann. § 6-36-11 (West); S.D. Codified Laws § 37-1-14.3; Tex. Bus. & Com. Code Ann. § 15.20 (West); Utah Code § 76-10-

27  3109; Va. Code Ann. § 59.1-9.15 (West); Wash. Rev. Code Ann. § 19.86.090 (West); W. Va.

28  Code Ann. § 47-18-9 (West).

anticompetitive conduct.  Harm to consumer utility—or "happiness"—is not an injury to "property" and thus not the type of injury that is compensable under the antitrust laws.  *See Bhan*, 669 F. Supp. at 1013; *see also Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (holding that harm to "peace of mind" describes a "personal injury in the form of emotional distress" and "not a claim for an injury to property"); *Heflebower v. JPMorgan Chase Bank*, NA, No. 1:12-CV-1671 AWI SMS, 2014 WL 897352, at *7 (E.D. Cal. Mar. 6, 2014) (finding that "[e]motional distress and loss of time" are not injuries to "business or property"). Dr. Rysman's variety model must therefore be excluded under Rule 702 because it is not relevant to any appropriate measure of consumer damages under the antitrust laws.  *See CZ Services*, 2020 WL 4518978, at *4-5  (excluding damages expert based on lack of relevance).

## II.   DR. RYSMAN'S VARIETY MODEL MUST BE EXCLUDED BECAUSE IT IS UNTETHERED TO PLAINTIFFS' THEORY OF LIABILITY.

Dr. Rysman's variety model should also be excluded because it is not connected to any of Plaintiffs' legal theories of harm.  *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).  "[A]ny model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'"  *Comcast*, 569 U.S. at 35 (internal quotation marks and citations omitted).  A proposed model that purports to serve as evidence of damages "must measure only those damages attributable" to the theories alleged in the operative complaint.  *Id.*; *see also DZ Rsrv. v. Meta Platforms, Inc.*, No. 3:18-CV-04978-JD, 2022 WL 912890, at *7 (N.D. Cal. Mar. 29, 2022) (Donato, J.) (relying on *Comcast* and holding that "the damages model must reasonably reflect the claims and evidence in the case"); *Davidson v. Apple, Inc.*, No. 16-cv-4942, 2018 WL 2325426, at *23 (N.D. Cal. May 8, 2018) (excluding expert testimony that "unmoors Plaintiffs' damages from the specific touchscreen defect alleged to have harmed them").

An alleged injury to consumers' happiness from the supposed loss of app variety appears nowhere in Consumer Plaintiffs' complaint.  *See generally* Consumer Plaintiffs' Second Amended Complaint (CP-SAC), *In re Google Play Consumer Antitrust Litigation*, 3:20-cv-05761-JD, ECF. No. 241.  As this Court noted in its order granting class certification based on

Plaintiffs' overcharges damages theory but not Plaintiffs' Play Points model, "[i]t is hard to square Play Points model with plaintiffs' injury claims" given that the "[CP-]SAC never mentions fewer Play Points as another injury."[3]  *In re Google Play Store Antitrust Litig.*, No. 20-CV-05761-JD, 2022 WL 17252587, at \*13 (N.D. Cal. Nov. 28, 2022) (Donato, J.).  Dr. Rysman's variety model is even further removed from Plaintiffs' theory of liability because the Consumer Plaintiffs did not ask the Court to certify a class based on such a theory.  Nor could they.  Dr. Rysman conceded that his variety model only calculates an "aggregate damages number," and he has not "use[d] the app variety model to determine how any individual consumer was harmed."  Ex. 3, Rysman Dep. Tr. at 83:1-12 ("I don't do that calculation.").  Dr. Rysman also has not analyzed how heterogeneity among consumers would affect how their happiness would be affected by increased app variety.  *Id*. at 85:21-86:12, 88:4-89:19.

