1   Brian C. Rocca, S.B. #221576
    brian.rocca@morganlewis.com
2   Sujal J. Shah, S.B. #215230
    sujal.shah@morganlewis.com
3   Michelle Park Chiu, S.B. #248421
    michelle.chiu@morganlewis.com
4   Minna Lo Naranjo, S.B. #259005
    minna.naranjo@morganlewis.com
5   Rishi P. Satia, S.B. #301958
    rishi.satia@morganlewis.com
6   **MORGAN, LEWIS & BOCKIUS LLP**
    One Market, Spear Street Tower
7   San Francisco, CA 94105
    Telephone: (415) 442-1000
8
    Richard S. Taffet, *pro hac vice*
9   richard.taffet@morganlewis.com
    **MORGAN, LEWIS & BOCKIUS LLP**
10  101 Park Avenue
    New York, NY 10178
11  Telephone: (212) 309-6000
12  *Counsel for Defendants Google LLC, et al.*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

13  Jonathan I. Kravis, *pro hac vice*
    jonathan.kravis@mto.com
14  **MUNGER, TOLLES & OLSON LLP**
    601 Massachusetts Avenue NW, Suite 500E
15  Washington, D.C. 20001
    Telephone: (202) 220-1100
16
    Neal Kumar Katyal, *pro hac vice*
17  neal.katyal@hoganlovells.com
    Jessica L. Ellsworth*, pro hac vice*
18  jessica.ellsworth@hoganlovells.com
    **HOGAN LOVELLS US LLP**
19  555 Thirteenth Street, NW
    Washington, D.C. 20004
20  Telephone: (202) 637-5600

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

This Document Relates To:

*Epic Games Inc. v. Google LLC et al.,* Case
No. 3:20-cv-05671-JD

*In re Google Play Consumer Antitrust
Litigation,* Case No. 3:20-cv-05761-JD

*State of Utah et al. v. Google LLC et al.,*
Case No. 3:21-cv-05227-JD

*Match Group, LLC et al. v. Google LLC et al.,*
Case No. 3:22-cv-02746-JD

Case No. 3:21-md-02981-JD

**DEFENDANTS' REPLY IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY
JUDGMENT**

Judge:        Hon. James Donato
Date:         August 3, 2023
Time:         10:00 a.m. Pacific Time
Courtroom: 11, 19th Floor, 450 Golden Gate
              Ave, San Francisco, California,
              94102

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT ................................................................................................................. 2

    A.    Google Is Entitled to Summary Judgment on Plaintiffs' Claim That Google Must Distribute Rival App Stores. ................................................. 2

    B.    The Games Velocity Program Must Be Evaluated Under the Rule of Reason. ........................................................................................................ 3

    C.    Plaintiffs' Claims Based on Google's Carrier RSAs Are Time-Barred. .................... 7

    D.    Consumer and State Plaintiffs Lack Standing to Seek Damages for Subscriptions and In-App Purchases. ........................................................ 10

    E.    *Epic v. Apple* Compels the Dismissal of Plaintiffs' *Per Se* Tying Claim and Does Not Undermine the Applicability of *Rick-Mik*. ............................... 14

    F.    There Is No Basis to Deny Google's Motion Under Rule 56(d). ........................... 15

III.   CONCLUSION ........................................................................................................... 15

-i-

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

*American Ad Management, Inc. v. General Telephone Co. of California*,
5    190 F.3d 1051 (9th Cir. 1999)................................................................10, 11, 12, 14

6

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019) ............................................................................................13

7

*Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*,
8    9 F.4th 1102 (9th Cir. 2021) .....................................................................................5

9

*Blue Shield of Virginia v. McCready*,
10    457 U.S. 465 (1982) ................................................................................................14

11

*Business Electronics Corp. v. Sharp Electronics Corp.*,
    485 U.S. 717 (1988) ..................................................................................................4

12

*City of Anaheim v. S. California Edison Co.*,
13    955 F.2d 1373 (9th Cir. 1992).................................................................................2

14

*Crowder v. LinkedIn Corp.*,
15    2023 WL 2405335 (N.D. Cal. Mar. 8, 2023) .......................................................8, 9

16

*Daisy Mountain Fire District v. Microsoft Corp.*,
    547 F. Supp.2d 475 (D. Md. 2008) ...........................................................................9

17

*Dimidowich v. Bell & Howell*,
18    803 F.2d 1473 (9th Cir. 1986)...................................................................................6

19

*Ekweani v. Ameriprise Financial, Inc.*,
20    2010 WL 749648 (D. Ariz. Mar. 3, 2010) ................................................................7

21

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. Apr. 24, 2023) ...........................................................3, 14, 15

22

*Family Home & Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*,
23    525 F.3d 822 (9th Cir. 2008)...................................................................................15

24

*Feitelson v. Google Inc.*,
    80 F. Supp. 3d 1019 (N.D. Cal. 2015) .......................................................10, 11, 14

25

*Frame-Wilson v. Amazon.com, Inc.*,
26    591 F. Supp. 3d 975 (W.D. Wash. 2022) ..................................................................6

27

28

-ii-

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1

**TABLE OF AUTHORITIES**
**(Cont'd)**

2

3

**Page(s)**

*FTC v. Actavis, Inc.*,
    570 U.S. 136 (2013) ..............................................................................................5

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020)...............................................................................7

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*,
    343 F.3d 1000 (9th Cir. 2003)......................................................................10, 11

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
    806 F.3d 162 (3d Cir. 2015).................................................................................14

*Hogan v. Amazon.com, Inc.*,
    2023 WL 3018866 (W.D. Wash. Apr. 20, 2023)..................................12, 13, 14

*In re Independent Service Organizations Antitrust Litig.*,
    989 F. Supp. 1131 (D. Kan. 1997) ...................................................................2, 3

*Jack Walters & Sons Corp. v. Morton Building, Inc.*,
    737 F.2d 698 (7th Cir. 1984)................................................................................4

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) ..........................................................................................7, 8

