Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*In re Google Play Consumer Antitrust Litig.*, Case No. 3:20-cv-05761-JD<br><br>*States et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN**<br><br>Date:       August 3, 2023<br>Time:      10:00 am<br>Judge:     Hon. James Donato<br>Courtroom: 11, 19th Floor,<br>            450 Golden Gate Ave,<br>            San Francisco, CA 94102 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN
Case Nos. 3: 21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

**INTRODUCTION**

Plaintiffs' opposition confirms that Dr. Rysman's variety model for calculating injury and damages based on consumers' reduction in "happiness" should be excluded for three reasons.

*First*, Dr. Rysman's variety model should be excluded as a matter of law because it calculates damages that are not available under the antitrust laws. Under the Clayton Act, Plaintiffs can only recover damages for injury to "property." 15 U.S.C. §§ 15(a), 15c. But Dr. Rysman's model attempts to quantify how much happier consumers would have felt about their real-world purchases of apps, subscriptions and in-app content ("apps and IAPs") if they had bought them in a world with more apps. That is not an injury to property. Dr. Rysman even concedes that this "model ***is not trying to calculate the actual dollars that consumers would have in their pocket*** if they had an additional app variety." MDL Dkt. No. 484-4 ("Mot. Ex. 3, Rysman Dep. Tr.") at 82:20-25 (emphasis added). Plaintiffs cite no case in which any court has ever awarded antitrust damages premised solely on consumers' feelings about their purchases.

Plaintiffs argue that reduced consumer choice or innovation may qualify as antitrust injury. That is irrelevant. Plaintiffs must demonstrate injury to property, not the "happiness" they purport to measure, and invoking buzzwords like "consumer choice" or "innovation" does not solve this fatal flaw. "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n. 14 (1972). Even if Plaintiffs could recover damages for injuries to property from reduced choice or innovation, they cannot recover damages for their loss of happiness from having fewer choices because that is a personal injury.

*Second*, the Supreme Court's decision in *Comcast* forecloses Plaintiffs' reliance on Dr. Rysman's variety model because it is untethered to their theory of liability and alleged consumer harm. Plaintiff States cite a laundry list of paragraphs from their complaint containing general allegations of lower app output and innovation. However, Dr. Rysman's app variety model is not purporting to measure how much more value consumers would have received from buying apps or digital content used in apps that would have entered if Google had lower service fees. Plaintiffs do not point to any specific allegations that consumers were injured because they may have been

less happy with the variety of apps available to them. As for Consumer Plaintiffs, they do not even respond to Google's argument that they cannot rely on Dr. Rysman's variety model because this Court never certified a class based on that theory and thus concede the issue.

*Third*, Plaintiffs fail to explain why Dr. Rysman can testify based on assumptions that he repeatedly conceded do not reflect the real world. Plaintiffs argue that damages experts can simplify the world, engage in approximations, and rely on averaged data. But there are limits. Damages are meant to compensate for actual harm. Accordingly, the law does not permit damages experts to make assumptions that clearly are not true. Where Dr. Rysman admits that his model depends on numerous false assumptions, Plaintiffs cannot present that model to the jury as a basis for awarding damages for alleged real-world harms.

I. <u>**DR. RYSMAN'S VARIETY MODEL CALCULATES DAMAGES THAT ARE NOT COMPENSABLE UNDER THE ANTITRUST LAWS**</u>

Plaintiffs do not dispute that under the Clayton Act (or state antitrust laws) they can *only* recover damages based on injuries to business or property. *See* 15 U.S.C. §§ 15(a), 15c; MDL Dkt. No. 484 ("Mot.") at 8 & n.2. Nor do they dispute that if a model does not calculate damages for injuries to property or business, it should be excluded. *See* Mot. at 7-9. Because Dr. Rysman's variety model "is trying to calculate how much happier consumers would be if they had more variety of apps," Mot. Ex. 3, Rysman Dep. Tr. at 81:22-82:1—i.e., attempting to put a dollar value on the psychic harm that results from less app variety—it improperly calculates damages for "personal injuries" that are not compensable under the antitrust laws. *See Reiter v. Sonotone*, 442 U.S. 330, 339 (1979).

