1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-cv-05227-JD |
| THIS DOCUMENT RELATES TO:<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | **DECLARATION OF LANA COOPER IN SUPPORT OF STATES' UNOPPOSED MOTION TO GIVE NOTICE OF PROPOSED *PARENS PATRIAE* SETTLEMENT**<br><br>Judge: Hon. James Donato |

I, Lana Cooper, declare and state as follows:

1. I am a Vice President with KCC Class Action Services, LLC ("KCC"), located in San Rafael, California. The purpose of this declaration is to provide information related to KCC's qualifications and experience, as well as to detail the proposed distribution plan (the "Distribution Plan") designed to provide distribution to Eligible Consumers in this litigation.

## KCC's BACKGROUND AND EXPERIENCE

2. KCC is a leading class action administration firm that provides comprehensive class action services, including claims administration, legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. Our experience includes many of the largest and most complex settlement administrations of both private litigation and actions brought by state and federal government regulators. KCC has been retained to administer more than 7,000 class actions and distributed settlement payments totaling well over a trillion dollars in assets.

3. Further, KCC has administered matters involving government entities, including: *Bed Bath & Beyond EEOC Settlement*, Charge Nos. 210-2004-06613, 410-2007-00107, 520-2007-01838; *Eck v. City of Los Angeles*, No. BC363959 (Cal. Super. Ct.); *EEOC and BP Expl. & Prod., Inc. Conciliation Agreement*, No. 12-cv-255 (N.D. Ala.) (EEOC Houston Office); *EEOC and Michael McKinnon v. Watkins & Shepard Trucking Inc.*, Charge No. 555-210-02473 (EEOC San Jose Office); *EEOC and Temple Inland Conciliation Resolution*, Charge No. 444-2006-00599; *EEOC v. CSX Transp., Inc.*, No. 17-cv-03731 (S.D. W. Va.); *EEOC v. Dillard's, Inc.*, No. 08-cv-1780 (S.D. Cal.); *EEOC v. Lowe's Cos.*, No. 16-cv-03041 (C.D. Cal.); *EEOC v. McCormick & Schmick's Seafood Rests.*, No. 08-cv-984 (D. Md.); *EEOC v. Texas Roadhouse Settlement*, No. 11-cv-11732 (D. Mass.); *EEOC v. Wal-Mart Stores, Inc.*, Charge Nos. 560-2006-02295C, 38B-2006-00014; *In the Matter of First Republic Inv. Mgmt., Inc.*, AP No. 3-19095 (SEC); *In the Matter of Visium Asset Mgmt., LP*, AP No. 3-18473 (SEC); *Jones v. City of Los Angeles*, No. BC577267 (Cal. Super. Ct.); *LaBorde v. City of Gahanna*, No. 12-cv-8517 (Ohio Ct. Com. Pl.); *Lockman, Inc. v. City of New York*, No. 11-cv-01836 (E.D.N.Y.); *MacNamara v. City of New York*, No. 04-cv-9216 (S.D.N.Y.); *Midland/CFPB*

