**EXHIBIT A**
***EPIC* PERMANENT INJUNCTION ("EI") COMPARISON TO STATES' PROPOSED SETTLEMENT ("PS")**

| *EPIC* PERMANENT INJUNCTION | STATES' PROPOSED SETTLEMENT AGREEMENT | WHAT HAPPENS IF BOTH THE EI AND THE PS ARE IN EFFECT |
|---|---|---|
| EI ¶ 4 prohibits Google from sharing "revenue generated by the Google Play Store with any person or entity that distributes Android apps, or has stated that it will launch or is considering launching an Android app distribution platform or store."<br><br>Term: 3 years. | No directly analogous provision. | Google must comply with EI ¶ 4. |
| EI ¶ 5 prohibits Google from conditioning "a payment, revenue share, or access to any Google product or service on an agreement by an app developer to launch an app first or exclusively in the Google Play Store."<br><br>Term: 3 years. | PS § 6.5.1 prohibits Google from entering or enforcing any agreement provision that commits a developer to launching its apps in the Play Store at the same time as or earlier than it launches them on another app store for Mobile Devices,[1] unless Google negotiates on an app-by-app basis or—after two years—the other app store is owned or controlled by a company with annual revenues over $100 billion (§ 6.5.2).<br><br>Term: 4 years.<br><br>In addition, PS § 6.12.1 prohibits Google from using any inducement (monetary or otherwise) with the purpose and effect of violating any of the commitments it made in the Proposed Settlement. | Google must comply with both EI ¶ 5 and PS § 6.5.1. Google may not enforce or enter into agreement provisions that violate either EI ¶ 5 or PS § 6.5.1.<br><br>During the three years that the EI is in effect, EI ¶ 5 is more restrictive than PS §§ 6.5.1 & 6.5.2 in that it directly applies to exclusivity agreements and does not contain exceptions. On the other hand, the Proposed Settlement's term is one year longer, and covers simultaneous launch agreements with respect to other Android app stores (not just launch "first" agreements).<br><br>States and Consumers also note that EI ¶ 5 is narrower than PS § 6.5.1, because PS § 6.5.1 covers agreements beyond those |

---

[1] Mobile Devices are Android-compatible smartphones and tablets sold in the U.S. Proposed Settlement § 1.26.

**EXHIBIT A**
*EPIC* **PERMANENT INJUNCTION ("EI") COMPARISON TO STATES' PROPOSED SETTLEMENT ("PS")**

| *EPIC* PERMANENT INJUNCTION | STATES' PROPOSED SETTLEMENT AGREEMENT | WHAT HAPPENS IF BOTH THE EI AND THE PS ARE IN EFFECT |
|---|---|---|
| | | involving payment, revenue share, or access to any Google product or service. |
| EI ¶ 6 prohibits Google from conditioning "a payment, revenue share, or access to any Google product or service" on a feature parity provision, *i.e.*, a developer's agreement to launch an app on the Google Play Store with the same features as the app has on an alternative app store.<br><br>Term: 3 years. | PS § 6.5.1 prohibits Google from entering or enforcing any agreement that commits a developer to launching its apps in the Play Store with the same or better features as those apps have on another app store for Mobile Devices, unless Google negotiates on an app-by-app basis or—after two years—the other app store is owned or controlled by a company with annual revenues over $100 billion (§ 6.5.2).<br><br>Term: 4 years. | Google must comply with both EI ¶ 6 and PS § 6.5.1. Google may not enforce or enter into agreement provisions that violate either EI ¶ 6 or PS § 6.5.1.<br><br>During the three years that the EI is in effect, EI ¶ 6 is more restrictive than PS §§ 6.5.1 & 6.5.2 in that it does not contain exceptions. On the other hand, the Proposed Settlement's term is one year longer.<br><br>States and Consumers also note that EI ¶ 6 is narrower than PS § 6.5.1, because PS § 6.5.1 covers agreements beyond those involving payment, revenue share, or access to any Google product or service. |
| EI ¶ 7 prohibits Google from conditioning "a payment, revenue share, or access to any Google product or service on an agreement with" an OEM to preinstall the Google Play Store on any specific location on an Android device, *e.g.*, on the home screen.<br><br>Term: 3 years. | PS § 6.6.1 prohibits Google from entering into or enforcing agreement provisions "with the purpose or effect of securing preload exclusivity or home screen *exclusivity* of Google Play," but it does not prohibit Google from entering into *non-exclusive* agreements for home screen *placement* of the Google Play Store.<br><br>Term: 5 years. | Google must comply with both EI ¶ 7 and PS § 6.6.1. Google may not enforce or enter into agreement provisions that violate either EI ¶ 7 or PS § 6.6.1.<br><br>During the three years that the EI is in effect, EI ¶ 7 is more restrictive than PS § 6.6.1 in that Google cannot enter into even *non-exclusive* agreements for specific placement (home screen or otherwise) of |