Similarly, "[i]t is hard to square" Dr. Rysman's variety model with Plaintiff States' claimed injury to consumers as alleged in their First Amended Complaint (PS-FAC).  *In re Google Play Store Antitrust Litig.*, 2022 WL 17252587, at \*13.  Like Consumer Plaintiffs' SAC, Plaintiff States' FAC focuses on consumers being harmed by paying a "supracompetitive commission" on Play store purchases. *See, e.g.*, PS-FAC, *State of Utah et al. v. Google LLC et al.*, 3:21-cv-05227-JD, ECF. No. 188 at ¶ 13 ("Consumers are harmed because Google forces them to pay a supracompetitive commission of up to 30% to purchase any non-'free-to-download' app.); *id.* at ¶ 30 ("Google's anticompetitive conduct has caused residents in each State to pay higher prices for apps on Android devices and for Android in-app payments, which has constituted ongoing, actual financial losses and has diverted resources that could otherwise be directed toward other purposes to the benefit of each State.").  The Plaintiff States do not allege decreased consumer happiness as an injury in their amended complaint.  Thus, Dr. Rysman's variety model should be excluded for Plaintiff States because it fails to "isolate

---

[3] In its Order, the Court stated that it "has not relied on the Play Points model for certification, and leaves for another day the question of whether it might be presented to a jury."  *In re Google Play Store Antitrust Litig.*, No. 20-CV-05761-JD, 2022 WL 17252587, at \*13 (N.D. Cal. Nov. 28, 2022) (Donato, J.)

damages" resulting from the "theory of antitrust impact" asserted in their FAC.  *Comcast*, 569 U.S. at 32.

### III.   DR. RYSMAN'S VARIETY MODEL IS UNRELIABLE AS IT IS BASED ON UNWARRANTED ASSUMPTIONS AND IS UNSUPPORTED BY ECONOMIC REALITY

Dr. Rysman admits that his variety model is an abstraction that relies on a number of assumptions that are contrary to real-world facts.  As such, the model is incapable of reliably proving injury or calculating damages, but is more "akin to predicting criminality by feeling the bumps on a person's head."  *DZ Rsrv.*, 2022 WL 912890, at *7 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 153 n.6 (1997) (Stevens, J., concurring in part)).  Expert opinions based on "factual assumptions [that] are 'indisputably wrong'" are excluded under *Daubert* and Rule 702. *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (excluding unreliable expert evidence "based on a fictitious set of facts"); *see also Guidroz–Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001) (excluding expert testimony that was "not sufficiently founded on the facts"); *Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 315 (S.D.N.Y. 2015) (excluding opinion that "substitutes mathematical assumptions for actual, readily-obtainable information"); *Boyar v. Korean Air Lines Co.*, 954 F. Supp. 4, 8–9 (D.D.C. 1996) (stating that courts "exclude expert testimony because the factual assumption upon which it was based was faulty and plainly contradicted by the evidence").

In *American Booksellers*, for example, this Court excluded plaintiffs' antitrust expert because his proposed damages model "contain[ed] entirely too many assumptions and simplifications that [were] not supported by real-world evidence."  *See Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041 (N.D. Cal. 2001) (finding that the expert did not base his model on actual data); *see also Toomey v. Nextel Commc'ns, Inc.*, No. C-03-2887 MMC, 2004 WL 5512967, at *12 (N.D. Cal. Sept. 23, 2004) (excluding expert's damages model that "rest[ed] on unsupported and unrealistic assumptions" the expert conceded

1   at deposition were unrealistic).  This Court should do the same with Dr. Rysman's "variety"

2   damages model.

3       *First*, Dr. Rysman admitted that he constructed his model as an "abstraction" by

4   assuming that all apps have the same price, marginal costs, entry costs, quantity of sales, and

5   quality.  Dr. Rysman conceded at deposition that all of these assumptions do not reflect the real

6   world.  *See* Ex. 3, Rysman Dep. Tr. at 97:4-102:2.  A model divorced from the facts and built on

7   concededly false assumptions is not reliable.

8       This is clear from Dr. Rysman's inability to identify a single app that would have entered

9   the alleged market in the but-for world or a single developer that was discouraged from

10  introducing an app because of Google's service fee.  *Id*. at 89:20-25, 91:6-15.  His model

11  predicts that there would be *73% more* paid, IAP, or subscription apps that would enter in the

12  but-for world.  Ex. 5, Leonard Report ¶ 155.  This translates into nearly 340,000 new apps.  *Id*.;

13  Ex. 3, Rysman Dep. Tr. at 104:9-105:1.  But Dr. Rysman fails to provide any explanation about

14  what these additional apps are, who would develop them, or why they were unable to enter in the

15  actual world.  Moreover, he did not perform a causal analysis to isolate how a reduction in

16  Google's service fee affected the number of apps available on the Play store.  Ex. 3, Rysman

17  Dep. Tr. at 105:16-24, 107:23-109:13.

18      *Second*, Dr. Rysman's variety model assumes that the apps that supposedly would have

19  entered the market (but that he cannot name) would have included many high-quality ones

20  because app success is *completely* unpredictable.  This "unpredictability" assumption defies the

21  common-sense economic inference that firms' actual behavior reflects heterogeneity in their

22  expected returns:  "in the actual world the best apps entered and lower-quality apps did not."  Ex.