*Klein v. Facebook, Inc.*,
    580 F. Supp. 3d 743 (N.D. Cal. 2022) .................................................................8

*Klein v. Meta Platforms, Inc.*,
    2022 WL 17477101 (N.D. Cal. Dec. 6, 2022) .....................................................8

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ..........................................................................................4, 5

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) ...............................................................................12

*Masimo Corp. v. Tyco Health Care Group, L.P.*,
    2004 WL 5907538 (C.D. Cal. June 10, 2004)......................................................2

*Mayor of Baltimore v. Actelion Pharmaceuticals Ltd.*,
    995 F.3d 123 (4th Cir. 2021)................................................................................9

*Medtronic Vascular Inc. v. Abbott Cardiovascular Systems, Inc.*,
    2009 WL 2171058 (N.D. Cal. July 17, 2009) ......................................................7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

1

**TABLE OF AUTHORITIES**
**(Cont'd)**

2

Page(s)

3

*Metro Industries, Inc. v. Sammi Corp.*,
    82 F.3d 839 (9th Cir. 1996) .................................................................................6

4

5

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    269 F. Supp. 2d 1213 (C.D. Cal. 2003) .............................................................10

6

*Midbrook Flowerbulbs Holland B.V. v. Holland America Bulb Farms, Inc.*,
    874 F.3d 604 (9th Cir. 2017) .............................................................................15

7

8

*National Society of Professional Engineers v. United States*,
    435 U.S. 679 (1978) .............................................................................................4

9

10

*NCAA v. Alston*,
    141 S. Ct. 2141 (2021) .........................................................................................7

11

12

*New York v. Facebook, Inc.*,
    2022 WL 136900 (D.C. Cir. Jan. 14, 2022) ........................................................3

13

*New York v. Facebook, Inc.*,
    549 F. Supp. 3d 6 (D.D.C. 2021) .........................................................................2

14

15

*New York v. Meta Platforms, Inc.*,
    66 F.4th 288 (D.C. Cir. 2023) ..............................................................................3

16

*Oliver v. SD-3C LLC*,
    751 F.3d 1081 (9th Cir. 2014) .........................................................................8, 9

17

18

*Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co.*,
    20 F.4th 466 (9th Cir. 2021) ................................................................................7

19

20

*Paladin Associates, Inc. v. Montana Power Co.*,
    328 F.3d 1145 (9th Cir. 2003) .............................................................................5

21

*Palmer v. BRG of Georgia, Inc.*,
    498 U.S. 46 (1990) ...............................................................................................6

22

23

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,
    532 F.3d 963 (2008) .....................................................................................14, 15

24

*Snow v. Align Technology, Inc.*,
    586 F. Supp. 3d 972 (N.D. Cal. 2022) .................................................................5

25

26

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) .............................................................................10

27

28

1

**TABLE OF AUTHORITIES**
**(Cont'd)**

2

**Page(s)**

3

*In re Sugar Industry Antitrust Litig.*,
579 F.2d 13 (3d Cir. 1978) ..................................................................................12

4

5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...............................................................12

6

7

*Toscano v. PGA Tour, Inc.*,
201 F. Supp. 2d 1106 (E.D. Cal. 2002) ..................................................................3

8

*Toscano v. PGA Tour, Inc.*,
258 F.3d 978 (9th Cir. 2001) ..................................................................................3

9

10

*Valassis Communications, Inc. v. News Corp.*,
2019 WL 802093 (S.D.N.Y. Feb. 21, 2019) ..........................................................2

11

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) ................................................................................................2

12

13

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971) ................................................................................................9

14

15

**FEDERAL STATUTES**

16

Sherman Act §§ 1 and 2 .......................................................................................2, 6

17

**STATE STATUTES**

18

Cartwright Act .....................................................................................................10, 14

19

Iowa Code Ann. § 553.16......................................................................................9

20

**FEDERAL RULES**

21

Fed. R. Civ. P. 56(d)..............................................................................................15

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

# I.     __INTRODUCTION__

Plaintiffs' opposition to Google's Motion for Partial Summary Judgment does not identify any material fact in dispute, and this Court accordingly need decide only pure legal issues. In an effort to save their flawed claims, Plaintiffs ignore or misconstrue governing antitrust law. That effort is unavailing: the relevant precedent makes clear that Google is entitled to summary judgment on each ground it has raised in this targeted motion.

*First*, Plaintiffs' claim that Google must distribute rival app stores is baseless. Google's decision not to distribute rival app stores through the Google Play store is lawful, and courts have already correctly rejected Plaintiffs' theory that this decision becomes unlawful merely because it is combined with other conduct.

*Second,* Plaintiffs' *per se* claims relating to the Games Velocity Program ("GVP") also fail. *Per se* treatment is reserved only for agreements that courts have determined from experience would be invalidated under the rule of reason in almost all instances. Plaintiffs cite no case in which similar agreements were subject to *per se* treatment and provide no basis to depart from that settled precedent.

*Third,* Plaintiffs' claims based on Google's carrier revenue sharing agreements ("RSAs") are time-barred. There is no dispute that those agreements ended outside of the limitations period. And precedent makes clear that Plaintiffs cannot use later conduct within the limitations period as a bootstrap to recover for supposed injuries from those early agreements.

*Fourth*, Consumers' and State Plaintiffs' claims for damages from subscriptions and in-app purchases ("IAPs") fail because antitrust law requires plaintiffs to have suffered injury in the market where competition is allegedly restrained, and Plaintiffs' own experts demonstrate that Plaintiffs cannot satisfy that requirement.

*Finally*, Plaintiffs' tying claims fare no better. Plaintiffs rely on *Epic v. Apple* to support their theory, but that case dooms Plaintiffs' *per se* tying claims, and does not undermine Ninth Circuit case law rejecting the remaining tying claims.

Google is entitled to summary judgment on these claims as a matter of law.