Plaintiffs carefully avoid the word "happiness" in their brief. But Dr. Rysman was clear that is what his variety model is measuring:

> Q. What you're doing with your app variety model is you're trying to assign a value to the additional happiness that consumers would experience if they had additional app variety?
> A. Yes.

Mot. Ex. 3, Rysman Dep. Tr. at 82:12-17. Dr. Rysman's variety model is not designed to calculate whether the products that consumers purchased in the real world would have been sold for lower prices in the but-for world or whether those products would have been higher quality in

2
REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN
Case Nos. 3: 21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the but-for world. *See* MDL Dkt. No. 484-3 ("Mot. Ex. 2, Rysman Report") ¶ 560 (in his variety model "by assumption, prices do not change"); MDL Dkt. No. 484-5 ("Mot. Ex. 4, Rysman Rebuttal Report") ¶ 353 (in his variety model "average app quality remains unchanged"). Nor is Dr. Rysman trying to measure whether the additional apps that he says would have entered would have been better than existing apps; he cannot because he doesn't "specify specific apps that would have" entered but for Google's conduct. Mot. Ex. 3, Rysman Dep. Tr. 91:6-15. Dr. Rysman concedes his "model is not trying to calculate the actual dollars that consumers would have in their pocket if they had an additional app variety." *Id*. at 82:20-25. That should end the matter: Dr. Rysman has not calculated consumers' "money [that] has been diminished by reason of an antitrust violation." *Reiter*, 442 U.S. at 339.

Rather than measuring any diminishment of consumers' money, Dr. Rysman purports to calculate how much worse consumers ***felt*** about what they bought because they chose from fewer options. The cases Google cited in its motion show that Congress did not authorize suits for antitrust damages from such "personal injuries suffered." *Id*. at 339; *Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 964 (9th Cir. 1999) (personal injury in the form of "medical expenses" are not "injury to business or property"); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) ("personal injury in the form of emotional distress" is not "injury to business or property"); *Bhan v. NM Hosps., Inc.*, 669. F. Supp. 998, 1013 (E.D. Cal. 1987), *aff'd*, 929 F.2d 1404 (9th Cir. 1991) ("injuries unrelated to his business or property"—his "personal injuries"—like losing friends and suffering reputational harm, were "simply not compensable under the antitrust laws"); Mot. at 8-9 (citing additional cases).[1]

Plaintiffs do not cite a single case finding that a reduction in consumer happiness is an injury to property or compensable under the antitrust laws. Instead, framing consumers' reduced happiness as "lost consumer surplus" (MDL Dkt. No. 512 ("Opp.") at 11), Plaintiffs cite cases that stand for the unremarkable proposition that anticompetitive conduct that reduces consumer

---

[1] RICO cases interpreting the "injury to business or property" language are applicable because "Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act," and thus one can assume that Congress "intended them to have the same meaning." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 267-68 (1992).

3
REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN
Case Nos. 3: 21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

choice, product variety, or innovation may be actionable under the antitrust laws. But in each of those cases, the plaintiff alleged it had suffered an injury to its business or property. *See, e.g.*, *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 370, 378 (9th Cir. 2003) (plaintiff whose "business was abruptly destroyed" "adequately allege[d] antitrust injury" from acquisition that eliminated product from the market); *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1274 (9th Cir. 2022) (plaintiff alleged he was "directly and economically hurt" in the form of "increase[ed] prices" by scheme that allegedly prevented consumers "from making free choices between market alternatives"); *CollegeNET, Inc. v. Common Application, Inc.*, 104 F. Supp. 3d 1137, 1142 (D. Or. 2015), *rev'd and remanded*, 711 F. App'x 405 (9th Cir. 2017) (plaintiff "lost over 200 college customers" "due to [d]efendant's 'anticompetitive and exclusionary conduct.'"); *Inform Inc. v. Google LLC*, No. 21-13289, 2022 WL 3703958, at *2, 6 (11th Cir. Aug. 26, 2022) (plaintiff alleged Google's conduct "decimated its business" and it "lost millions of dollars").[2] None of these cases address whether injury to **consumers' happiness** as a result of less choice, variety, or innovation qualifies as injury to property.