*Consent Order*, No. 2015-CFPB-0022 (CFPB); *MoneyGram Payment Sys., Inc. Multistate Settlement* (Office of the Attorney General - State of Illinois); *People of the State of California v. Active Network, LLC*, No. HG16819114 (Cal. Super. Ct.); *People of the State of California v. DropBox, Inc.*, No. RLT18904840 (Cal. Super. Ct.); *People of the State of California v. E Z Rent a Car LLC*, No. RG19014872 (Cal. Super. Ct.); *People of the State of California v. eHarmony, Inc.*, No. 17-cv-03314 (Cal. Super. Ct.); *People of the State of California v. Pleasanton Fitness, LLC, et al.*, No. 16-cv-01876 (Cal. Super. Ct.); *Ramah Navajo Chapter v. Jewell*, No. 90-cv-957 (D.N.M.); *SEC v. Abatement Corp. Holding Co.*, No. 14-cv-23336 (S.D. Fla.); *SEC v. AOL Time Warner* (D.D.C.); *SEC v. AR Capital LLC*, No. 19-cv-06603 (S.D.N.Y.); *SEC v. Benger*, No. C-07393 (N.D. Ill.); *SEC v. China Energy Sav. Tech., Inc.*, No. 06-cv-6402 (E.D.N.Y.); *SEC v. Diamond Foods*, No. 14-cv-00123 (N.D. Cal.); *SEC v. EZTD, Inc.*, AP No. 3-17673 (SEC); *SEC v. i2 Techs.*, No. 04-1250 (N.D. Tex.); *SEC v. James L. Douglas a/k/a James L. Cooper*, No. 82-cv-29 (N.D. Ohio); *SEC v. Michael Hendrix*, No. C 00-20655 (N.D. Cal.); *SEC v. Murdoch Sec. & Investigations, Inc.*, No. 11-cv-07076 (S.D.N.Y.); *SEC v. Patricia Rocklage*, No. 05-CV-10074 (D. Mass.); *SEC v. Qwest Comm'cns*, No. 04-CV-02179 (D. Colo.); *SEC v. Tavella*, No. 13-cv-04609 (S.D.N.Y.); *SEC v. WellCare Health Plans, Inc.*, No. 09-cv-00910 (M.D. Fla.); *SEC v. Xerox*, No. 02-CV-02780 (S.D.N.Y.); *State of Arizona ex rel. Brnovich v. Volkswagen AG*, No. CV 2016-005112 (Ariz. Super. Ct.); *Steele v. United States*, No. 14-cv-01523 (D.D.C.); *Stuart Ishimaru v. McCormick & Schmick*, Charge No. 550-2006-02139 (EEOC San Francisco Office); *United States v. The Western Union Co.*, No. 17-CR-00011 (M.D. Pa.); *United States v. JP Morgan Chase Bank, NA*, No. 17-cv-347 (S.D.N.Y.); *United States v. HSBC Fin. Corp.*, No. 16-c-7940 (N.D. Ill.); *United States v. MoneyGram*, No. 12-CR-291 (M.D. Pa.); *Villa v. City of Chula Vista*, No. 37-2011-00093296 (Cal. Super. Ct.); *Wells Fargo Assurance Agreement* (Office of the Attorney General - California); *Illinois v. Hitachi Ltd.*, No. 12 CH 35266 (Cook Cty. Ill.); *State of Iowa v. Uber Techs.*, No. EQCE083577. In addition, KCC has handled the administration of California's Consumer Recovery Fund for consumers affected by bankrupt motor vehicle dealers who failed to fulfill contractual obligations.

**INFORMATION TECHNOLOGY & DATA SECURITY**

4. KCC utilizes a comprehensive information and cyber security framework aligned to ISO/IEC 27002:2022. As part of this, KCC utilizes access controls, physical and environmental controls, communications security, and authentication and authorization mechanisms and processes that are commensurate with the criticality of the IT system. Our cryptographic solutions protect data in transit and at rest, utilizing industry-recognized leading practices to implement strong encryption for authentication and transmission of information and a defense-in-depth program to protect our information and IT systems from existing and emerging threats. Employee screening, annual mandatory training, and employee termination/departure procedures are also standard protocols. The Information Security team actively monitors the internal and external threat environment to ensure that the current security controls deployed are both appropriate and effective.

5. Through its proprietary technology and sophisticated data-handling processes, KCC ensures the security, quality, and accuracy of its work. KCC's employees are trained on best practices with respect to data processing, project management, fraud prevention, and client communication. KCC is dedicated to fraud prevention and detection and has developed extensive fraud prevention measures that are customized for each administration.

**INSURANCE**

6. KCC's services agreement governs the terms and conditions of KCC's employment, including liability and acceptance of responsibility. KCC maintains insurance applicable to its services including professional indemnity insurance, general liability, property, comprehensive crime, electronic, and computer crime, and cyber liability insurance. KCC's errors and omissions insurance covers any claim that arises out of any wrongful professional act subject to terms and conditions of the policy with a policy limit not less than $10 million. KCC's crime insurance covers all thefts and dishonest acts subject to terms and conditions of the policy with a policy limit not less than $10 million.

**DISTRIBUTION PLAN**

7. KCC anticipates receiving approximately 102 million email addresses from the Parties. These email addresses will represent the Class List. KCC will ingest the Class List into its proprietary database and remove any duplicative records. Prior to distribution, a spam cleanse will be performed on the Class List to remove any duplicate email addresses and any known 'bad' email addresses. Then, each consumer on the Class List will be assigned a unique sequential control number that will be used throughout the administration process. KCC also anticipates receiving a list of timely exclusion requests from the notice administrator and will use that list to exclude from the disbursement of funds consumers who indicated that they wish to opt out of the Settlement.