2

EXHIBIT A
*EPIC* PERMANENT INJUNCTION ("EI") COMPARISON TO STATES' PROPOSED SETTLEMENT ("PS")

| *EPIC* PERMANENT INJUNCTION | STATES' PROPOSED SETTLEMENT AGREEMENT | WHAT HAPPENS IF BOTH THE EI AND THE PS ARE IN EFFECT |
|---|---|---|
| | | the Google Play Store. On the other hand, the Proposed Settlement's term restricting *exclusive* agreements is two years longer. |
| EI ¶ 8 prohibits Google from conditioning "a payment, revenue share, or access to any Google product or service on an agreement" with an OEM not to preinstall "an Android app distribution platform or store other than the Google Play Store." | PS § 6.6.1 prohibits Google from entering into or enforcing agreement provisions "with the purpose or effect of securing preload exclusivity" for Google Play.<br><br>PS § 6.8.1 further prohibits Google from requiring its "consent" before an OEM preloads a third-party app store. And PS § 6.7.1 prohibits Google from entering into or enforcing agreement provisions that would prevent an OEM from granting "installer rights" to preloaded apps. Under both PS §§ 6.8 & 6.7, Google is allowed to take "reasonable steps that are tailored to protect user privacy or security," including by adopting "neutral user experience requirements that apply to all pre-installed app stores (including the Google Play Store)."<br><br>For sideloaded apps, PS § 6.9.1 requires Google to maintain certain functionality regarding app installs and updates by a sideloaded app store while PS § 6.10.1 requires Google to revise its sideloading screens. | Google must comply with both EI ¶ 8 and PS §§ 6.6.1, 6.7.1, 6.8.1, 6.9.1 & 6.10.1. Google may not enforce or enter into agreement provisions or engage in other conduct that violates either EI ¶ 8 or PS §§ 6.6.1-6.10.1.<br><br>During the three years that the EI is in effect, EI ¶ 8 is potentially more restrictive than PS §§ 6.7.1 & 6.8.1 in that it does not contain any qualifications. On the other hand, the Proposed Settlement's terms regarding preinstallation cover a longer period of time and address some of the functionality of alternative app stores. |

3

**EXHIBIT A**
***EPIC* PERMANENT INJUNCTION ("EI") COMPARISON TO STATES' PROPOSED SETTLEMENT ("PS")**

| *EPIC* PERMANENT INJUNCTION | STATES' PROPOSED SETTLEMENT AGREEMENT | WHAT HAPPENS IF BOTH THE EI AND THE PS ARE IN EFFECT |
|---|---|---|
| Term: 3 years. | Term: 4 years (for PS §§ 6.7.1 & 6.9.1); 5 years (for PS §§ 6.6.1, 6.8.1 & 6.10.1). | |
| EI ¶ 9 prohibits Google from requiring the use of Google Play Billing in apps distributed on the Google Play Store or prohibiting the use of "in-app payment methods other than Google Play Billing." This allows developers to replace Google Play Billing with an alternative billing system in apps distributed on the Play Store.<br><br>Term: 3 years. | PS § 6.3.1 requires Google to allow an app developer to offer "an alternative in-app billing system *alongside* Google Play's billing system" but does not prohibit Google from requiring the inclusion of Google Play's billing system.<br><br>Term: 5 years. | Google would be required to allow app developers offering apps on the Google Play Store to choose for themselves whether to (1) opt out of Google Play's billing service (under EI ¶ 9) and offer an alternative billing service instead or (2) offer Google Play Billing alongside an alternative in-app billing service (under PS § 6.3.1).<br><br>EI ¶ 9 is more restrictive than PS § 6.3.1 in that it does not permit Google to require app developers to offer Google Play Billing alongside alternative in-app payment solutions. On the other hand, the Proposed Settlement's term covers a longer period of time. |
| EI ¶ 9 also prohibits Google from preventing developers from communicating with users about alternative payment methods.<br><br>Term: 3 years. | PS §§ 6.11.1 & 6.11.2 specify that app developers can encourage users to select their alternative billing systems through pricing or promotion and can use contact information obtained either inside or outside the app to communicate with users out-of-app, including about alternative payment systems.<br><br>Term: 5-6 years. | Google would have to comply with both EI ¶ 9 and PS §§ 6.11.1 & 6.11.2. |