23  5, Leonard Report ¶¶ 147, 151.  Moreover, low-quality apps "are not just those with a small but

24  positive quality but could also include apps that are malicious," which would *reduce* consumers'

25  happiness.  *Id*.  Dr. Rysman's only support for this "unpredictability" assumption is the

26  unpublished Janßen Paper.  But that paper found that "results on the decline in entry of

27  successful apps . . . suggests partial predictability" and accounting for that partial predictability

28

resulted in "about half" of the consumer welfare effect in the authors' model compared to when the authors assumed complete unpredictability.  *See* Ex. 6, Janßen Paper at 32-33.  That is, Dr. Rysman's only source for assuming that apps that did not enter would contribute as much to consumers' happiness as those that did enter in fact recognizes this assumption is wrong.  His failure to test how partial predictability affects his own findings renders his model inherently unreliable.  Accordingly, Dr. Rysman's calculation of the benefits of the apps that he assumes would have entered the market if Google had charged lower service fees is completely arbitrary and therefore cannot reliably support an estimate of even aggregate injury or damages.

Dr. Rysman's mantra that it is "reasonable" to assume away from real-world facts because theoretical models are used in academic literature is unavailing.  No court has allowed an expert to use a model similar to the one proposed by Dr. Rysman to show injury or damages.  That is because Dr. Rysman's model sits squarely in the realm of speculation.  The Court should exercise its gatekeeper role and exclude the "variety" model because there is "too great an analytical gap between the data" and Dr. Rysman's model.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## IV.   DR. RYSMAN'S OVERCHARGE MODEL IS UNRELIABLE AS IT IS INCOMPLETE AND DUPLICATIVE OF HAL SINGER'S FLAWED PASS-THROUGH MODEL

Dr. Rysman's estimates of injury and damages based in whole or in part on alleged overcharges also should be excluded.

*First*, Consumer Plaintiffs and Plaintiff States also are relying on the opinions of Dr. Hal Singer, who puts forward a model that purports to estimate injury and damages from supposed overcharges.  It is improper and unfair for Consumer Plaintiffs and Plaintiff States to put forward two experts to opine on the same damages theory.  Such testimony would be cumulative.  Fed. R. Evid. 403.[4]  It also would violate this Court's order requiring Plaintiffs to avoid expert duplication.  MDL ECF No. 440 at 2.

---

[4] It would also be impermissibly cumulative if Plaintiffs seek to bootstrap Dr. Rysman's overcharge models on a pass-through rate determined by another expert (e.g., Dr. Singer), *see*

*Second*, Dr. Rysman's estimates of injury and damages based on overcharges are not reliable because Dr. Rysman has not even attempted to estimate a pass-through rate.  Dr. Rysman concedes that any overcharges to users depend on developers passing through reduced services fees by lowering their prices.  He agreed that without pass-through, "consumers would not experience any overcharge damages."  Ex. 3, Rysman Dep. Tr. at 50:15-20.  However, Dr. Rysman is not "provid[ing] an opinion on pass-through" and his "report takes no position on what the pass-through rate is."  *Id.* at 50:21-51:2, 53:14-20.  He has no idea "whether it is more likely that the pass-through rate is zero percent or 100 percent."  *Id.* at 51:3-6.  Since Dr. Rysman admits that overcharges depend on pass-through, he cannot reliably opine on overcharge injury or damages where he disclaims any opinion on pass-through.

<u>**CONCLUSION**</u>

For the foregoing reasons, Dr. Rysman's variety damages model should be excluded under Federal Rule of Evidence 702 and *Daubert*.

Dated:  April 20, 2023                        Respectfully submitted,

By:    /s/ *Sujal J. Shah*
              Sujal J. Shah

Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**

---

Ex. 3, Rysman Dep. Tr. at 52:6-11, since Dr. Singer is already offering his own overcharge model.

101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

*Counsel for Defendants*