II.     **ARGUMENT**

A.      **Google Is Entitled to Summary Judgment on Plaintiffs' Claim That Google Must Distribute Rival App Stores.**

Plaintiffs concede that Google has no "independent duty to deal" with competing app stores. MDL Dkt. No. 509 ("Opp.") at 6. That concession is fatal to Plaintiffs' challenge to Google's policy that it will not distribute other app stores through Google Play. Because Google has "no duty to aid competitors," *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004), Plaintiffs have no claim as a matter of law that Google's non-distribution policy "violates Sections 1 and 2 of the Sherman Act." *E.g.*, States' FAC ¶ 527.c.[1] Plaintiffs insist that they are not bringing a "refusal to deal" claim, but rather that Google's refusal to deal is part of a "complex and large web of anticompetitive practices." Opp. at 4. This cannot save Plaintiffs' theory from dismissal for the simple reason that Google's refusal to deal is, under binding precedent, not anticompetitive on its own or otherwise.

Plaintiffs' citation to *City of Anaheim v. S. California Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992), gets them nowhere. *City of Anaheim* held that courts may consider the "combined" effect of a defendant's anticompetitive conduct, but "throw[ing] into the 'mix' every potential allegation of misconduct *without regard as to whether such conduct is truly anticompetitive*" takes the case "too far." *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2004 WL 5907538, at *5–6 (C.D. Cal. June 10, 2004) (emphasis added). Any other result risks imposing liability for conduct that the antitrust laws do not condemn—like a simple refusal to deal. Thus, even monopolists do not "face liability for refusals to deal that are categorically protected from scrutiny." *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 28 (D.D.C. 2021), *aff'd* 66 F.4th 288 (D.C. Cir. 2023); *see also Valassis Commc'ns, Inc. v. News Corp.*, 2019 WL 802093, at *10 (S.D.N.Y. Feb. 21, 2019) ("[N]ot all actions of an alleged violator may be properly considered by a jury as ingredients" for a monopolization claim); *In re Indep. Serv. Org. Antitrust Litig.*, 989 F.

---

[1] Case No. 3:21-cv-05227, Dkt. No. 188 (N.D. Cal. Nov. 1, 2021) ("States' FAC").

1    Supp. 1131, 1141 (D. Kan. 1997) ("Xerox's refusal to license its patented products cannot be

2    transformed into unlawful conduct merely because of Xerox's other alleged exclusionary acts.").

3         In another recent case, state plaintiffs claimed to "allege more than a policy of refusing

4    access to competitors" but rather "a *unified, ongoing course of exclusionary conduct*." Br. for

5    Appellants at 54, *New York v. Facebook, Inc.*, 2022 WL 136900 (D.C. Cir. Jan. 14, 2022)

6    (emphasis added). The D.C. Circuit recognized that this amounted to a "claim based upon the

7    defendant's refusal to cooperate with its competitor[s,]" and dismissed the claim. *New York v.*

8    *Meta Platforms, Inc.*, 66 F.4th 288, 305 (D.C. Cir. 2023). The same result is required here.

9         Plaintiffs rely on *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 945 (9th Cir. 2023), which held

10   that even "contracts of adhesion" fall within the scope of Section 1. *Id.* at 982. However, the Ninth

11   Circuit in that case did not address the question presented here: whether a contract reflecting an

12   otherwise entirely legal refusal to deal violates Section 1. It does not. In the context of a Section 1

13   claim, a firm "has a right to deal, or refuse to deal, with whomever it likes, as long as it does so

14   independently." *Toscano v. PGA Tour, Inc.*, 258 F.3d 978, 983 (9th Cir. 2001). In *Toscano*, the

15   court held that the plaintiff failed to state a Section 1 claim where "the PGA Tour independently

16   set the terms of the contracts, and the local sponsors merely accepted them." *Id.* at 984. That

17   precedent controls here, where Plaintiffs admit that Google set the terms of its Developer

18   Distribution Agreement and developers accepted them. Opp. at 6–7.[2]

19        **B.    <u>The Games Velocity Program Must Be Evaluated Under the Rule of Reason.</u>**

20        Plaintiffs offer no basis for concluding that Google's agreements with GVP developers

21   were *per se* illegal. Plaintiffs do not dispute that the developers were Google's *customers* and that

22   the written GVP agreements did not prohibit those developers from launching their own app

23

24   ───────────────

     [2] Plaintiffs argue *Toscano* found no Section 1 violation merely because the defendant before the

25   court was not the entity that imposed the rules at issue. But, as Plaintiffs acknowledge, Section 1
     prohibits "contract[s]" in restraint of trade. Either the contract in *Toscano* was unlawful or it was

26   not, and the Ninth Circuit held that it was *not* unlawful because it was a unilateral policy adopted
     by one of the parties. Plaintiffs also assert that the district court did not dismiss Section 1 claims

27   against the PGA Tour but, in fact, the court granted summary judgment to the PGA Tour on other
     grounds, *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1126 (E.D. Cal. 2002), and the PGA

28   Tour did not argue that it did not have a duty to deal, *id.* at 1111 (describing bases for motion).

-3-

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

stores. In their opposition, Epic and Match go beyond the written agreements and assert that Google and three GVP developers "mutual[ly] underst[ood]" that the *effect* of offering incentives for developers to use Play was that those developers would not open app stores. Opp. at 7.[3] Even if that were true (and it is not), it would not establish a *per se* unlawful agreement.

"[T]he *per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue" and "can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason[.]" *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886–87 (2007). Epic and Match cite no case holding that an agreement was *per se* illegal because it lowered prices and the effect of doing so was that a customer decided to buy a product rather than make it. Plaintiffs' argument that such an agreement is a horizontal agreement not to compete ignores the principle that "a restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 n.4 (1988). Epic and Match do not address this precedent. Instead, they cite *National Society of Professional Engineers v. United States*, 435 U.S. 679, 692 (1978), which proves Google's point. There, thousands of engineers adopted an "absolute ban on competitive bidding," *id.* at 692, a horizontal agreement with obvious harms to competition.