Contrary to Plaintiffs' claim (Opp. at 12-13), Google *is not* arguing that consumers can never recover damages for the loss of money resulting from anticompetitive conduct that results in less choice, variety, or innovation. The question before the Court is whether the antitrust laws authorize suits for damages for reduced happiness from such harms. Based on the statutory text, the answer is no. "Congress must have intended to exclude some class of injuries by the phrase 'business or property.'" *Reiter*, 442 U.S. at 339. That phrase has "restrictive significance." *Id.* at

---

[2] *See also Neilson v. Suntech Power Holdings Co.*, 62 F. Supp. 3d 1027, 1043-44 (N.D. Cal. 2014) (alleged predatory pricing scheme drove plaintiff out of business, which deprived consumers of "technological choices and innovative technology options"); *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1185 (N.D. Cal. 2012) (plaintiffs allegedly paid "supracompetitive prices" because defendant removed a product from the market); *Patt v. Antech, Inc.*, No. 8:18-cv-01689-JLS-DFM, 2020 WL 5076970, at *7 (C.D. Cal. May 18, 2020) (plaintiff forced into paying for lower quality services); *Arista Networks, Inc. v. Cisco Sys. Inc.*, No. 16-CV-00923-BLF, 2018 WL 11230167, at *20 (N.D. Cal. May 21, 2018) ("material dispute of fact" as to whether the "purported exclusionary conduct" caused injury in the form of "lost sales"); *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2017 WL 5495912, at *4 (N.D. Cal. Nov. 16, 2017) (defendant's conduct "artificially elevated … prices"); *Magnetar Techs. Corp. v. Intamin, Ltd.*, No. CV071052GAFJWJX, 2011 WL 13133973, at *3 (C.D. Cal. May 11, 2011) (defendant's conduct "impaired plaintiffs ability to compete") (cleaned up).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

4
REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN
Case Nos. 3: 21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

338-39 (explaining that "in common usage 'property' comprehends anything of material value owned or possessed" and a "consumer … is injured in 'property' when the price of those goods is artificially inflated by reason of the anticompetitive conduct complained of"). "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n.14 (1972).

The Fourth Circuit's decision in *Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006) is instructive. As an alternative to seeking damages from pass-through of alleged overcharges for licenses of Windows, consumers sought damages on the theory that "Microsoft deprived consumers of competitive technology." *Id*. at 324. The Fourth Circuit rejected this damages theory as a matter of law because "the nature of the injury claimed" was for "generalized or abstract societal harms." *Id*. It reasoned that "the harms that the plaintiffs have alleged with respect to the loss of competitive technologies are so diffuse that they could not possibly be adequately measured." *Id*. Accordingly, the plaintiffs could not show that they "were specifically injured in their business or property by the alleged antitrust violation, as required by § 4." *Id*.

Plaintiffs also cannot rescue Dr. Rysman's variety model by labeling his estimate of lost happiness as measuring the "weighted average 'variety-adjusted price.'" Opp. at 14. That phrase appears nowhere in the hundreds of pages of expert reports submitted by Dr. Rysman (or in his lengthy deposition transcript).[3] Dr. Rysman testified clearly that he is measuring a reduction in consumer happiness, ***not*** "dollars that consumers would have in their pocket." Mot. Ex. 3, Rysman Dep. Tr. at 82:20-25. In other words, Dr. Rysman has not calculated consumers' "money [that] has been diminished by reason of an antitrust violation." *Reiter*, 442 U.S. at 339. The antitrust laws do not authorize damages for the loss of happiness that Dr. Rysman's app variety attempts to measure. Accordingly, that app variety model cannot be presented to the jury at trial.