*Disbursement*

8. KCC will create and develop a disbursement plan that will make direct digital payments to Eligible Consumers, as that term is defined in the Settlement Agreement. Each Eligible Consumer will receive at least $2 and will receive additional payments in proportion to his or her Google Play spending from August 16, 2016, through September 30, 2023, unless a consumer has filed a timely request for exclusion.

9. KCC will first send the payment to Eligible Consumers via PayPal. If the Eligible Consumer's email address associated with the consumer's Google Play account matches an email address associated with an existing PayPal account, then payment will be processed to that account and the Eligible Consumer will receive an email notification that the funds have been deposited and are now available. Otherwise, the Eligible Consumer will receive an email notifying him or her of the opportunity to create a new PayPal account, redirect the payment to an existing account at another email address, or select another payment mechanism, such as written check or an ACH transfer. KCC will then send payments using Venmo to the remaining Eligible Consumers who have not yet received their payments. If the Eligible Consumer's email address associated with the consumer's Google Play account matches an email address associated with an existing Venmo account, then payment will be processed to that account. Otherwise, the Eligible Consumer will have an opportunity to create a new Venmo account, redirect the payment to an existing account at another email address, or select an alternative method of payment, such as check or ACH transfer. KCC will then send payments by

written check to the remaining Eligible Consumers who have not yet received their payments and are entitled to a payment above a certain threshold.

10. PayPal has 237,000,000 accounts in the United States and a domestic market share of 82%. In the last five years, 70% of U.S. adults have used PayPal. Venmo has 90,000,000 active accounts in the United States.

11. In KCC's experience, which includes over 109 class action distributions in which settlement proceeds were distributed via digital token, when a payment is "pushed" to the individual without an election process, the success rate[1] ranges from 60% to 90% depending on how current the data[2] is, each individual's payment amount, and the recipients' ages and other demographics of the qualifying individuals. Based on our understanding of the demographic of Google Play users and their proclivity for digital technology, as well as the strong market share PayPal and Venmo have in this digital payment space and their continued year-over-year growth, KCC believes the waterfall approach of initiating a PayPal payment first followed by Venmo for unsuccessful payments will achieve a blended success rate of 80-90%.

12. A Taxpayer ID number will be obtained, and an account will be opened for the settlement fund. KCC will issue digital payments to each consumer as directed.

13. Disbursement services will also include, but are not limited to, regularly monitoring the account for potential fraud through the Positive Pay system; daily updates of the check register to respond to claimant requests for misplaced checks and daily account reconciliation; and processing stop payment/re-issue requests, tracking and re-mailing undeliverable checks.

//

---

[1] Because this settlement provides for automatic payment of settlement proceeds, the focus of this Declaration is on the successful payment of funds to consumers. This is in contrast to a claims rate typical in some consumer class actions, which reflects the percentage of class members who submit a claim to participate in the settlement.

[2] The following types of contact information are required for each form of payment: PayPal – Email Address; Venmo – Mobile Phone Number (preferred) or Email Address; Zelle – Full Name and Email Address; Check – Full Name and Physical Address; ACH – Routing Number and Account Number.

**RESPONSE MECHANISMS**

14. KCC will create and maintain a dedicated settlement website to provide consumers with additional information about the settlement, including relevant court documents, important dates and deadlines, answers to frequently asked questions, and other information.

15. A toll-free number will be established that will allow consumers to call to learn more about the settlement in the form of frequently asked questions. It will also allow consumers to request to have more information mailed to them.

**ADMINISTRATION FEES**

16. Based on the defined scope of work provided by counsel, KCC has estimated the administration costs will be $14,680,000.

17. KCC's estimated fees and charges are based on certain information provided to KCC by the Parties as well as significant assumptions. Accordingly, the estimate is not intended to limit KCC's actual fees and charges, which may be less or more than estimated due to the scope of actual services or changes to the underlying facts or assumptions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 18, 2023 in San Rafael, California.

_____
LANA COOPER

| | |
|---|---|
| 1 | **E-FILING ATTESTATION** |
| 2 | I, Jessica V. Sutton, am the ECF User whose ID and password are being used to file this |
| 3 | document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatory identified |
| 4 | above has concurred in this filing. |
| 5 | |
| 6 | /s/ Jessica V. Sutton |
| 7 | Jessica V. Sutton |