4

**EXHIBIT A**
*EPIC* PERMANENT INJUNCTION ("EI") COMPARISON TO STATES' PROPOSED SETTLEMENT ("PS")

| *EPIC* PERMANENT INJUNCTION | STATES' PROPOSED SETTLEMENT AGREEMENT | WHAT HAPPENS IF BOTH THE EI AND THE PS ARE IN EFFECT |
|---|---|---|
| EI ¶ 9 further prohibits Google from requiring a developer to set a price based on whether Google Play Billing is used.<br><br>Term: 3 years. | PS § 6.3.1 specifies that where an app developer elects to offer an alternative in-app billing system alongside Google Play Billing, the developer may offer "different pricing and promotion options" through the alternative in-app billing service.<br><br>PS § 6.4.1 further prohibits Google from entering into or enforcing agreement provisions that would commit a developer to set prices for in-app purchases made through Google Play Billing "at a level that is equal to or more favorable than" the prices on the alternative billing system.<br><br>Term: 5 years.<br><br>In addition, PS § 6.12.1 prohibits Google from using any inducement (monetary or otherwise) with the purpose and effect of violating any of the commitments it made in the Proposed Settlement. | Google would have to comply with both EI ¶ 9 and PS §§ 6.3.1, 6.4.1 & 6.12.1. |
| EI ¶ 10 prohibits Google from preventing "a developer from communicating with users about the availability or pricing of an app outside the Google Play Store," including by "providing a link to download the app outside the Google Play Store." | PS § 6.11.2 requires Google to "continue to allow developers to use contact information obtained outside the app or in-app (with User consent) to communicate with Users out-of-app, including to promote alternatives to Google Play's billing system." And PS § 6.11.5 does not allow Google to prohibit developers from | Google would have to comply with the provisions in EI ¶ 10 and PS § 6.11. |

5

**EXHIBIT A**
***EPIC* PERMANENT INJUNCTION ("EI") COMPARISON TO STATES' PROPOSED SETTLEMENT ("PS")**

| *EPIC* PERMANENT INJUNCTION | STATES' PROPOSED SETTLEMENT AGREEMENT | WHAT HAPPENS IF BOTH THE EI AND THE PS ARE IN EFFECT |
|---|---|---|
| Term: 3 years. | disclosing to users Google's service or other fees associated with the Play Store or Google Play Billing.<br><br>PS §§ 6.11.3 & 6.11.4 require Google to allow developers to communicate with users inside an app about alternative purchasing options outside the app, although without any requirement of external links and subject to certain limits.<br><br>Term: 5 years (for PS §§ 6.11.1 & 6.11.4); 6 years (for PS §§ 6.11.2, 6.11.3 & 6.11.5). | |
| EI ¶ 11 requires Google to permit alternative app stores to use the Google Play Store's catalog of apps to offer apps to users.<br><br>Term: 3 years. | The Proposed Settlement does not contain a comparable provision. | Google would have to comply with this provision in EI ¶ 11. |
| EI ¶ 12 provides that Google may not "prohibit the distribution of third-party Android app distribution platforms or stores through the Google Play Store."<br><br><br><br><br><br>Term: 3 years. | The Proposed Settlement does not contain a comparable provision.<br><br>PS § 6.9.1 requires Google to maintain certain functionality concerning app installs and updates by sideloaded app stores while PS § 6.10.1 requires Google to revise its sideloading screens.<br><br>Term: 4-5 years. | Google would have to comply with EI ¶ 12 as well as PS §§ 6.9.1 & 6.10.1 with respect to the conduct each of those provisions covers.<br><br>The Proposed Settlement's terms regarding sideloaded apps and app stores would be an added commitment outside the three-year duration of the *Epic* Injunction and would still apply if for any |

6

**EXHIBIT A**
***EPIC* PERMANENT INJUNCTION ("EI") COMPARISON TO STATES' PROPOSED SETTLEMENT ("PS")**

| *EPIC* PERMANENT INJUNCTION | STATES' PROPOSED SETTLEMENT AGREEMENT | WHAT HAPPENS IF BOTH THE EI AND THE PS ARE IN EFFECT |
|---|---|---|
| | | reason the Injunction is not affirmed on appeal. |
| EI ¶ 13 installs a Technical Committee ("TC") to "review disputes or issues relating to the technology and processes required by" the *Epic* Injunction. The TC is composed of a Google-selected member, an Epic-selected member, and a third member selected by the Epic and Google members. If the TC cannot resolve a dispute or issue, a party may ask the Court for a resolution.<br><br>Term: 3 years. | PS § 7 puts in place an Independent Compliance Professional ("ICP") to assist the States with ensuring Google's compliance with the terms of the Proposed Settlement. PS § 7.2 requires Google to prepare annual reports evaluating its compliance with the Proposed Settlement's injunctive terms and puts the ICP in place to review Google's reports and prepare an addendum evaluating Google's assessment of its compliance. Under PS § 7.3.3, the ICP will be paid for by Google.<br><br>Term: 5 years. | The TC would review disputes or issues relating to the technology and processes required by the *Epic* Injunction.<br><br>The ICP would evaluate Google's reports of its compliance with the Proposed Settlement. |

7