That is nothing like the agreements between Google and its developer-customers. Even if the GVP agreements made buying services from Google more attractive than building separate app stores, one cannot "predict with confidence" that such agreements would always be anticompetitive. "Firms constantly face 'make-or-buy' decisions—that is, decisions whether to purchase a good or service in the market or to produce it internally—and ordinarily the decision, whichever way it goes, raises no antitrust question." *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 710 (7th Cir. 1984) (Posner, J.). Condemning a supplier that offers lower prices or better terms to customers—thereby decreasing customer interest in "making" rather than "buying"—would radically shift antitrust law.

---

[3] Plaintiffs cite their own response to Google's Interrogatory No. 30 for evidence of this supposed agreement, but that Interrogatory only asked whether the GVP developers would have launched an Android app store absent a GVP agreement, and that is all Plaintiffs' response addresses. *E.g.*, MDL Dkt. No. 481-4, Ex. 12 at 11–14.

-4-

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1    Epic and Match argue that "[i]f two competitors form an agreement with terms that

2  *inevitably result* in one party not competing with the other, a jury can reasonably conclude that the

3  parties had the mutual intent to agree not to compete, which is *per se* illegal." Opp. at 10–11. That

4  is not the law. "[N]ot all horizontal agreements between competitors are *per se* invalid." *Paladin*

5  *Assocs., Inc. v. Montana Power Co*., 328 F.3d 1145, 1155 (9th Cir. 2003) (emphasis added); *see*

6  *also Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1109 (9th Cir. 2021).

7    Indeed, even some agreements involving "payment in return for staying out of the market"

8  are not *per se* illegal where they involve "complexities" that make their effects uncertain. *FTC v.*

9  *Actavis, Inc*., 570 U.S. 136, 154, 159 (2013). In *Actavis*, a brand pharmaceutical manufacturer

10  made a series of deals with potential manufacturers of competing generic drugs:  (1) business

11  agreements providing payments for services and (2) a settlement agreement in which the generics

12  agreed not to launch competing products for years. The FTC alleged that the business deals were

13  payments by the brand "to stay out of its market." *Id*. at 147. The written business agreements did

14  not say this, but the FTC argued that the payments were designed "to *induce* the generic[s]" not to

15  enter the market. *Id.* at 154 (emphasis added). Recognizing that the payments in *Actavis* instead

16  "might represent payment" for services, the Supreme Court held that the "complexities" of the

17  arrangement required the alleged deal to be analyzed under the rule of reason. *Id.* at 159. The same

18  result follows here, where Match alleges that "Google paid its potential competitors to *induce*

19  them to agree not to distribute apps on Android in competition with the Google Play Store," MDL

20  Dkt. No. 380, Match FAC ¶ 273 (emphasis added), and Epic alleges that "Google paid or

21  otherwise *induced* its potential competitors to agree not to" do so, MDL Dkt. No. 378, Epic SAC

22  ¶ 198 (emphasis added).

23    Epic and Match attempt to distinguish *Actavis* because it involved a "reverse payment"

24  claim, Opp. at 11, but they provide no substantive basis to ignore the Supreme Court's reasoning,

25  which conforms to its longstanding "reluctance to adopt *per se* rules with regard to restraints

26  imposed in the context of business relationships where the economic impact of certain practices is

27  not immediately obvious." *Leegin*, 551 U.S. at 887. Plaintiffs' sole authority on this point, *Snow v.*

28  *Align Tech., Inc.*, 586 F. Supp. 3d 972, 982 (N.D. Cal. 2022), did not address any *per se* claim.

1   Epic and Match also fail to distinguish cases applying the rule of reason to "hybrid"

2   agreements that, like the GVP agreements, have both vertical and horizontal elements. Epic and

3   Match attempt to distinguish these cases on the ground that they involved "concerted refusals to

4   deal." Opp. at 9. That is incorrect. *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975 (W.D.

5   Wash. 2022), for example, did not involve a concerted refusal to deal. It involved claims that

6   customers of a platform agreed not to offer better terms elsewhere. Just as Epic and Match claim

7   that GVP developers agreed not to give preferential treatment to distribution channels off Google

8   Play, the *Frame-Wilson* plaintiffs alleged that third-party sellers agreed not to offer better prices

9   off Amazon. *Id.* at 985–86. The court there held that "[e]ven if . . . the agreements between

10  Amazon and third-party sellers contained a horizontal element, such a 'hybrid arrangement' would

11  be analyzed under the rule of reason." *Id.* at 987.

12   Nor did *Dimidowich v. Bell & Howell*, 803 F.2d 1473 (9th Cir. 1986), focus solely on a

13  refusal to deal. The defendants there allegedly "conspired to divide the market for service of B &

14  H equipment and to refuse to deal." *Id.* at 1479. The Ninth Circuit refused to apply the *per se* rule

15  after "examining the economic relationship between the parties[,]" which was "complex": they

16  competed in some respects and had a distribution relationship in others. *Id.* at 1480. This "hybrid"

17  relationship meant "rule of reason analysis would be appropriate" under the Sherman Act. *Id.* at

18  1481. The same is true here.

19   *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46 (1990), does not support Epic and Match either.

20  There, companies that had "direct[ly], and often intense[ly], compet[ed]" for years, "agreed not to

21  compete in the other's territories." *Id.* at 47, 49. Epic and Match do not allege such market

22  allocation here, where the GVP developers were undeniably customers and at most *potential*

23  competitors to Google Play. "Where the conduct at issue is not a garden-variety horizontal

24  division of a market, we have eschewed a *per se* rule and instead have utilized rule of reason

25  analysis." *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 844 (9th Cir. 1996) (agreement

26  between Korean companies to give one competitor exclusive export rights not *per se* illegal). Epic

27

28

1    and Match ignore this precedent.[4]

2         "Recognizing the inherent limits on a court's ability to master an entire industry—and

3    aware that there are often hard-to-see efficiencies attendant to complex business arrangements,"

4    the Supreme Court instructs courts to "take special care not to deploy" the *per se* rule until they

5    have "considerable experience with the type of restraint at issue" and "can predict with confidence

6    that it would be invalidated in all or almost all instances." *NCAA v. Alston*, 141 S. Ct. 2141, 2156

7    (2021). Neither is true of the GVP deals. No court holds that offering customers incentives to buy

8    a product is *per se* illegal when the incentives make it undesirable to make the product instead—a

9    widespread economic practice, particularly in "technology markets," *FTC v. Qualcomm Inc.*, 969

10   F.3d 974, 990 (9th Cir. 2020).

11        **C.    Plaintiffs' Claims Based on Google's Carrier RSAs Are Time-Barred.**

12        Plaintiffs do not dispute that the at-issue revenue sharing agreements ("RSAs") with

13   cellular carriers expired years before the limitations period. Plaintiffs provide no basis for how

14   those agreements can be the basis for a timely claim.