## II. DR. RYSMAN'S VARIETY MODEL SHOULD BE EXCLUDED UNDER *COMCAST*

In its motion, Google explained how Consumer Plaintiffs cannot rely on Dr. Rysman's

---

[3] Plaintiffs cite no case in which any court has authorized antitrust damages for a reduction in a "variety-adjusted price." Their only source for that term is a law review article that is not even about damages. *See* Opp. at 14 n.81.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5
REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN
Case Nos. 3: 21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

variety model because it is unconnected to any of their legal theories of harm and the Court has not certified a class based on such a theory. *See* Mot. at 9-10 (citing *Comcast Corp v. Behrend*, 569 U.S. 27, 35 (2013)). Consumer Plaintiffs fail to respond and thus concede that Dr. Rysman's variety model cannot be used as common proof of injury or damages for the class. Indeed, they have never even attempted to demonstrate that the model meets Rule 23's requirements.

Google also explained that *Comcast* forecloses Plaintiff States from relying on Dr. Rysman's variety model because they have not alleged that theory in their complaint. Plaintiff States do not seriously contest the applicability of *Comcast.* Citing various paragraphs of their complaint, they argue that Dr. Rysman's variety model is "consistent with" their liability case. Opp. at 14 & n.83. However, these paragraphs merely make vague allegations about innovation or output or suggest that Google's conduct resulted in less app supply or reduced app development. *See e.g.*, PS-FAC, *State of Utah et al. v. Google LLC et al*, 3:21-cv-05227-JD, ECF. No. 188 at ¶¶ 13, 212, 261. But Plaintiff States fail to identify any allegations in their complaint that consumers suffered the type of injury Dr. Rysman purports to measure—consumers' reduced happiness from their purchases in the actual world simply because they allegedly made those purchases from a smaller set of options.

Plaintiff States also incorrectly claim that Dr. Rysman's variety model can be used to allocate damages to individual consumers. Opp. at 14-15. Dr. Rysman testified that his variety model *only* calculates an "aggregate damages number" and when asked whether his model calculates damages to individual consumers, Dr. Rysman testified: "I don't do that calculation." Mot. at 10; Mot. Ex. 3, Rysman Dep. Tr. at 83:12. Despite this testimony, Plaintiff States assert that Dr. Rysman could *in theory* allocate damages to individual consumers by scaling his aggregate calculation to individual consumer spend, i.e., simply "multiplying individual consumer spending by … 22%." Opp. at 15.

Dr. Rysman has not attempted this calculation and did not provide the methodology suggested in Plaintiffs' Opposition in either of his expert reports. That alone precludes Plaintiffs from relying on this calculation at trial. Even setting that aside, Dr. Rysman's own testimony shows that using the amount consumers spent to measure their loss of happiness from not having

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6
REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN
Case Nos. 3: 21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

more choices is not a reliable method for measuring individual consumers' injury or damages because the amount an individual spent on apps or IAPs does not necessarily predict anything about how much that consumer values variety. Dr. Rysman agreed that the methodology Plaintiffs suggest in their opposition would imply that "[a] consumer that spent $10,000 on Fortnite and made no other purchases in the actual world … would value variety more than a consumer that spent $1 on 500 different apps." Mot. Ex. 3, Rysman Dep. Tr. at 88:14-89:11. But he admitted "I don't have evidence showing that's exactly the dynamic that would take place" in the real world. *Id*. at 89:12-19. It makes no sense to assume that all consumers value increased app variety in exactly the same way—in proportion to their consumer spend—or that a consumer that made $10,000 in purchases involving one app suffers the equivalent of $2,200 in lost happiness from less app variety while a consumer who made $1 in purchases while downloading 500 different apps suffers only $0.22. Even if the loss of happiness from less app variety were a cognizable basis for damages (which it is not), simply multiplying the amount that each consumer spent by 22% would not be a reliable way to calculate consumers' injury or damages from any such loss.[4]