15        *First*, Plaintiffs are wrong that this "is a *motion in limine* masquerading as a motion for

16   partial summary judgment." Opp. at 13. Summary judgment is appropriate for untimely claims.

17   *E.g.*, *Medtronic Vascular Inc. v. Abbott Cardiovascular Sys., Inc.*, 2009 WL 2171058, at *1 (N.D.

18   Cal. July 17, 2009) (*motion in limine* making "substantive arguments that should have been raised

19   on . . . summary judgment" was "improper."); *Ekweani v. Ameriprise Fin., Inc.*, 2010 WL 749648,

20   at *2 (D. Ariz. Mar. 3, 2010) ("it [is] highly unusual to raise a statute of limitations defense by

21   way of a *motion in limine*.") (emphasis added).

22        *Second*, the "continuing violation" doctrine does not save Plaintiffs' claims. Opp. at 13.

23   "[I]n the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to

24   recover for injuries caused by earlier predicate acts that took place outside the limitations period."

25   _____

     [4] *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 481 (9th Cir. 2021) is also
26   inapposite. There, a telescope manufacturer helped pay for a competing manufacturer to buy their
     competitor "to protect their market share[.]" 20 F.4th at 479. The only "vertical" aspect of that
27   collusive scheme was that part of the payments were funneled through one manufacturer's
     distribution arm as payments for telescopes from the other. That is nothing like the GVP
28   agreements.

1   *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). This is precisely what Plaintiffs ask the

2   Court to do—to impose liability for conduct that ended *before* the limitations period because of

3   *separate* conduct within that period. Courts reject such claims. *E.g.*, *Crowder v. LinkedIn Corp.*,

4   2023 WL 2405335, at *3 (N.D. Cal. Mar. 8, 2023) (Section 2 claim time-barred to the extent it

5   was based on a pre-limitations period agreement despite argument that agreement was part of a

6   larger "course of conduct."). Google cannot become liable for RSAs that expired no later than

7   2016 because of alleged conduct that did not begin until years later. *See* Opp. at 13, MDL Dkt. No.

8   511-1 (alleging revenue sharing with OEMs beginning in 2019).

9       *Klein v. Facebook, Inc.*, is not to the contrary. 580 F. Supp. 3d 743 (N.D. Cal. 2022).

10   Although the court in *Klein* "analyze[d] five separate overt acts in determining whether Section 2

11   claims were timely," Opp. at 13, it found that each was untimely and thus never reached the

12   continuing violations doctrine. 580 F. Supp. 3d at 796. *Klein* therefore does not support Plaintiffs'

13   argument that one species of allegedly anticompetitive conduct within the limitations period can

14   make a defendant liable for other types of anticompetitive conduct outside the limitations period.

15   *Contra* Opp. at 13. Reflecting the lack of authority for premising liability on pre-limitations

16   conduct, the *Klein* plaintiffs stipulated that "they will not seek damages for, or otherwise base their

17   Section 2 claims on, 'any pre-limitations period conduct'"—an agreement the Court promised the

18   parties "will be held to." *Klein v. Meta Platforms, Inc.*, 2022 WL 17477101, at *1 (N.D. Cal. Dec.

19   6, 2022).

20       *Third*, Plaintiffs are wrong that Google can be liable for agreements that expired outside

21   the limitations period because they allege that Google charged a "supracompetitive commission"

22   within the limitations period. *Contra* Opp. at 13–14. Courts reject the argument that "each

23   payment of a monopoly price, on its own, gives rise to a continuing violation" because "the mere

24   charging of monopoly prices is not unlawful." *Crowder*, 2023 WL 2405335, at *2–3 (rejecting the

25   argument that "there was a continuing violation because the agreement persisted into the

26   limitations period and caused consumers to be overcharged"). Courts have distinguished

27   Plaintiffs' authority, *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) (cited Opp. at 14),

28   because it involved price-fixing. *See Crowder*, 2023 WL 2405335, at *3 (refusing to apply

-8-

contrary rule outside price-fixing context).[5] An agreement outside the limitations period to charge a fixed price is actionable each time the conspirators sell at that price because they implement the agreement each time. *Oliver*, 751 F.3d at 1086. Here, the carrier RSAs indisputably expired outside the limitations period.

Plaintiffs also misconstrue *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971), which involved an injury from an anticompetitive act that remained speculative until years after the act was committed. If an act's occurrence outside of the limitations period made a claim for damages from such speculative injury time-barred, the plaintiff "would be forever incapable of recovery." 401 U.S. at 340. Thus, *Zenith* holds that the statute of limitations runs only when a plaintiff suffers non-speculative injury. 401 U.S. at 339. That is why *Mayor of Baltimore v. Actelion Pharmaceuticals Ltd.*, 995 F.3d 123 (4th Cir. 2021), found claims for overcharges resulting from pre-limitations conduct timely: the scheme to extend the defendant's patent monopoly "had no illegal effect until . . . the patent expired and it was yet able to charge monopoly prices." *Id.* at 130. Plaintiffs do not argue that damages flowing from the carrier RSAs were merely speculative or did not yet cause a "supracompetitive commission" before the limitations period.