### III. DR. RYMAN'S VARIETY MODEL RELIES ON IMPROPER ASSUMPTIONS UNSUPPORTED BY REAL-WORLD EVIDENCE

Dr. Rysman's app variety model is also inadmissible because it is based on the assumption that all apps have the same price, cost, quantity, and quality, and that app success is completely unpredictable. Ironically, Dr. Rysman's variety model assumes that all apps are the same, which he admitted repeatedly is not true. Plaintiffs do not dispute that expert opinions based on assumptions that lack any basis in real world evidence are inadmissible and routinely excluded under *Daubert* and Rule 702. Mot. at 11-13. Nor do Plaintiffs dispute that Dr. Rysman conceded (several times) that his assumptions do not reflect the real world and that his model simply averages any real-world variation away. *See* Mot. at 4 (citing testimony). The undisputed fact that Dr. Rysman's variety model is based on assumptions that he admits are not true requires the

---

[4] Dr. Rysman's assumption that utility scales with spend also potentially violates the "law of diminished marginal utility," which holds that "as a person increases consumption of a product, there is a decline in the marginal utility that person derives from consuming each additional unit of that product." *United States v. Martinez*, 184 F. Supp. 3d 1209, 1238 (D.N.M. 2016).

Court to exclude Dr. Rysman's variety model. *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (excluding unreliable expert evidence "based on a fictitious set of facts")); Mot. at 11 (citing cases). Plaintiffs provide no justification for why the Court should permit the jury to hear expert testimony based on admittedly false assumptions.

Plaintiffs try to justify Dr. Rysman's reliance on unwarranted and unrealistic assumptions by claiming that every model "simplif[ies] the world." Opp. at 8 (citing *Maldonado v. Apple*, 2021 WL 1947512, at *22 (N.D. Cal. May 14, 2021)). But Plaintiffs' own authority shows that there is a limit: "models must be tethered to theories of liability, fit the case, have a reliable basis, and avoid guesswork." *Id*. at *21-22 (admitting damages model that used "real-world supply-side data"). Dr. Rysman's assumptions admittedly have no basis in the real world. Plaintiffs cite no case in which a court has permitted an expert to testify based on assumptions that the expert admits are not true in the real world. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591-93 (1993) (stating that expert testimony is not admissible where an expert's opinion does not "fit" the "facts in issue").

When discussing Dr. Rysman's assumption of uniformity across apps, Plaintiffs focus on how Dr. Rysman implements this assumption in his model—he uses average price, cost, quality, and quantity to generate his results. To justify Dr. Rysman's assumption, Plaintiffs cite cases that have used "pooled or averaged data to calculate damages in antitrust cases." Opp. at 9 & n.53 (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) and *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052 (N.D. Cal. Jan 19, 2017)). But in those cases, the plaintiffs' experts used multiple regression models to ensure that their models were tailored to account for differences among products in the real world, not to abstract those real-world differences away. For example, the regression in *Olean* "identified a number of variables … that could affect the price of tuna, including product characteristics, input costs, customer type, and variables related to consumer preference and demand, such as disposable income, seasonal effects, and geography" and then "isolated (or 'controlled for') the effect of these explanatory variables on the prices paid by [plaintiffs]." *Olean*, 31 F.4th at 671. To check

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8
REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN
Case Nos. 3: 21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

the "robustness" of the regression analysis, the damages model was modified to consider other real-world factors like the "different characteristics" of the tuna "such as fish type and package type", different "customer types", as well as a comparison of "actual prices paid" to "but-for prices." *Id*. at 672. In contrast, Dr. Rysman does not "control" for any variation. He uses average price, cost, quality, and quantity to abstract away any differences between apps.

       Plaintiffs also fail to justify Dr. Rysman's "unpredictability" assumption, which is core to his variety model. Plaintiffs concede that Dr. Rysman's only support for the assumption comes from the unpublished Janßen Paper. Opp. at 9. But even if a single unpublished paper was sufficient, in theory, to support a core assumption in Dr. Rysman's model, the Janßen paper shows that Dr. Rysman's blind reliance on the unpredictability assumption is wrong. The authors explained that partial predictability accords more closely with the real world compared to their abstraction of complete unpredictability. When they applied partial predictability to their model, it reduced the consumer welfare effect in their study by "*about half*". MDL Dkt. No. 484-7 ("Mot. Ex. 6, Janßen Paper") at 32-33.[5] Plaintiffs miss the point in dismissing the paper's discussion of "partial predictability" as a "'sensitivity' analysis." Opp. at 10. Because Dr. Rysman's own source shows that app success is somewhat predictable and that partial predictability significantly alters the effects of app entry, Dr. Rysman must show that partial predictability does not materially alter his results such that his model is unreliable. He has not even tried to do so.