*Finally*, Plaintiffs do not dispute that, to the extent that State Plaintiffs' claims premised on the carrier RSAs arise under the laws of 31 states, those claims are time-barred for the same reasons as Plaintiffs' federal claims based on those agreements. *See* Opp. at 15 (disputing timeliness as to only 7 states and the District of Columbia).[6]

---

[5] For similar reasons, Judge Chen in *Crowder* distinguished "'pay for delay' conspiracies[,]" 2023 WL 2405335, at *3, to which the court in *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123 (4th Cir. 2021), analogized the conduct at issue, *see id.* at 132 ("alleged conduct more closely analogous to what has been termed a pay-for-delay scheme").

[6] At least some of the claims from the states that Plaintiffs identify remain untimely. *See Daisy Mountain Fire Dist. v. Microsoft Corp.*, 547 F. Supp.2d 475, 479 (D. Md. 2008) (four-year statute of limitations applies to state agencies' claims under Arizona antitrust law); Iowa Code Ann. § 553.16 ("Suit by the state to assess a civil penalty . . . under this chapter must be commenced within four years after the cause of action accrues . . . ."); *see also* States' FAC ¶ 392(c) (seeking civil penalties for Iowa antitrust claims). Whether *nullum tempus occurrit regi* applies to North Carolina's antitrust laws appears to be an issue of first impression.

-9-

1

    **D.**    <u>**Consumer and State Plaintiffs Lack Standing to Seek Damages for**</u>
<u>**Subscriptions and In-App Purchases.**</u>

2

3        Plaintiffs' opposition confirms that Consumer and State Plaintiffs lack standing to recover

4  damages for purchases of subscriptions and IAPs under federal antitrust law and the Cartwright

5  Act. Plaintiffs chose to pursue an antitrust case alleging that Google harmed competition for app

6  distribution and billing services for in-app content sold to developers, rather than competition for

7  the sale of IAPs and subscriptions to consumers. The antitrust laws provide remedies for harm to

8  competition. Having failed to allege any harm to competition for the sale of IAPs and

9  subscriptions—or even to claim that Google sells those products to consumers—Consumer and

10  State Plaintiffs lack standing to recover alleged damages on IAPs and subscriptions. Google

11  cannot be liable for antitrust damages on products that it does not sell in a market that it has not

12  monopolized.

13        "[C]ausal antitrust injury is a substantive element of an antitrust claim," *Somers v. Apple,*

14  *Inc.*, 729 F.3d 953, 963 (9th Cir. 2013), and "[a]ntitrust injury requires the plaintiff to have

15  suffered its injury in the market where competition is being restrained." *Am. Ad Mgmt., Inc. v.*

16  *Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999). Case after case repeats the same rule:

17  "The injury must occur 'in the market where competition is being restrained. Parties whose

18  injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced

19  in another market do not suffer antitrust injury.'" *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019,

20  1027 (N.D. Cal. 2015); *see also Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th

21  Cir.), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003) (explaining that a

22  requirement of antitrust injury is that "the 'injured party be a participant in the same market as the

23  alleged malefactors'") (citation omitted); *see also Metro-Goldwyn-Mayer Studios, Inc. v.*

24  *Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1224 (C.D. Cal. 2003) (same for Cartwright Act).

25        State and Consumer Plaintiffs lack antitrust standing to recover damages for subscription

26  and IAP purchases because they have not alleged that consumers suffered any such injuries in a

27  market where they claim Google restrained competition. Plaintiffs have defined markets for (1)

28  Android app distribution and (2) in-app billing services. They do not argue that injuries from

inflated subscription and IAP prices occurred in the Android app distribution market. *See* Opp. at 16–20. And Plaintiffs' own experts concede that such injuries did not occur in the market for in-app *billing services*. Dkt. No. 480-3, Ex. 2, Rysman Merits Rep. ¶¶ 137-38; Dkt. No. 480-20, Ex. 19, Singer Class Cert. Dep. 46:2-22, May 12, 2022. According to their experts, "*developers* are the customers of these services," Dkt. No. 480-3, Ex. 2, Rysman Merits Rep. ¶ 138, and they use those services to sell subscriptions and IAPs to consumers. Therefore, consumer purchases take place outside the in-app billing services market where Plaintiffs allege that Google restrained competition. Plaintiffs thus lack standing to recover antitrust damages for IAPs and subscriptions. Google explained in its opening brief that this result is consistent with *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015), which held consumers lacked standing to claim "injury in the form of supracompetitive pricing in Android phones" because that injury was not suffered in "the market in which the alleged anticompetitive conduct occurred." *Id.* at 1027–28. Plaintiffs do not even mention, let alone attempt to distinguish, *Feitelson*.

None of Plaintiffs' arguments establishes standing to recover damages to consumers on products sold outside the markets where Plaintiffs allege that competition was restrained. *First*, Plaintiffs misapply Ninth Circuit law holding that "[a]ntitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained." *Am. Ad Mgmt.*, 190 F.3d at 1057. Plaintiffs point to *Glen Holly* to argue that some plaintiffs have standing even where they are not strictly consumers or competitors in the relevant market. But the *Glen Holly* plaintiff had standing because it was "a customer-consumer who obtained goods and related services in the relevant market from the defendants." 343 F.3d at 1005. Here, Plaintiffs' own experts say that developers, not consumers, buy in-app billing services in the relevant market. That opinion also distinguishes *American Ad Management*, where the plaintiff bought advertising from the defendant publisher. 190 F.3d at 1053. Although the *American Ad Management* plaintiff acted as a broker for advertisers rather than purchasing on its own account, it still had standing as a market participant: "[as] a broker for the advertisements whose prices are allegedly restrained, American is a participant in the relevant market and it has suffered an injury in that market, the loss of commissions on advertisement purchases." 190 F.3d at 1057. Here, Plaintiffs do not assert that

-11-

1  consumers buy in-app billing services or participate in the market for those services in any way

2  comparable to the plaintiff in *American Ad Management*.

3      *Second*, Plaintiffs argue that "if the violator transacts in different markets, including

4  markets not restrained by the violation, it can be held liable at every level." Opp. at 18. But the

5  cases Plaintiffs cite for that proposition are distinguishable because they involve situations "where

6  plaintiffs purchased downstream goods from a cartel of manufacturers who made, and fixed the

7  price of, a component of those goods." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp.

8  2d 1109, 1118 (N.D. Cal. 2008) (citing *In re Linerboard Antitrust Litig.,* 305 F.3d 145, 159–60

9  (3d Cir. 2002); *In re Sugar Indus. Antitrust Litig.,* 579 F.2d 13, 17 (3d Cir. 1978)). Plaintiffs point

10  to no comparable chain of goods sold by Google. To the contrary, Plaintiffs insist that developers,

11  *not* consumers, are Google's customers for billing services and that developers, *not Google*, "are

12  the sellers" of IAPs and subscriptions. MDL Dkt. No. 480-2, Ex. 19 at 46:2-22. Plaintiffs do this

13  because their theory is that Google should not charge service fees on sales (of IAPs and

14  subscriptions) that it does not make. Google disputes that theory, but Plaintiffs must live with its

15  consequences.

16      *Third*, Plaintiffs argue that they have standing to pursue alleged damages on subscriptions

17  and IAPs because "Google collects payments for in-app content." Opp. at 17, MDL Dkt. No. 511-

18  1. That is wrong as a matter of law, as the on-point case of *Hogan v. Amazon.com, Inc.*, 2023 WL

19  3018866 (W.D. Wash. Apr. 20, 2023), demonstrates. The plaintiffs in *Hogan* claimed that (1)

20  "Amazon has used its monopoly level of power to force many Sellers who would otherwise prefer

21  a different logistics provider to instead pay for Amazon's Fulfillment services" and (2) as a result

22  third-party sellers charged them "higher prices." *Id.* at *2. Plaintiffs make parallel claims here:

23  they allege that Google "has forced" developers "to use Google Play Billing ('GPB') for all in-app

24  sales and purchases of digital content in those apps," and that Google's conduct resulted in

25  consumers paying higher prices for IAPs and subscriptions sold by developers. Opp. at 1. Just as

26  Google "remits" the sale price of IAPs and subscriptions to developers, Opp. at 18, Amazon

27  collected the sales price of goods sold by third parties and then "remit[ted]" that money to "the

28  third-party sellers," *Hogan*, 2023 WL 3018866, at *4. The *Hogan* court held that plaintiffs still

-12-

1   lacked standing, regardless of who *collected* payment, because the alleged harm did not "occur in

2   the allegedly monopolized market." *Id.* The "allegedly monopolized market" was "logistical

3   services for retail goods," but the plaintiffs did "not allege that end consumers . . . purchase

4   fulfillment/logistics services—instead, they purchase retail goods." *Id.*

5       *Fourth*, as the court explained in *Hogan*, *Apple v. Pepper* does not require a different

6   result. Nothing in *Pepper* holds that consumers have standing to seek damages on purchases of

7   products outside an allegedly restrained market. The *Pepper* plaintiffs *did* allege that the market

8   from which they purchased products was the same one Apple allegedly restrained. *Apple Inc. v.*

9   *Pepper*, 139 S. Ct. 1514, 1518 (2019) ("Apple has monopolized the retail market for the sale of

10   apps and has unlawfully used its monopolistic power to charge consumers higher-than-competitive

11   prices" for those apps). "Unlike in *Pepper*, where plaintiffs purchased the allegedly monopolized

12   product (iPhone apps)," in this case, as in *Hogan*, "Plaintiffs did not pay for the allegedly

13   monopolized product." *Hogan*, 2023 WL 3018866, at *5. Plaintiffs' own experts say that

14   developers are the buyers of in-app billing services.

15       There is no contradiction between this argument and Google's motion to dismiss the now

16   settled *developers*' claims for damages, which is why Plaintiffs do not point to any statement in

17   which Google conceded that consumers would have standing to pursue alleged damages for IAPs

18   even if they did not purchase those services in any relevant market. The facts distinguishing this

19   case from *Pepper* have become clear through the testimony of Plaintiffs' own experts on their

20   market definitions. Plaintiffs cannot avoid that testimony by pointing to a motion at the pleading

21   stage of the developer class's case that the Court never decided.[7]

22       *Finally*, Plaintiffs argue that alleged damages on IAPs and subscriptions are "inextricably

23   intertwined with the conduct at issue." Opp. at 19. That "narrow exception to the market

24

25   ───────────────

   [7] Remarkably, Plaintiffs also attempt to avoid their own experts' testimony by arguing that they
   would have standing under *Google*'s market definition. Opp. at 19. If Plaintiffs mean to concede

26   that Google's market definition is correct, then the Court can accept that concession, and Plaintiffs
   will lose this case on the merits. Plaintiffs cannot, however, have it both ways: relying on

27   Google's market definition to establish a right under the antitrust laws to seek damages on IAPs
   and subscriptions, and then turning around and rejecting that market definition on the merits in

28   seeking those very damages.

1 participant requirement" is limited to "parties whose injuries are 'inextricably intertwined' with

2 the injuries of market participants." *Am. Ad Mgmt.*, 190 F.3d at 1057 n.5. As Plaintiffs note, an

3 injury is "inextricably intertwined" when the injury is "a necessary step," Opp. at 19, in harming

4 competition in the injured market. Thus, in *Blue Shield of Virginia v. McCready*, the plaintiff's

5 injury—having to pay out of pocket for psychology services—was *how* the defendants limited

6 competition: defendants denied coverage for psychologists to insureds like the plaintiff as a *means*

7 of making psychologists unable to compete with psychiatrists. 457 U.S. 465, 478–79 (1982).

8 "Without injuring those subscribers, there was no conspiracy." *Hanover 3201 Realty, LLC v. Vill.*

9 *Supermarkets, Inc.*, 806 F.3d 162, 166–67, 173–74 (3d Cir. 2015).

10        Plaintiffs cannot fit their claim of injury into *McCready*'s "exceedingly narrow" exception

11 because they cannot show that damages on IAPs and subscriptions were "a necessary part of the

12 anticompetitive scheme." *Feitelson*, 80 F. Supp. 3d at 1028. Plaintiffs have never alleged that

13 overcharges on IAPs and subscriptions are the "necessary means" by which Google harms

14 competition for in-app billing services. They do not allege that Google uses inflated prices for

15 IAPs and subscriptions to bar other billing services from competing. In fact, their theory runs in

16 the opposite direction: Plaintiffs claim that developers *pass through* supracompetitive prices for

17 billing services by raising prices for IAPs and subscriptions, not that consumers' injuries from

18 overcharges for IAPs and subscriptions are the *means* of harming competition for billing services.

19 Thus, as in *Hogan*, "Plaintiffs' allegations are not analogous to those held sufficient in

20 *McCready*[.]" 2023 WL 3018866, at *5. In short, Consumer and State Plaintiffs lack standing to

21 recover damages on IAPs and subscriptions under federal antitrust law and the Cartwright Act.

22
23        **E.**     ***Epic v. Apple* Compels the Dismissal of Plaintiffs' *Per Se* Tying Claim and**
        **Does Not Undermine the Applicability of *Rick-Mik*.**

24        Plaintiffs argue that the Ninth Circuit's recent decision in *Epic Games, Inc. v. Apple, Inc.*,

25 67 F.4th 946 (9th Cir. Apr. 24, 2023), controls Google's motion on Plaintiffs' tying claim. If that

26 is true, then Plaintiffs' *per se* tying claim must be dismissed: "*per se* condemnation is

27 inappropriate for ties involv[ing] software that serves as a platform for third-party applications."

28 *Id.* at 997 (citation omitted). Such a rule would "dampen[] innovation and undermin[e] the very

-14-

competitive process that antitrust law is meant to protect." *Id.* at 998.

Plaintiffs' tying claim should also be dismissed in its entirety, notwithstanding *Epic v. Apple.* The panel there did not address the Circuit's decision in *Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963 (2008), which dismissed a tying claim against a gas company that required station owners who purchased franchises to use the company's payment system for gas sold at the stations. Plaintiffs do not argue that *Epic v. Apple* overruled this on-point decision. Accordingly, the Court remains bound by *Rick-Mik*, which holds that no tying claim can lie based on a firm's requirement that its customers use a particular method to collect payments on which they pay fees. *See* MDL Dkt. No. 483 at 21–23.

## F.   There Is No Basis to Deny Google's Motion Under Rule 56(d).

The Court should reject Plaintiffs' argument that Google's motion should be denied under Rule 56(d). *First*, Google's arguments in this partial summary judgment motion are based on legal questions applied to undisputed facts, so additional discovery will not change the outcome.

*Second*, Plaintiffs' Rule 56(d) argument violates the Rule. Under Rule 56(d), a "nonmovant" must file an "affidavit or declaration" showing that "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). As the Ninth Circuit has explained, to obtain relief under Rule 56(d), "a party must show that '(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.'" *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619–20 (9th Cir. 2017) (citation omitted). "Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (discussing the Rule as 56(f)). Plaintiffs have failed to submit the affidavit required by the Rule, and also failed to make any showing of relief under the Rule's substantive requirements. Accordingly, the plain text of Rule 56(d) forecloses Plaintiffs' request that the Court deny Google's motion under that Rule.

## III.   CONCLUSION

Google's motion for partial summary judgment should be granted.

DATED:  June 8, 2023                    Respectfully submitted,


                                        By:  ____/s/ Glenn D. Pomerantz____
                                             Glenn D. Pomerantz

                                             Glenn D. Pomerantz, S.B. #112503
                                             glenn.pomerantz@mto.com
                                             Kuruvilla Olasa, S.B. #281509
                                             kuruvilla.olasa@mto.com
                                             **MUNGER, TOLLES & OLSON LLP**
                                             350 South Grand Avenue, Fiftieth Floor
                                             Los Angeles, California 90071
                                             Telephone: (213) 683-9100

                                             Kyle W. Mach, S.B. #282090
                                             kyle.mach@mto.com
                                             Justin P. Raphael, S.B. #292380
                                             justin.raphael@mto.com
                                             Emily C. Curran-Huberty, S.B. #293065
                                             emily.curran-huberty@mto.com
                                             **MUNGER, TOLLES & OLSON LLP**
                                             560 Mission Street, Twenty Seventh Floor
                                             San Francisco, California 94105
                                             Telephone: (415) 512-4000

                                             Jonathan I. Kravis, *pro hac vice*
                                             jonathan.kravis@mto.com
                                             **MUNGER, TOLLES & OLSON LLP**
                                             601 Massachusetts Avenue NW,
                                             Suite 500E Washington, D.C. 20001
                                             Telephone: (202) 220-1100

                                             Brian C. Rocca, S.B #221576
                                             brian.rocca@morganlewis.com
                                             Sujal J. Shah, S.B #215230
                                             sujal.shah@morganlewis.com
                                             Michelle Park Chiu, S.B #248421
                                             michelle.chiu@morganlewis.com
                                             Minna Lo Naranjo, S.B #259005
                                             minna.naranjo@morganlewis.com
                                             Rishi P. Satia, S.B #301958
                                             rishi.satia@morganlewis.com
                                             **MORGAN, LEWIS & BOCKIUS LLP**
                                             One Market, Spear Street Tower
                                             San Francisco, CA 94105
                                             Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

Neal Kumar Katyal, *pro hac vice*
neal.katyal@hoganlovells.com
Jessica L. Ellsworth, *pro hac vice*
jessica.ellsworth@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600

*Counsel for Defendants Google LLC, et al.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>E-FILING ATTESTATION</u>**

I, Glenn D. Pomerantz, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that counsel for Defendants have concurred in this filing.


_____*/s/   Glenn D. Pomerantz*_____

Glenn D. Pomerantz