       Dr. Rysman's reliance on demonstrably false and unjustified assumptions makes his variety model unreliable and therefore inadmissible under Rule 702. Plaintiffs' discussion, at a high level, of whether Dr. Rysman's model is generally accepted in economics, peer reviewed, and testable, Opp. at 6-8, does not change this conclusion. Plaintiffs cite no literature in which an

---

[5] Plaintiffs' reliance on *Greyhound Computer Corp. v. IBM Corp.*, 559 F.2d 488, 506-07 (9th Cir. 1977) for the proposition that future success or profitability is "uncertain" (*see* Opp. at 9 & n.53) is misplaced. Nothing in *Greyhound* indicates that the court believed plaintiff's future success was *completely* unpredictable. If so, any lost profits claim would be subject to a roll of the dice. Indeed, the court noted that "Greyhound had an established business and the future profits could be shown by past experience." *Greyhound*, 559 F.2d at 506. In contrast, Dr. Rysman discounts any role that past experience would have on app success. *See* Mot. at 4.

9
REPLY IN SUPPORT OF MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN
Case Nos. 3: 21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

economist has used a model like Dr. Rysman's to calculate damages to consumers in the real world. Instead, Plaintiffs cite academic papers applying "macroeconomic" models that purportedly form the basis of Dr. Rysman's variety model. Opp. at 2-4. But these macroeconomic models purposely abstract away from real world variation. *See* Mot. Ex. 4, Rysman Rebuttal Report ¶¶ 13, 338-40. Plaintiffs do not explain what these models have to do with real-world damages and cite no case for the proposition that an economist may calculate damages using any type of model that any other economist has used for any other purpose even if that model's assumptions are concededly false. Dr. Rysman admitted that he is unaware of such a model being used to calculate damages or, more generally, in any antitrust case. Mot. Ex. 3, Rysman Dep. Tr. 95:6-16. Even if "Rule 702 does not forbid new methodologies and analysis," Opp. at 7, it does require exclusion of models that have no grounding in the real world.

## IV. DR. RYSMAN'S OVERCHARGE MODEL IS CUMULATIVE AND DUPLICATIVE AND SHOULD BE EXCLUDED

Plaintiffs fail to justify how they can rely on Dr. Rysman's overcharge model when they are also relying on Dr. Singer's overcharge model. Plaintiffs do not explain how it could be reliable for Dr. Rysman to present an overcharge model when he has not estimated a pass-through rate. *See* Mot. at 13-14.[6] Plaintiffs cannot rely on Dr. Rysman's overcharge model by combining it with the pass-through rate calculated by Dr. Singer. Mot. Ex. 3, Rysman Dep. Tr. at 52:6-7 ("I used a pass-through rate that was proposed by Hal Singer[.]").[7] The Federal Rules of Evidence authorize courts to exclude "needlessly . . . cumulative evidence." Fed. R. Evid. 403. Plaintiffs do not explain why it is necessary or fair for Dr. Rysman and Dr. Singer to both offer opinions on the same issue—the amount consumers were allegedly overcharged—especially when Dr. Rysman is borrowing the pass-through rate estimated by Dr. Singer.

## CONCLUSION

Dr. Rysman's variety damages model should be excluded under Rule 702 and *Daubert*.

---

[6] Even if under Utah law "100% pass-through is presumed until rebutted by the defendant," Opp. at n.88, that assumption does not hold where Dr. Singer estimates a pass-through rate less than 100%, rebutting any presumption.
[7] Plaintiffs also claim that Dr. Rysman could use his overcharge model to present a damages model using Dr. Leonard's pass-through rate. But plaintiffs fail to explain how this is different from anything Dr. Singer could do in presenting his own overcharge damages model.

Dated: June 8, 2023

Respectfully submitted,

By:   */s/ Sujal J. Shah*
      Sujal J. Shah

Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

*Counsel for Defendants*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO